SHORT RECORD
NO. 24-8004
Filed: 02/16/2024

Case No.

**United States Court of Appeals**
**for the Seventh Circuit**

MARIA TAPIA-RENDON,
*Individually and on behalf of all other similarly situated*
*Plaintiff-Respondent*
v.

WORKEASY SOFTWARE, LLC,
*Defendant-Petitioner*

---

**ON PETITION FOR LEAVE TO APPEAL FROM THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, CASE NO., 1:21-CV-3400**

---

# PETITION FOR LEAVE TO APPEAL CLASS CERTIFICATION ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(F)

---

Josh M. Kantrow
Thomas M. Wolf
Cameron T. Liljestrand
**Lewis Brisbois Bisgaard & Smith LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
Telephone: 312.345.1718
Facsimile: 312.345.1778
Josh.Kantrow@lewisbrisbois.com
Thomas.Wolf@lewisbrisbois.com
Cameron.Liljestrand@lewisbrisbois.com

*Counsel for WorkEasy Software, LLC*

# TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES. .......... ii

PETITION FOR PERMISSION TO APPEAL………… .......... 1

JURISIDICTIONAL STATEMENT….. .......... 1

I. INTRODUCTION……. .......... 3

II. FACTS NECESSARY TO UNDERSTAND QUESTIONS PRESENTED… .......... 5

- A. Illinois Biometric Information Privacy Act ("BIPA") .......... 5
- B. Plaintiff's Complaint .......... 6
- C. Plaintiff's Motion for Class Certification and WorkEasy's Opposition .......... 6
- D. WorkEasy's Motion to Reconsider Pursuant to Rule 54(b) and the District Court's Denial .......... 6

III. QUESTIONS PRESENTED .......... 8

IV. RELIEF REQUESTED… .......... 9

V. STANDARD OF REVIEW… .......... 9

VI. REASONS FOR GRANTING THE PETITION.. .......... 10

- A. The District Court Erred In Concluding That A Class Action Is Superior To Other Methods For Adjudicating This Controversy .......... 12
- B. The District Court Erred In Concluding That Questions Of Law Or Fact Common To The Class Predominated Over Questions Affecting Only Individual Members .......... 15
- C. The District Court Erred In Concluding That Plaintiff Is An Adequate Class Representative And That Her Claim Is Typical Of Those Of The Class .......... 17
- D. This Court Should Revisit Its Holding In *Murray* And Adopt the Other Circuit's Approach To Superiority When Damages Are Disproportionate To Any Alleged Harm

IV. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**


*Amchen Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....14

*Andrews v. Chevy Chase Bank*,
545 F.3d 570 (7th Cir. 2008) ....12, 13, 14, 16, 17

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ....18

*Blair v. Equifax Check Services*,
181 F.3d 832 (7th Cir. 1999) ....1, 2, 9, 10, 11

*C.E. Design, Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) ....18

*Creative Montessori Learning Ctrs. V. Ashford Gear LLC*,
662 F.3d 913 (7th Cir. 2011) ....10, 11

*Hyderi v. Washington Mut. Bank, FA*,
2006 U.S. Dist. LEXIS 137781 (N.D. Ill. 2006) ....13

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ....16

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) ....4, 20

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ....4, 19

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) ....12

*McFields v. Dart*,
982 F.3d 511 (7th Cir. 2020) ....15

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ....10

*Murphy v. Prof's Transp.*,
2017 U.S. Dist. LEXIS 194391 (S.D. Ill. 2017)....13

*Murray v. GMAC Mortgage Corp.*,
434 F.3d 948 (7th Cir. 2006) ....................4, 9, 19, 20

*Nutraceutical Corp. v. Lambert*,
139 S. Ct. 710 (2019) ....................2

*Orr v. Shicker*,
953 F.3d 490 (7th Cir. 2020) ....................15

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
704 F.3d 489 (7th Cir. 2013) ....................9, 11

*Matter of Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) ....................12

*In re Sabree*,
2023 U.S. App. LEXIS 6218 (6th Cir. 2023) ....................2

*Santiago v. City of Chi*,
19 F.4th 1010 (7th Cir. 2021) ....................17

*In re Southwest Airlines Vouchers Litigation*,
2013 U.S. Dist. LEXIS 120735 (N.D. Ill. 2016) ....................14

*Szabo v. Bridgeport Machs., Inc.*,
239 F.3d 672 (7th Cir. 2001) ....................10, 11

*Vulcan Golf, LLC v. Google Inc.*,
2008 U.S. Dist. LEXIS 102819 (N.D. Ill. 2008) ....................13

**State Cases**

*Cothron v. White Castle Sys.*,
2023 IL 128004 ....................4, 8, 11, 17

*Hahn v. City of Kane*,
2013 IL App (2d) 120660 ....................16

*People v. Lander*,
215 Ill.2d 577 (2005) ....................16

**Constitutions**

United States Constitution ....................7

**Statutes**

740 ILCS 14/5(a) ....................5

740 ILCS 14/5(b) .....5

740 ILCS 14/5(c) .....5

740 ILCS 14/5(g) .....5

28 U.S.C. § 1292(e) .....2

28 U.S.C. § 1332(d) .....2

BIPA .....3, 4, 5, 6, 7, 8, 9, 11, 13, 14, 15, 16, 18, 19, 20

BIPA §§ 15(b), 15(d) and 15(e) .....3, 6

Illinois Biometric Information Privacy Act .....5

Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. .....3

Nick Larry Law .....23

**Court Rules**

Fed. R. App. P. 32(a)(5) .....22

Fed. R. App. P. 32(a)(6) .....22

Fed. R Civ. P. 23 .....15

Fed. R. Civ. P. 23(a)(4) .....17

Federal Rule of Civil Procedure 23(f) .....1, 2, 3, 9, 10, 11

Federal Rule 23(b)(3) .....4, 6, 7, 14

Federal Rules of Appellate Procedure 5 .....1

Rule 5(c)(1) .....22

Rule 23(a) .....6, 17

Rule 23(b) .....15

Rule 32(f) .....22

Rule 32(g) .....22

Rule 54(b) .....7

**Other Authorities**

ECF No. 167, "Order" .......................................................................................................... 1

## PETITION FOR PERMISSION TO APPEAL

WorkEasy Software, LLC ("WorkEasy" or "Petitioner"), formally known as Easy Workforce Software, LLC, petitions this Court under Federal Rule of Civil Procedure 23(f) and Federal Rules of Appellate Procedure 5, for permission to appeal an order of the district court entered August 15, 2023 (ECF No. 167, "Order"), attached hereto as **Exhibit A**, which granted Plaintiff's Motion for Class Certification.

## JURISDICTIONAL STATEMENT

The district court entered its Memorandum Opinion and Order granting Plaintiff's Motion for Class Certification on August 15, 2023. Within 14 days, on August 29, 2023, Petitioner filed a Motion to Reconsider the district court's order granting class certification (ECF No. 170), attached hereto as **Exhibit B**. This Court has held that the deadline to appeal under Rule 23(f) is deferred when a timely motion to reconsider is filed. *See Blair v. Equifax Check Services*, 181 F.3d 832, 837 (7th Cir. 1999) ("A motion for reconsideration filed within [14] days of an order of a district court granting or denying class action certification defers the time for appeal until after the district judge has disposed of the motion.").

On February 2, 2024, the District Court entered its Memorandum Opinion and Order denying WorkEasy's Motion for Reconsideration. (ECF No. 187), attached hereto as **Exhibit C**. On February 16, 2024, WorkEasy filed this petition pursuant

to Federal Rule of Civil Procedure 23(f) for review of the Order, which was within 14 days per Rule 23(f). The District Court has jurisdiction under 28 U.S.C. § 1332(d), Rule 23(f) and 28 U.S.C. § 1292(e).

To the extent Plaintiff argues WorkEasy's petition is not timely because it first filed a Motion to Reconsider and later appealed within 14 days after that motion was disposed of, such an argument must be denied. WorkEasy is aware of the Supreme Court's ruling in *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 715 (2019), which held that the 14-day deadline to seek permission to appeal under Rule 23(f) is not subject to equitable tolling. However, *Lambert* is inapplicable here because WorkEasy filed its motion to reconsider within 14 days of the original class certification order unlike the appellant *Lambert*, who waited 20 days. The Supreme Court specifically did not address whether the appeal would have been timely if the motion to reconsider was filed within 14 days. *Id*. at fn. 4. Moreover, at the time the *Blair* decision was issued, every single Appellate Court had ruled that the deadline to appeal under Rule 23(f) is deferred when a timely motion to reconsider is filed, and only begins to run after the motion is disposed of. *Blair,* 181 F.3d at 837. This Court's holding in *Blair* is recognized within *Lambert* itself. *Id*. at hn. 7. Additionally, other Circuits have ruled consistently with this Court in *Blair* while still acknowledging *Lambert*. *See In re Sabree*, 2023 U.S. App. LEXIS 6218, *2 (6th Cir. 2023) ("when a party files a timely motion for reconsideration, the fourteen-

day window to file a petition for permission to appeal does not open until the district court resolves that motion.") (citing *Lambert*, 139 S. Ct. at 717).

## I. INTRODUCTION

Petitioner respectfully seeks leave to appeal the Order of August 15, 2023 granting class certification in a case brought under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. This Petition is brought pursuant to Federal Rule of Civil Procedure 23(f), which permits a petition to appeal "from an order granting or denying class-action certification." Petitioner likewise appeals the Order from February 2, 2024 denying its Motion to Reconsider.

While BIPA litigation has become very common, this case is truly unique. Plaintiff has alleged that WorkEasy violated BIPA sections 15(b), 15(d) and 15(e) by collecting hers and the putative class members' biometric identifiers and/or biometric information through the WorkEasy timeclocks without first obtaining consent and storing the information without encryption. Because of these alleged violations, the average individual class member could potentially recover millions of dollars in statutory penalties plus attorneys' fees and costs. The ability to sue for millions of dollars is certainly enough incentive to sue individually, which was glossed over and fundamentally misunderstood by the district court. Moreover, Plaintiff expressly permitted the exact conduct she now complains for months before she filed this lawsuit and even went as far as to sue another company under BIPA

approximately two months before she voluntarily provided her alleged biometric information in this case.

WorkEasy submits that the district court (1) erred in granting class certification as a matter of law because the Order runs contrary to the purpose of Federal Rule 23(b)(3); (2) failed to properly consider the available affirmative defenses of waiver and equitable estoppel, which will require an individual inquiry into each class member's conduct; and (3) failed to properly apply the defenses of waiver and equitable estoppel to Plaintiff, which argument was properly incorporated into WorkEasy's Response Brief opposing class certification and not underdeveloped as the district court erroneously found.

Further, as BIPA became law two years after *Murray v. GMAC Mortgage Corp*., 434 F.3d 948 (7th Cir. 2006), this Court should revisit that case and adopt holdings of other circuits that a class action is not superior where a defendant's potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff. *See e.g., London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n. 5 (11th Cir. 2003); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974). This is especially true in light of the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004, which held that damages claims made under BIPA accrue on each violation, not just the first.

To resolve these errors, WorkEasy petitions this Court for permission to appeal the district court's order granting class certification. The questions presented in this Petition raise issues that should be reviewed and corrected by this Court. WorkEasy therefore requests that this Court accept its Petition and grant the relief requested below.

## II. FACTS NECESSARY TO UNDERSTAND QUESTION PRESENTED

### A. Illinois Biometric Information Privacy Act ("BIPA")

BIPA was enacted in 2008 due to the growing use of biometrics in the business and security screening sectors. 740 ILCS 14/5(a). Major corporations were utilizing biometrics for streamlined financial transactions, including finger scan technologies at grocery stores, gas stations, and school cafeterias. 740 ILCS 14/5(b). The General Assembly found that biometrics "are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c). Accordingly, the General Assembly determined that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

### B. Plaintiff's Complaint

On April 18, 2023, Plaintiff, with leave from the district court, filed a Second Amended Class Action Complaint (the "Complaint") against WorkEasy. (Doc. No. 127). The Complaint alleges that WorkEasy violated BIPA sections 15(b), 15(d) and 15(e) by collecting Plaintiff's and the putative class members' biometric identifiers and/or biometric information through the WorkEasy time clock without first obtaining Plaintiff's or the putative class members' consent and storing the information without encryption. (Doc. No. 127, Counts 4-6).

### C. Plaintiff's Motion for Class Certification and WorkEasy's Opposition

On May 19, 2023, Plaintiff filed a motion for class certification under Rule 23(b)(3) of a class of individuals who had used WorkEasy's devices on or after June 24, 2016 and a subclass of individuals who had used WorkEasy's devices on or before April 30, 2022.

WorkEasy opposed certification, arguing that Plaintiff could not satisfy the adequacy requirements under Rule 23(a) because her claim against WorkEasy paled in comparison to the potential recovery for the average class members. (ECF No. 159), attached hereto as **Exhibit D**. Second, WorkEasy argued that Plaintiff could not satisfy the superiority elements under Rule 23(b)(3) because a class action was no longer the superior method of adjudication of BIPA claims in light of the ability to individually sue for millions of dollars in damages. *Id*. WorkEasy also argued that

managing a class of this size with the potential for monumental damages would cause extreme difficulty in light of WorkEasy's due process rights under the United States Constitution. *Id*. Relatedly, WorkEasy also argued that the potential damages in this case are grossly disproportionate to the alleged harm. Finally, WorkEasy argued that its available affirmative defense of waiver and equitable estoppel would require an individual inquiry into each class member's conduct because they voluntarily provided the alleged biometric information, thereby waiving their rights under BIPA and ability to sue. *Id*. The district court disagreed with WorkEasy and certified the class and subclass. **Ex. A.**

### D. WorkEasy's Motion to Reconsider Pursuant to Rule 54(b) and the District Court's Denial

On August 29, 2023, WorkEasy timely moved to reconsider the district court's granting of class certification. In that Motion, WorkEasy argued that the district court misapplied existing law to the facts of the case including failing to consider relevant factors when determining whether there was enough incentive to sue individually when analyzing the superiority element under Rule 23(b)(3). WorkEasy also argued that the district court's analysis was flawed and contrary to binding law when it concluded that the lack of individual suits by the class members provided evidence that a class action was superior to individual litigation. On October 2, 2023, the district court held oral arguments limited to WorkEasy's challenge to superiority. *See* transcript of proceedings, attached hereto as **Exhibit E**.

Further, WorkEasy argued that Plaintiff was not an adequate class representative because she waived her rights under BIPA, and therefore, does not have a valid cause of action. Relatedly, WorkEasy argued that predominance was not met because common issues did not predominate over individualized ones. On February 2, 2024, the district court denied WorkEasy's motion for reconsideration. As WorkEasy will demonstrate, the superiority element is clearly lacking and the district court's analysis relating to adequacy of representation and predominance was a clear error of law.

## III. QUESTIONS PRESENTED

1. Whether the district court erred in summarily concluding that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy in light of the great incentive to sue individually in BIPA cases, following the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004.

2. Whether the district court erred in concluding that questions of law or fact common to the class members predominate over questions affecting only individual members, in view of the substantial number of factual determinations that will be required to be made for each class member in order to determine whether WorkEasy is liable to such class member and, if so, the amount of recovery.

3. Whether the district court erred in concluding that Plaintiff is an adequate representative of the class, and that her claim is typical of the claims of the class, in light of defenses that uniquely apply to her.

4. Whether the 7th Circuit should reverse its decision in *Murray v GMAC Mortg. Corp*, 434 F.3d 948 (7th Cir. 2006), decided two years before BIPA was enacted, and adopt the other Circuits' holdings that class certification is not appropriate when a class judgment can potentially result in millions of dollars in damages without any actual harm.

## IV. RELIEF REQUESTED

WorkEasy requests this Court grant permission to appeal, stay the district court's case while this appeal is pending and reverse the district court's class certification order.

## V. STANDARD OF REVIEW

"Rule 23(f) infuses courts of appeals with discretionary authority to grant interlocutory review of class certification decisions." *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 497 (7th Cir. 2013). This Court has "unfettered discretion" to permit an appeal from an order granting or denying class certification and may base its decision on "any consideration that the [Court] finds persuasive. *Blair v. Equifax Check Servs. Inc.*, 181 F.3d 832, 833 (7th Cir.1999).

Although "neither a bright-line approach nor a catalog of factors" governs, the Court will hear interlocutory appeals of class-certification orders where (1) "the stakes are large and the risk of a settlement or other disposition that does not reflect the merits of the claim is substantial," and/or (2) where "an appeal may facilitate the development of the law." *Id*. at 834-35. Interlocutory appeals take on heightened importance in high-stakes cases because "[c]ertification of a class action can 'coerce the defendant into settling on highly disadvantageous terms, regardless of the merits of the suit,' … because of the magnitude of the potential damages." *Creative Montessori Learning Ctrs. V. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011).

The Court reviews class-certification orders for abuse of discretion. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). If "the district court bases its discretionary [class-certification] decision on an erroneous view of the law or a clearly erroneous assessment of the evidence, then it has necessarily abused its discretion." *Id*.

## VI. REASONS FOR GRANTING THE PETITION

This petition implicates the central purpose of Rule 23(f) to address the "bet-your company" cases where a defendant is likely to be coerced into accepting an unfavorable settlement to prevent even a low chance of a high verdict. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).

Here, the magnitude of potential damages is massive. Plaintiff seeks over $24,000,000,000 in damages. **Ex. B**, at 7. An erroneous grant of class certification thus turns this case from being a dispute about a single plaintiff's alleged statutory damages ranging from as low as $42,000 into a billion-dollar dispute. *See Id*. at 675 ("[Class certification turns a $200,000 dispute … into a $200 million dispute."). Put simply, "class certification here presents precisely the scenario where 'stakes are large and the risk of a settlement or other disposition [may] not reflect the merits of the claim.'" *McKnight*, 704 F.3d at 497 (citing *Blair*, 181 F.3d at 835).

Another central purpose of Rule 23(f) is to "facilitate the development of the law," *Blair*, 181 F.3d at 835, where a settlement may "prevent[] resolution of the underlying issues." *Ashford*, 662 F.3d at 915.

The Court should accept this petition and correct the district court's mistaken interpretation of *Cothron*. To WorkEasy's knowledge, this is the only case post-*Cothron* challenging class certification where potential damages are in the billions. The district court's analysis was incomplete and highly questionable. This appeal provides this Court an opportunity to clarify fundamental aspects of class action law relating to BIPA claims, especially where  every individual class member has the potential to recover millions in alleged damages plus their attorneys' fees and costs.

### A. The District Court Erred In Concluding That A Class Action Is Superior To Other Methods For Adjudicating This Controversy.

In this case, the potential recovery of $15,000 in statutory damages for every single scan in addition to attorneys' fees and costs provides a substantial incentive for an individual to bring their own claim in court. The district court's decision granting class certification gave little consideration to the potential damages but instead speculated that the damages sought by Plaintiff may not be likely and as a result, the judge's ruling was incorrect as a matter of law.

Class actions were designed, in part, to provide a procedural means of incentivizing suits involving many class members with otherwise *de minimis* injuries. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for an individual to bring a solo action."). To this end, "[i]n most class actions—and those the ones in which the rationale for the procedure is most compelling—individual suits are infeasible because the claim of each class member is tiny relative to the expense of litigation." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995).

Factors weighing in favor of an individual resolution of claims include: (1) the <u>potential</u> for statutory damages; (2) the value of the <u>potential</u> individual recovery; and (3) the available of attorneys' fees for the prevailing party. *Andrews v. Chevy*

*Chase Bank* , 545 F.3d 570, 577-78 (7th Cir. 2008) (holding that a potential recovery of over $50,000 plus attorneys' fees and costs "is not the sort of remedy that would not otherwise be sought unless the class-action mechanism were available.").

As argued by WorkEasy in its Opposition to Class Certification, the potential recovery per class member in this case could be $2,793,000 for negligent violations of BIPA and $13,965,000 for intentional violations of BIPA, plus their attorneys' fees and litigation costs. **Ex. D**, at 5. Courts within this judicial circuit have denied class certification in cases with a potential recovery far less than those in the present case. *See e.g.*, *Hyderi v. Washington Mut. Bank, FA*, 2006 U.S. Dist. LEXIS 137781, at **41-45 (N.D. Ill. 2006) (availability of statutory damages of up to $1,000 and attorney's fees and costs, irrespective of whether the plaintiff suffered "any actual harm," provided enough incentive for individuals to pursue their own claims); *Murphy v. Prof's Transp*., 2017 U.S. Dist. LEXIS 194391, at *27-28 (S.D. Ill. 2017) (court holding "individual litigation is the superior method of resolving … claims" when "each class member's potential recovery was around $18,000 plus payment of attorneys' fees); *Andrews*, 535 F.3d at 577-78 (7th Circuit reversed class certification when hundreds or thousands of individual class members could recover over $50,000 each, plus attorneys' fees and costs); *Vulcan Golf, LLC v. Google Inc*., 2008 U.S. Dist. LEXIS 102819, at *41-44 (N.D. Ill. 2008) (court rejected class certification when the maximum statutory damages available were $100,000).

Even with the above cases and the potential individual damages available, the district court granted class certification and in the process undercut the entire purpose of Rule 23(b)(3). In fact, "[w]hen Rule 23(b)(3) was adopted, its drafters 'had dominantly in mind vindication of the rights of groups of people *who individually would be without effective strength to bring their opponents into court at all*.'" *See In re Southwest Airlines Vouchers Litigation,* 2013 U.S. Dist. LEXIS 120735, at *18 (N.D. Ill. 2016) (citing *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (emphasis added); **Ex. E**, at 7:4-9.

Herein lies the error of law. The court's certification order failed to analyze any of the *Andrews* factors initially which weigh heavily against class certification and cast them aside when reconsidering class certification. It is obvious that BIPA, post-*Cothron*, potentially provides incredibly significant statutory penalties such that individuals obviously have effective strength to bring WorkEasy into Court on their own. While Superiority is one element for the Court to consider, it should have been the deciding element here because of the amount of damages sought by Plaintiff and the class. Instead, the district court gave it little analysis on two separate occasions.

### B. The District Court Erred in Concluding That Questions Of Law Or Fact Common To The Class Predominated Over Questions Affecting Only Individual Members.

To obtain class certification, the movant must show by a preponderance of the evidence that all the applicable elements of Fed. R Civ. P. 23 are satisfied. *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020). Plaintiff had the burden to establish the following elements: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation, and (5) one of the key elements of Rule 23(b) in this case, "that the questions of law or fact common to class members predominate over any questions affecting only individual members…." *McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020); Fed. R. Civ. P. 23(b). Here, there are significant questions that will have to be individually determined for each class member in order to determine WorkEasy's liability to the member and the amount of recovery.

While WorkEasy agrees that its waiver and estoppel affirmative defenses will apply across the class, the district court's decision that it could examine this issue on a class-wide basis, as opposed to individually, is incorrect as a matter of law because deciding whether the class or Plaintiff waived their rights or are estopped from suing under BIPA will not be common. Contrary to the district court's Order, the conduct of each and every class member will surely be different because evaluating the waiver defense requires an individualized inquiry on that specific individual's intent. *Hahn v. City of Kane*, 2013 IL App (2d) 120660, ¶11 (waiver is the intentional relinquishment of a known right).

Herein lies the problem. The district court mistakenly believed that analyzing each and every class member's intent would be common across the class. **Ex. A**, at 16. It is apparent, however, that the intent of each and every class member will surely be unique to that specific class member. Further, because Plaintiff and the putative class members are deemed to know the law, including their rights under BIPA, *People v. Lander*, 215 Ill.2d 577, 588-89 (2005) ("it is well settled that all citizens are charged with knowledge of the law."), each and every class member's intent will need to be examined. Stated differently, the affirmative defenses of waiver and estoppel raise 2,620 individual issues that would need to be addressed by the Court and predominance was not met as a result. *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) (Predominance is only satisfied when "common questions represent a significant aspect of a case and … can be resolved for all members of a class in a single adjudication."). There does not appear to be any scenario where intent could be addressed in this putative class in a single adjudication.

Further, the district court erred in failing to account for the individualized damages issues that will be present. As this court explained in *Andrews*, "[i]f the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate

the claims." *Andrews*, 545 F.3d at 577. Here, a judgment against WorkEasy would require the court to individually determine the amount of damages available to each of the 2,620 class members because damages may be awarded to each class member based on the number of times they scanned their finger on a time clock. *Cothron*, 2023 IL 128004, ¶45. In addition, the *Cothron* court stated, in dicta, that judges have the ability to award damages within their discretion and to fashion a damages award that fairly compensated the class members. *Id*. at ¶42. This, however, would require 2,620 individual damage determinations for each and every class member to decide fair compensation while also factoring in WorkEasy's due process rights. As argued by WorkEasy in its opposition to class certification, a judgment in the billions is a grossly excessive punishment, especially when Plaintiff has not alleged any actual harm and her own expert opined that no real world harm can occur. **Ex. D**, at 15-16. The issues that remain for adjudication are highly individualized inquires which will vastly predominate over any common issue of law going forward.

### C. The District Court Erred In Concluding That Plaintiff Is An Adequate Class Representative And That Her Claim Is Typical Of Those Of The Class.

Under Rule 23(a), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Santiago v. City of Chi*, 19 F.4th 1010, 1018 (7th Cir. 2021). In order to be an adequate representative, "[a] named plaintiff *must* be a member of the putative class and have the *same* interest and injury

as other members. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) (emphasis added). Further, it is well-settled that "[t]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *C.E. Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

WorkEasy argued that Plaintiff was not an adequate class representative because Plaintiff knew or should have known about her rights under BIPA when she started her employment at the time she gave up her alleged biometric information. **Ex. D**, at 9. Plaintiff explained that she was aware of BIPA, however, she waited to reach out to counsel until several months after her employment with Employer Solutions Staffing Group. **Ex. D**, at 18-19. More importantly, Plaintiff sued another company under BIPA approximately two months *before* she voluntarily provided her alleged biometric information to her employer, United Tape, in this case. **Ex. D**, at 19. This information demonstrated that Plaintiff unquestionably knew of her BIPA rights and proceeded with enrolling in a timeclock using her fingerprint anyway.

Instead of addressing this argument, the district court simply stated, incorrectly, that it was and was not "particularly unique to [Plaintiff]." **Ex. C**, at 14-15. As demonstrated above, the applicability of waiver will require 2,620 individualized inquiries into the Plaintiff's and class members' *intent*. Thus, the

district court's conclusion that the waiver and estoppel defenses would be "equally applicable to all class members" **Ex. A**, at 16, is incorrect as a matter of law.

Moreover, WorkEasy has found no decisions, and Plaintiff cited to none, holding that waiver and estoppel are not an available defense to BIPA. The granting of this Petition therefore would facilitate the development of the law in that regard.

### D. This Court Should Revisit Its Holding In *Murray* And Adopt The Other Circuit's Approach To Superiority When Damages Are Disproportionate To Any Alleged Harm.

WorkEasy is aware of this Court's holding in *Murray v. GMAC Mortgage Corp*., 434 F.3d 948 (7th Cir. 2006), relating to issues of disproportionate damages awards affecting superiority, when as present here, there is no alleged harm by the conduct at issue. WorkEasy, however, prays that this court will revisit its decision and adopt the reasoning of other circuits considering similar factual scenarios.

Here, there is no denying that Plaintiff is suing for billions of dollars in statutory damages in the aggregate and that there is no actual harm to Plaintiff nor any class member. An award in the billions would financially ruin WorkEasy. Such a situation has been held to defeat superiority in other circuits. *See e.g.*, *Longdon v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (class action not superior where "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."); *Kline v. Coldwell, Banker & Co*., 508 F.2d 226, 235 (9th Cir. 1974) (holding that because a

class judgment could potentially result in $750 million in damages, certification should be denied).

Here, the situation is far worse for WorkEasy when compared to the above cases. WorkEasy is being sued for billions of dollars and Plaintiff has alleged no real-world harm. This was further confirmed by the testimony of Plaintiff's own expert who testified that (1) there is no current real-world harm even if the data on the WorkEasy servers fell into the wrong hands, (2) the information cannot be used for any practical purpose, and (3) the information cannot be reverse engineered into any individual's fingerprint. **Ex. D**, 17.

WorkEasy urges this Court to accept this Petition and revisit its decision in *Murray* and adopt other Circuit's approach in order to give WorkEasy and other companies sued under BIPA a fighting chance when faced with financial destruction.

## VII. Conclusion

WorkEasy respectfully requests that the Court grant permission to appeal, stay the district court's case while this appeal is pending and reverse the district court's class certification order.

**Date: February 16, 2024**

By:/s/ Josh M. Kantrow
Attorneys for Defendant-Petitioner
WorkEasy Software, LLC

Josh M. Kantrow (ARDC No. 6231027)
Thomas M. Wolf (ARDC No. 6314294)
Cameron T. Liljestrand (ARDC No. 6336262)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
312.345.1718
Josh.Kantrow@lewisbrisbois.com
Thomas.Wolf@lewisbrisbois.com
Cameron.Liljestrand@lewisbrisbois.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g), the undersigned counsel certifies that the foregoing Petition complies with the type-volume limitation of Rule 5(c)(1) because it contains 4,644 words and limited to 20 pages, excluding the parts of the paper exempted by Rule 32(f).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2019 in 14 point Times New Roman font.

Date: February 16, 2024

By:/s/ Josh M. Kantrow
Attorneys for Defendant-Appellant
WorkEasy Software, LLC

Josh M. Kantrow (ARDC No. 6231027)
Thomas M. Wolf (ARDC No.6314294 )
Cameron T. Liljestrand (ARDC No. 6336262)
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
312.345.1718

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, the foregoing Petition for Permission to Appeal was filed with the Clerk of the Court for the United States Court of Appeals via the CM/ECF system. A copy of the filing will be sent by email to all counsel of record in the district court proceeding at the following addresses:

Thomas Kayes
The Civil Rights Group, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 606012
tom@civilrightsgroup.com

J. Dominick Larry
Nick Larry Law LLC
1720 W. Division St.
Chicago, IL 60622
nick@nicklarry.law

James K. Borcia
Tressler LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 627-4000
JBorcia@tresslerllp.com

By:/s/ Josh M. Kantrow
Attorneys for Defendant-Appellant
EasyWork Software, LLC

Josh M. Kantrow (ARDC No. 6231027)
Thomas M. Wolf (ARDC No. 6314294 )
Cameron T. Liljestrand (ARDC No. 6336262)
LEWIS BRISBOIS BISGAARD & SMITH LLP

550 West Adams Street, Suite 300
Chicago, Illinois 60661
312.345.1718

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MARIA TAPIA-RENDON, on behalf of herself and all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 21 C 3400** |
| **UNITED TAPE & FINISHING CO., INC. and EASYWORKFORCE SOFTWARE, LLC,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Maria Tapia-Rendon has sued her former employer, United Tape & Finishing Co.[1] and EasyWorkforce Software, LLC (EWF), which sold biometric timeclocks and accompanying software to United Tape, for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1–99. Tapia-Rendon has moved to certify both a class and a subclass under Federal Rule of Civil Procedure 23(b)(3). For the reasons stated below, the Court grants the motion.

## Background

A party seeking class certification has the burden of establishing by a preponderance of the evidence that certification is proper. *Priddy v. Health Care Serv.*

[1] On May 17, 2023, the Court dismissed with prejudice the claims against United Tape pursuant to a class settlement agreement reached by the parties and approved by the Court regarding "the United Tape class."

*Corp.*, 870 F.3d 657, 660 (7th Cir. 2017). In assessing whether the movant has met this burden, the district court should "make whatever factual and legal inquiries [that] are necessary under Rule 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

The Court takes the following facts from the first amended complaint, the undisputed portions of EWF's responses to Tapia-Rendon's requests for admission, and the parties' class certification briefing.

**A. The BIPA**

The BIPA prohibits a private entity from collecting or obtaining a person's biometric identifier or information[2] unless it: (1) first informs the person or her legally authorized representative in writing that the information is being collected or stored, (2) as well as the purpose and length of term of the collection, storage, and use, and (3) receives a written release executed by the person or her legally authorized representative. 740 ILCS § 15(b)(1)-(3). The statute also restricts disclosure and dissemination of biometric information and regulates its storage. *Id*. § 15(c)-(e).

Tapia-Rendon alleges that EWF violated sections 15(b), 15(d) and 15(e) of the BIPA by collecting her and the putative class members' biometric identifiers and/or biometric information without first obtaining her or the putative class members' consent and by storing the information without encryption. A more detailed description of her allegations is provided below.

[2] "Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. 740 ILCS 14/10. "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*.

Section 20 of the BIPA provides a right of action to a person aggrieved by a violation of the statute and states that a prevailing party may recover the greater of actual damages or liquidated damages of $1,000 for a negligent violation, or $5,000 for an intentional or reckless violation. *Id*. § 20. In *Cothron v. White Castle Systems, Inc*., 2023 IL 128004, the Illinois Supreme Court held that "a separate claim accrues under [the BIPA] each time a private entity scans or transmits an individual's biometric identifier or information in violation of section 15(b) or 15(d)." *Id.* ¶ 1. The court further stated that the use of "may" in section twenty indicates that the Illinois General Assembly intended for damages under the BIPA to be discretionary, and largely on this basis the court rejected the argument that "allowing multiple or repeated accruals of claims by one individual could potentially result in punitive and astronomical damage awards that would constitute annihilative liability not contemplated by the legislature and possibly be unconstitutional." *Id.* ¶ 40 (internal quotation marks omitted).

**B. EWF and its timeclock and enrollment devices**

EWF develops and sells workplace software and equipment, including biometric timeclocks and enrollment devices such as the EC10, EC20, EC200, EC500, EC700, Xenio10, Xenio20, Xenio200, Xenio500, Xenio700, TL200, TL250, and TL500 (collectively, the "devices"). These devices allow employers to track employees for security and/or timekeeping purposes as they enter or exit the workplace. EWF has sold its timeclock and enrollment devices to hundreds of customers throughout Illinois.

When an employee enrolls via one of EWF's devices, the device images the employee's finger with a scanner and generates a unique identifier for that person in the form of a mathematical representation of the fingerprint—a "digital template." Tapia-

Rendon alleges that EWF's devices exclusively work by "creating a mathematical representation of the minutiae points in [a] *fingerprint*, and then using that representation as a comparator whenever [the employee] use[s] her *fingerprint* to clock in or out." Pl.'s Mot. at 1 (emphasis added). EWF's CEO, Sino Jos, testified during his deposition that the image captured is not necessarily inclusive of a fingerprint but is rather "an image of the finger." Jos Dep. at 208:6-7. Jos also testified, however, that "fingerprint" is a description that EWF uses externally to describe what is imaged by its products because "it's a common lingo." *Id.* at 208:13.

Tapia-Rendon alleges that, for its devices that utilize cloud-based software, EWF stores the biometric data collected—including the digital templates—on servers leased from third parties. EWF admits only that the digital templates may be stored on third-party servers leased by EWF *or* on EWF's customers' own servers. Jos testified during his deposition that the information collected from EWF's timeclocks utilizing cloud-based software is stored on third-party servers leased by EWF, *id.* at 60:19–61:4, but that the image captured of an employee's fingerprint is not stored on the cloud-based servers. *Id*. at 210:11-12. Jos further testified that none of the data collected from the timeclocks is encrypted when stored on the cloud. *Id*. at 247:24.

**C. United Tape and Tapia-Rendon's interaction with EWF devices**

United Tape is a manufacturing company for which Tapia-Rendon was contracted to work on an hourly basis. In December 2020, EWF sold United Tape one of its timeclock devices—a TL250 Smart Fingerprint Terminal—and also licensed the accompanying software to EWF.

As an employee of United Tape, Tapia-Rendon was required to enroll via the

EWF timeclock that United Tape had purchased from EWF and then use the timeclock to scan in and out of work thereafter. This involved an initial imaging of her finger that was then used to create a unique identifying digital template for her. Later this unique identifying digital template would be compared against the image taken of her finger each time she scanned in and out of work. According to records EWF produced in discovery, starting on January 7, 2021, Tapia-Rendon scanned in and out of work at United Tape a total of fourteen times.

EWF admits that it did not inform Tapia-Rendon that her information would be collected or stored, for what purpose it would be collected or stored, or the length of time that her information would be collected or stored. Tapia-Rendon alleges that EWF also did not encrypt the biometric data it collected from her that it stored on the servers leased from third parties.

**D. The putative classes**

Tapia-Rendon seeks to certify the following classes:

> **The Class**: All individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016.
>
> **The Subclass:** All Class members who used a cloud-based EWF biometric device in Illinois on or before April 30, 2022.

She alleges that, throughout the relevant class periods, EWF sold in Illinois fourteen timeclocks and enrollment devices equipped with its cloud-based software that all functioned in the same manner. Tapia-Rendon further alleges that because EWF did not obtain prior consent from users of its devices, the same violations of the BIPA that she experienced were also experienced by at least 2,620 people in Illinois who unknowingly had their data collected and stored by EWF devices. Those individuals

scanned in and out of the timeclocks in question approximately 2,439,412 times during the class periods.

By EWF's estimate, because the BIPA allows for liquidated damages of $1,000 for each negligent violation and $5,000 for each reckless or intentional violation—and because Tapia-Rendon alleges three separate violations of BIPA per scan—Tapia-Rendon could seek as much as $3,000 for each negligent scan and $15,000 for each reckless or intentional scan. (As noted earlier, the Illinois Supreme Court has held that each scan represents a separate violation of the BIPA. *Cothron*, 2023 IL 128004 at ¶ 1.). The parties agree that Tapia-Rendon has not alleged any actual damages suffered by her or any class member.

**Discussion**

In order for the case to proceed as a class action, the plaintiffs must show that their proposed classes satisfy all the requirements of Rule 23, which sets out the criteria for class certification. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). "In conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

First, under Rule 23(a), a putative class must satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). More specifically, Rule 23(a) requires the class to be so numerous that joinder of all members is impracticable; there are common questions of law or fact; the representatives' claims are typical of those of the class; and the representatives fairly and adequately protect the interests of the class.

Second, the proposed class must fall within one of the three categories in Rule 23(b). *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). The plaintiffs argue for certification under Rule 23(b)(3). Rule 23(b)(3) requires finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**A. Rule 23(a) requirements**

EWF does not contest that Tapia-Rendon has met her burden of establishing that the putative classes satisfy the numerosity, commonality, and typicality requirements of Rule 23(a). Nor does EWF appear to dispute the adequacy of the proposed counsel for the class. EWF does, however, challenge the adequacy of Tapia-Rendon as class representative. The Court disagrees.

**1. Adequacy**

A representative party must demonstrate that he "will fairly and adequately protect the interests of the class." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) (internal quotation marks omitted). To demonstrate adequacy of representation, the Court must assess "the adequacy of the named plaintiff[ ] as representative[ ] of the proposed class's myriad members, with their differing and separate interests," and "the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 609-10 (7th Cir. 2021) ("representative parties cannot adequately represent

class members with divergent interests"); *see also*, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Moreover, "the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses" does not prevent class certification. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013).

EWF challenges the adequacy of Tapia-Rendon as the named plaintiff based primarily[3] on its contention that her potential recovery is lower than that of the average class member. Specifically, EWF contends that—based on its own estimations—Tapia-Rendon's potential award could be roughly 66 times smaller than that of the average class member. This, EWF contends, diminishes her interest in the litigation and makes it "likely [that] she would be antagonistic to the interests of other class members." Def.'s Resp. at 9.

First, EWF does not explain *how* Tapia-Rendon's smaller recovery makes it "likely [that] she would be antagonistic to the interests of other class members." *Id*. If EWF refers to a claimed increased incentive—as compared to her fellow class members—to settle the case rather than proceed to trial, that contention lacks merit. Any future class settlement would require approval by the Court under Rule 23(e)(2)(D), and in considering approval the Court would need to ensure that "the proposal treats class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D).

Second, EWF fails to cite a single case supporting the proposition that the possibility or likelihood that a named plaintiff might be entitled to a lesser damages

[3] EWF also contends, in a cursory and undeveloped manner, that Tapia-Rendon is inadequate because of the applicability of its affirmative defenses to her alleged conduct. As discussed in further detail below, this contention lacks merit even assuming it is not forfeited.

award than others in the class renders her an inadequate class representative. The Court "will not fill this void by crafting arguments and performing the necessary legal research" on EWF's behalf. *Fednav Int'l Ltd. v. Cont'l Ins. Co*., 624 F.3d 834, 842 (7th Cir. 2010). The contention is therefore forfeited. *See Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived").

Even if EWF had not forfeited this point, it would fail on the merits. EWF concedes that Tapia-Rendon's claims "[arise] from the same event or course of conduct that gives rise to the claims of other class members and [her] claims are based on the same legal theory." Def.'s Resp. at 6 (internal quotation marks omitted). EWF also does not dispute that Tapia-Rendon suffered the same *type* of injury as every other class member ("technical violation of BIPA," *id.* at 2) that entitles her to the same *type* of recovery ("statutory damages," *id*. at 16). Tapia-Rendon is an adequate representative because she "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Moreover, EWF offers nothing to dispute Tapia-Rendon's already-demonstrated commitment to pursing and participating in this litigation on behalf of her fellow class members.

The Court therefore concludes that Tapia-Rendon and the class members possess the same interest in vindicating their statutory rights under the BIPA such that she adequately represents the class. *See Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020). The Court further concludes, and EWF does not dispute, that class counsel have demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g).

**2. Other Rule 23(a) requirements**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Seventh Circuit has explained that "[t]he key numerosity inquiry . . . is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 773 (7th Cir. 2021). The parties estimate that the class is over 2,000 people, making it sufficiently numerous under Rule 23(a)(1) to make joinder impracticable. *See Fauley v. Heska Corp.*, 326 F.R.D. 496, 504–05 (N.D. Ill. 2018) ("[A] class of forty is generally enough to certify a class.").

Second, Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "[T]he class claims 'must depend on a common contention' that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard*, 989 F.3d at 598 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Tapia-Rendon alleges a standardized pattern of conduct toward all members of the proposed classes: biometric registration during a worker's initial enrollment via an EWF device and biometric scanning upon subsequent entries to and exits from the workplace. The putative classes therefore share common questions, including factual questions about the functionality of EWF devices and their collection and storage of class members' data, as well as legal questions about whether that collection and storage constitutes a violation of the BIPA. The Court therefore concludes that the proposed class satisfies the commonality requirement.

Finally, Rule 23(a)(3) requires the class representative's claims to be typical of

those of the potential class members. Fed. R. Civ. P. 23(a)(3). "As a general matter, '[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Howard*, 989 F.3d at 605 (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)) (alteration in original). Tapia-Rendon is typical of the class because her claim is identical to the claims of the proposed class members, as all of the claims arise from a uniform course of conduct. The only variation among class members appears to be the possible number of scans—or violations—that each suffered. Tapia-Rendon's claims thus "have the same essential characteristics as the claims of the class at large." *Lacy v. Cook County*, 897 F.3d 847, 866 (7th Cir. 2018).

Thus, Tapia-Rendon has satisfied all four requirements of 23(a).

**B. Rule 23(b)(3) requirements**

As previously noted, certification under Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

EWF contends that superiority does not exist because significant damages are available for most or all class members. It contends that the potential for significant damages incentivizes individual litigation; poses manageability issues regarding individualized damage determinations that it says will be necessary—under *Cothron*—if EWF is found liable; and raises due process concerns. EWF also contends that predominance does not exist because its affirmative defenses require individualized evaluation of class members' conduct.

**1. Large potential recoveries**

EWF contends that the damages available to the putative class members under the BIPA—particularly after the Illinois Supreme Court's holding in *Cothron*—places the proposed class outside the intended scope of Rule 23(b)(3) in various ways.

**a. Incentive to litigate individually**

EWF first contends that the putative class members' ability recover potentially significant damages operates to incentivize members to litigate their claims individually. It cites several cases that it contends supports this proposition, but as Tapia-Rendon points out, none of those cases are factually analogous, and none of them are binding authority.

To the Court's knowledge, not a single class member other than Tapia-Rendon has sued EWF, likely because EWF's violations of the BIPA are effectively surreptitious. Nor did any of the thirty-four members of the United Tape settlement class decide to opt out of the class even after they *were* notified of their entitlement to significant damages.

There is a hypothetical possibility that some individual class members may prefer to litigate their claims individually. But at this point, it's purely hypothetical. The Court is persuaded that litigating these claims on a class-wide basis "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615.

And even if one accepts the possibility of the filing of additional claims given the purported incentive referenced to EWF, as a general rule, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation."

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The potential class comprises over 2,000 individuals, all with virtually identical claims that will involve identical proof. It can hardly be disputed that resolving these claims through a class action "would be more efficient than proceeding with hundreds of individual suits." *Porter v. Pipefitters Ass'n Loc. Union* 597, 208 F. Supp. 3d 894, 912 (N.D. Ill. 2016).

**b. Manageability issues**

The Court addresses next EWF's contention that *Cothron*'s lack of guidance regarding how discretionary damages under the BIPA are to be awarded renders the putative class here unmanageable. Specifically, EWF contends that, if judgment is found against it, the Court or a jury would need to engage in a "nightmarish," individualized damages assessment for each individual class member. Def.'s Resp. at 14. The Court disagrees.

In the Court's view, EWF's overstates the impact of *Cothron*. First of all, on the record before the Court, the number of violations of the BIPA is likely to be easily ascertainable, as the nature of the violations is alleged to be the same from class member to class member. Although *Cothron* leaves room for discretion in fashioning a damages award under the BIPA, there is a reasonable likelihood a standardized per-scan will almost certainly be established and applied consistently across the class. Again, the class is not seeking actual damages, and the likelihood of any significant number of class members having viable claims for actual damages is remote. Rather, the request is for liquidated damages under the statute, and there is every reason to believe that these will be assessed on a common per-scan basis across the class, even if the amount differs from the $1,000 or $5,000 liquidated damages amounts provided in

the BIPA. In other words, the fact that damages under the BIPA are discretionary after *Cothron* does not mean that they cannot be awarded in a common class-wide manner.

Moreover, as EWF correctly points out, the superiority analysis—which includes assessing possible class-management issues—involves *balancing* manageability issues with the benefits to be gained from resolving claims on a class-wide basis. *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("class action treatment is appropriate and is permitted by Rule 23 when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding"). As already noted, the issues involved in this case are common to all potential class members, so the efficiency of a class proceeding far outweighs any management problems—real or hypothetical—posed by awarding discretionary damages to the putative classes.

If it at some point EWF's manageability concerns become realized, "Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just 'class claims,' but also class 'issues.'" *Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008) ("district judges can devise solutions to address [variances between class members' fact-bound, personal damages] if there are substantial common issues that outweigh the single variable of damages amounts."). Thus, "the need for individual damages determinations does not, in and of itself, require denial of [class] certification." *Id.*

**c. Due process concerns**

Finally, EWF contends that in this case, "any judgment may be violative of [its] constitutional due process rights" because the potential damages "rise to over $10 billion in aggregate for reckless or intentional violations." Def.'s Resp. at 15. Even

assuming EWF's potential damages estimates are not exaggerated, this argument is foreclosed by *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). As EWF acknowledges in a footnote, the Seventh Circuit held in *Murray* that the potential for massive class-wide damages does not render certification inappropriate. *Murray*, 434 F.3d at 953. The Court therefore need not discuss this contention further, as EWF raised it only to preserve the point.

The Court concludes that this case is well-suited for class treatment, especially because the claims involve only statutory damages that are likely to be awarded on a common basis, even after *Cothron*. There is no indication that the class members' interests would be better served by leaving them to individual lawsuits, or that realistically class members have an interest in doing so. Furthermore, consolidating these claims in this forum is particularly appropriate given that the BIPA is an Illinois statute, and the alleged violations all occurred within Illinois.

**2. Predominance**

EWF contends that class-wide issues do not predominate over individualized issues because "[i]n addition to the individualized damages concerns . . . above . . . EWF's waiver and equitable estoppel affirmative defenses require individual evaluations of each class members' conduct when they provided their alleged biometric information to their employer and, in turn, to EWF." Def.'s Resp. at 17. The Court has already sufficiently addressed the individualized damages point and has concluded that it does not render class certification inappropriate. The Court therefore turns to EWF's contentions regarding its claimed affirmative defenses.

Under Illinois law, waiver "is defined as either an express or implied voluntary

and intentional relinquishment of a known and existing right." *Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1470 (7th Cir. 1994) (internal quotation marks omitted). And the gist of the doctrine of equitable estoppel is that "one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject his claim to the bar of the statute, and then plead the very delay caused by his course of conduct." *Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co*., 118 Ill. App. 3d 754, 763, 455 N.E.2d 246, 252 (1983). EWF cites no authority to support the contention that either of these affirmative defenses is viable in a suit under the BIPA.[4]

Even if EWF had offered such authority, the Court agrees with Tapia-Rendon that "whether [these defenses] are even available on BIPA claims is a common issue, and if they are, so too is their application." Def.'s Reply at 1. As EWF frames the waiver defense—namely, that all residents of Illinois were on notice of their rights under the BIPA as of the law's passing in 2008—it is equally applicable to all class members. And regarding the supposed estoppel defense, it is not apparent—and EWF has not explained—how it supposedly applies in this case, and more importantly, there's no indication that its application would vary across the class. The argument is therefore forfeited and, in any event, it lacks merit. *Shipley*, 947 F.3d at 1063.

Even if EWF is correct that "[a] person-by-person analysis for the remaining class members will be required when evaluating EWF's defenses" because "EWF had hundreds of clients throughout the state using its timeclocks . . . . [and] each class member's conduct is likely to differ based on who their employer was," Def.'s Resp. at

[4] Conversely, Tapia-Rendon cites cases that suggest the BIPA abrogates such common-law defenses.

19, EWF fails to explain—and the Court cannot see—how these issues *predominate* over the numerous common issues. *See Kleen Prods. LLC v. Int'l Paper Co*., 831 F.3d 919, 929 (7th Cir. 2016) (predominance is satisfied when "common questions represent a significant aspect of case and . . . can be resolved for all members of a class in a single adjudication."); *see also*, *Amchem Prods., Inc.*, 521 U.S. at 623–24 (the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

As discussed earlier, the questions of law and fact underlying the class members' claims are essentially identical and will be premised on common proof. Specifically, the common issue of demonstrating that EWF collected and stored biometric information in violation of the BIPA will predominate over any potential individualized issues. The Court concludes that the proposed class is cohesive and satisfies the predominance requirement.

## Conclusion

For the reasons stated above, the Court grants the plaintiffs' motion for class certification [dkt. no. 138]. The Court certifies the following class under Rule 23(b)(3):

> **The Class**: All individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016.
>
> **The Subclass:** All Class members who used a cloud-based EWF biometric device in Illinois on or before April 30, 2022.

The Court also appoints the following attorneys as class counsel: Thomas R. Kayes of The Civil Rights Group, LLC and J. Dominick Larry of Nick Larry Law, LLC. The case is set for a telephonic status hearing on August 25, 2023 at 9:05 a.m. for the purpose of setting a schedule for further proceedings and discussing the possibility of settlement.

The parties are directed to confer regarding a schedule and are to submit a joint status report with a proposal (or competing proposals if they cannot agree) on August 22, 2023.

MATTHEW F. KENNELLY
United States District Judge

Date: August 15, 2023

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated, | ) | Case No. 1:21-cv-3400 |
| Plaintiff, | ) | Judge: Hon. Matthew F. Kennelly |
| v. | ) | Magistrate: Hon. Beth W. Jantz |
| EASYWORKFORCE SOFTWARE, LLC, | ) | |
| Defendant. | ) | |

**EASYWORKFORCE SOFTWARE, LLC'S MOTION TO RECONSIDER GRANTING OF CLASS CERTIFICATION**

Defendant, EasyWorkforce Software, LLC ("EWF"), brings its Motion for Reconsideration of the Court's August 15, 2023 [Order ECF No. 167] (the "Order"), which granted Plaintiff's Motion for Class Certification (ECF No. 138).

## I. INTRODUCTION

EWF moves this Court pursuant to Fed. R. Civ. P. 54(b) to reconsider its Order granting Plaintiff's Motion for Class Certification and Appointment of Class Counsel under Fed. R. Civ. P. 23. Reconsideration is appropriate because the Order, with all due respect, makes numerous misstatements of both fact and law when analyzing the class certification requirements under Fed. R. Civ. P. 23(a) and (b)(3).

First, the court suggests that because not one class member has filed an individual lawsuit, there must not be an incentive to sue when analyzing the superiority requirement under Rule 23(b)(3). (Order at p. 12). This is not the correct analysis, and in fact, is contrary to existing case law as held by the 7th Circuit.

Second, the Order understates the impact of the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004 (2023) by insisting that there is a reasonable likelihood a "standardized per scan" formula might be used in this case to allot alleged damages to the putative class members in this case. (Order at p. 13). The Order fails to provide any guidance of what a "standardized per scan" formula would look like, nor does it identify where the Court came up with the formula. Regardless, the Court's ruling is unquestionably contrary to the holding in *Cothron* which is controlling on how damages can be awarded under BIPA claims.

Third, the Court misunderstood EWF's argument that a damages award in the billons would present manageability concerns because the award would surely need to be reduced by the court as unconstitutionally excessive. Instead, the court solely focused on EWF's position—raised solely to preserve its rights on appeal—that a damages award in the billions would be grossly disproportionate to any harm alleged defeating the superiority requirement under Rule 23(b)(3). The two arguments are separate and distinct. It does not appear that the Court factored this due process argument into its analysis at all as a result of this error.

Finally, Plaintiff for the first time in this case raised a challenge to the viability of the waiver and estoppel defenses EWF pled as affirmative defenses. Plaintiff waited until her reply brief to raise the argument, effectively sandbagging EWF, which was prejudicial and inappropriate. Moreover, Plaintiff's position on the viability of a waiver defense for BIPA claims is incorrect and runs contrary to decades of holdings in Illinois. The Court did not properly analyze this defense for the class or for the Plaintiff when determining whether she was an adequate class representative under FRCP 23(a).

## II. FACTUAL BACKGROUND

The Court's Order certified the state-wide class of individuals against EWF for alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"). Plaintiff's claims are brought for alleged violations of BIPA sections 15(b), 15(d), and 15(e) by collecting Plaintiff's and the putative class members' biometric identifiers and/or biometric information through the EWF Time Clock without first obtaining Plaintiff's or the putative class members' consent and storing the information without encryption. *See* Docket # 127, Counts 4-6. The certified class is comprised of at least 2,620 members with the putative subclass containing nearly as many. Plaintiff is seeking to recover $1,000 for negligent violations and $5,000 for reckless or intentional violations for each section of BIPA that was violated each and every time a putative class member "scanned" their finger using EWF's Time Clock. *See* Docket #127, ¶39.

It has been established that the class, and potentially the sub class, consists of at least 2,620 individuals. ECF No. 159 at p. 4. Those individuals scanned in and out of the timeclocks in question 2,439,412 times through the class period. ECF No. 159 at p. 4. Plaintiff alleges in the Complaint that three separate sections of BIPA were violated by EWF per-scan. ECF No. 159, Counts 4-6, prayer for relief. As a result, and contrary to the Order stating EWF "exaggerated" damages, Plaintiff is alleging the total damages sought to be "at least $24,394,120,000." *See* **Ex. 1**, Plaintiff's Second Supplemental 26(a)(1) Disclosures (this disclosure was issued after EWF's response brief was filed, otherwise it would have been included as an exhibit).

## III. STANDARD OF REVIEW

Under Rule 54(b), a court may reconsider its interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *accord Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). It is well-established

that, as an interlocutory order, class certification can be reconsidered at any time before entry of judgment. *See Duffin v. Exelon Corp.*, 2007 U.S. Dist. LEXIS 33616, at *5 (N.D. Ill. 2007). A motion to reconsider is proper if (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error of apprehension (not of reasoning); (4) there has been a significant change in the law; or (5) significantly new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

A motion for reconsideration affords a court discretion to correct its errors, thereby sparing the parties and appellate courts the burden of unnecessary proceedings. *See Galvan,* 978 F.3d at 587 n.3 ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider a [non-final order]."). "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).

## IV. <u>ARGUMENT</u>

### A. The Court Erred in its Superiority Analysis Under Rule 23(b)(3)

#### 1. There is a Clear Incentive to Sue Individually on BIPA Following the Illinois Supreme Court's Ruling in *Cothron*.

The Court's Order references the fact that "not a single class member … has sued EWF…." Although this might be true, this was not the appropriate inquiry when analyzing whether a class action is superior to individual litigation.

As mentioned in EWF's Opposition to Class Certification, Class actions were designed, in part, to provide a procedural means of incentivizing suits involving many class members with otherwise *de minimis* injuries. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (the "policy at the very core of the class action mechanism is to overcome the problem that small

recoveries do not provide the incentive for any individual to bring a solo action."). To this end, "[i]n most class actions—and those the ones in which the rationale for the procedure is most compelling—individual suits are infeasible because the claim of each class member is tiny relative to the expense of litigation." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995). Factors weighing in favor of an individual resolutions of claims include: (1) the potential for statutory damages; (2) the value of the potential individual recovery; and (3) the availability of attorneys' fees for the prevailing party. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577-78 (7th Cir. 2008) (holding that a potential recovery of over $50,000 plus attorney's fees and costs "is not the sort of remedy that would not otherwise be sought unless the class-action were available.").

In this case, a potential recovery of $15,000 in statutory damages for every single scan in addition to attorneys' fees and costs, standing alone, is enough incentive for an individual to bring their own claim in court. As established in EWF's prior briefing, the potential recovery per class member could be $2,793,000 for negligent violations and $13,965,000 for intentional violations of BIPA, plus their attorneys' fees and litigation costs. The inquiry is focused on the potential amount of recovery and whether there is an incentive to sue, not whether the individual actually sued the defendant.

Additionally, contrary to the Court's Order, the lack of any individual suits from these class members should have had little impact on the superiority requirement. Instead, the Court should have analyzed the above factors when determining whether there is an incentive to individually pursue claims under BIPA in general. The Court can look to *Andrews* for instruction on this point.

The *Andrews* Court did not analyze whether putative class members were filing individual suits against the defendant, but whether debtors file individual lawsuits generally under the statute at issue. Coupled with the fact that there were sufficient damages available to the class members,

(damages which are astronomically smaller than those potentially available in this case) the Court held that the Superiority requirement was not met as a result. *Andrews*, 545 F.3d at 577 ("The Andrews argue that a class action is superior because it is the only realistic means for recovery. But they do not dispute that under TILA a prevailing debtor with a typical loan can expect to receive over $ 50,000, plus attorney's fees and costs, in a rescission action and *that many debtors do in fact bring rescission claims*.").

Here, there can be no serious argument, nor did Plaintiff argue, that BIPA does not incentivize a plaintiff to sue for alleged violations of their rights. Nearly 2,000 lawsuits alleging violations of BIPA that have been filed since 2017.[1] BIPA lawsuits have been filed furiously since the Illinois Supreme Court's decision in *Rosenbach v. Six Flags Entertainment Corp*., 2019 IL 123186 in 2019. Post-*Cothron*, there was also an immediate increase in BIPA lawsuits filed due to the expansion of available statutory penalties to each person aggrieved under BIPA in addition to recovery of their attorneys' fees and costs.[2] This demonstrates without a doubt there is significant incentive to sue under BIPA individually. As a result, the court erred in its Superiority analysis under 23(b)(3) and class certification should be rejected.

**2. The Order Erroneously Applied The Holding And Impact of *Cothron***

In granting Plaintiff's Motion for Class Certification, the Court ruled that, "this case is well-suited for class treatment, especially because the claims involve only statutory damages that are likely to be awarded on a common basis, even after *Cothron*." ((Order, pg. 15). Respectfully,

---

[1] https://www.reuters.com/legal/litigation/column-could-fee-awards-winning-defendants-chill-biometric-privacy-litigation-2023-07-20/#:~:text=Reuters%20has%20reported%20that%20nearly,courts%20in%20just%20two%20months.

[2] https://news.bloomberglaw.com/privacy-and-data-security/illinois-biometric-privacy-cases-jump-65-after-seminal-ruling

the basis in which the Court relied on when granting class certification is erroneous as a matter of law. The ruling fails to understand and apply the Illinois Supreme Court's reasoning in *Cothron* correctly. Within the Order, the Court makes reference to "EWF's overstate[ment]" of the impact of *Cothron* (Order at p. 13) and then offers up a hypothetical damages scenario that has never been raised in this case. In relevant part the Court stated as follows:

> Although *Cothron* leaves room for discretion in fashioning a damages award under the BIPA, there is a reasonable likelihood a standardized per scan [sic] will almost certainly be established and applied consistently across the class. Again, the class is not seeking actual damages, and the likelihood of any significant number of class members having viable claims for actual damages is remote. Rather, the request is for liquidated damages under the statute, and there is every reason to believe that these will be assessed on a common per-scan basis across the class, even if the amount differs from the $1,000 or $5,000 liquidated damages amounts provided in the BIPA. In other words, the fact that damages under the BIPA are discretionary after *Cothron* does not mean that they cannot be awarded in a common class-wide manner. (underling added) (Order at pg. 13)

The Court's ruling above is inconsistent with the Illinois Supreme Court's ruling in *Cothron*, where the holding allowed plaintiffs to seek to recover damages under BIPA every time they scanned their finger on a timeclock used by the defendant. (BIPA claim accrues with "every scan or transmission of biometric identifiers or biometric information without prior informed consent." *Cothron*, 2023 IL 128004, at ¶45). Unsurprisingly, because of this holding, Plaintiff is seeking damages per-scan for each and every class member as evident by their recent amended 26(a) disclosures, which were provided to EWF after it filed its response brief, seeking over $24 billion in damages, which cannot be reached without a recovery per-scan. Ex. 1, at 4.

Despite the holding in *Cothron*, this Court appeared to offer up a hypothetical damages calculation that has never been presented in this case, or any other BIPA case to EWF's knowledge. The Court does not offer any explanation of what a "common per-scan" award would look like, how it arrived at this conclusion or the authority it relied to make such a statement. In doing so the Court dismissed EWF's arguments concerning manageability and due process, discussed

further below, to certify the class. The Court's position is confusing unless it is indicating, without any argument being presented, that it has already decided that it will only allow per-person damages to be awarded in this case. This is the only way damages could be applied consistently across the class. To take this position however, irrefutably contradicts the holding in *Cothron* which specifically rejected the per-person damages theory.

EWF respectfully argues that the Court's ruling would be different if correctly analyzed because the alleged judicial economy in resolving the class claims together is vastly outweighed by the manageability concerns due to the highly individualized damages presented in this case. This is in addition to the incentive arguments above. Coupled together class action is not the superior method of adjudication for this case. EWF request this Court grant its motion to reconsider and deny class certification accordingly.

**3. An Award in the Billions Would Surely Require a Damages Reduction Based On Due Process Concerns.**

The Court misunderstood EWF's argument that a damages award in the billons would present manageability concerns because the award would surely need to be reduced by the court as unconstitutionally excessive. Instead, the court solely focused on EWF's position—raised solely to preserve its rights on appeal—that a damages award in the billions would be grossly disproportionate to any harm alleged defeating the superiority requirement under Rule 23(b)(3). The two arguments are separate and distinct.

It is true that EWF raised a challenge to superiority arguing that the damages were grossly excessive to any actual harm caused and thus, class certification is not appropriate. EWF understood that 7th Circuit in *Murray v. GMAC Mortgage Corp*., 434 F.3d 948 (7th Cir. 2006), rejected the above argument, which was only made to preserve the issue on appeal. However, this

challenge was separate and distinct from EWF's due process arguments which were raised in the context of the manageability of the class if an excessive judgment was awarded.

EWF argued that because BIPA allows for damages to accrue every time an individual scans their finger into a timeclock, any judgment may be violative of EWF 's constitutional due process rights. In such a scenario, the Court would have to step in a reduce the judgment within constitution bounds. *See State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408 (an award that would be unconditionally excessive may be reduced by the Court). Plaintiff is seeking in excess of $20 billion in damages in this case, which EWF did not exaggerate as the Court suggested. (See Order pg. 15; Ex. 1, at 4). A judgment with a potential to be greater than $20 billion can only be seen as a grossly excessive punishment against EWF and is violative of its constitutional rights. Surely this would require a court to reduce the amount of any judgment. However, any reduction in this case would necessarily have to occur for each individual class member because the damages may be awarded per-scan, not per-person. This argument was raised in the context of manageability of the class which the Court did not appear to consider when making its ruling under Rule 23(b)(3). When considered, its apparent that class certification is not appropriate because any judicial economy in proceeding as a class is outweighed by the manageability concerns. EWF respectfully requests the Court reconsider its granting of the Motion for Class Certification.

**B. The Court Erroneously Analyzed EWF's Waiver and Estoppel Defenses As It Related to Both the Plaintiff and the Class.**

As an initial matter, the Order makes various references to EWF's failure to cite to authority in support of its contention that the affirmative defense of waiver and equitable estoppel are applicable in a suit under BIPA. (Order at p. 16). EWF did not cite authority in support of its position that these are viable affirmative defense because Plaintiff did not challenge EWF's waiver and estoppel defenses until its reply brief. When EWF filed its Answers and Affirmative Defenses

to Plaintiff's Amended Complaint on May 5, 2023 (Dkt. No. 133), Plaintiff's counsel never moved to strike nor respond to those defenses. For the first time in a reply brief, Plaintiff's counsel raised issue with the affirmative defenses, effectively sandbagging EWF. *See U.S. v. Williams*, 504 U.S. 36, 59 n.5 (1992) (Stevens, J., dissenting) ('Sandbagging is just as improper in an appellate court as in a trial court.").

Be that as it may, Plaintiff's Reply Brief and the Court's Order shortchange the full purpose of BIPA and its allowance of waiver and estoppel defenses: "the Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶34. "Individuals generally may waive substantive rules of law, statutory rights, and even constitutional rights enacted for their benefit," *if* "the waiver is knowing, voluntary, and intentional." *In re Estate of Ferguson*, 313 Ill. App. 3d 931, 730 N.E.2d 1205, 1210, 246 Ill. Dec. 740 (2000). A waiver can be express or implied through action. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011).

Under Illinois Law, to show that a plaintiff impliedly waived a statutory right, a defendant must demonstrate that a plaintiff took a "clear, unequivocal and decisive act … manifesting an intention to waive [his/her] rights." *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 541 (N.D. Ill 2012) (citing *Pielet v. Hiffman*, 407 Ill. App. 3d 788, 798 (1st Dist. 2011). Additionally, a party is equitably estopped asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." See *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (Ill. 2001).

Despite Plaintiff's and the Court's bald assertions that waiver and estoppel are foreclosed by BIPA, the common law is part of the law of Illinois unless it has been expressly abrogated by statute. *People ex rel. Board of Trustees v. Barrett,* 382 Ill. 321, 346-47 (1946); *see also In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 728 (2nd Dist. 1998) (holding that waiver was available as a defense under the AIDS Confidential Act) (citation omitted). Nothing in the statutory text of BIPA expressly abrogates the equitable waiver or estoppel defenses. To the contrary, the purpose of BIPA—the power to withhold consent to the collection of biometrics—may still be fulfilled in applying waiver to claims as facts warrant. The individual can waive that right or enforce it as they choose.

The cases Plaintiff cited, *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 and *Brandenberg v. Meridian Senior Living, LLC* 564 F. Supp. 3d 627, are not binding on this Court, have little precedential value and dealt with an assumption of the risk defense. Undersigned counsel's office prevailed in state court on a viability challenge to a waiver affirmative defense recently for similar reasoning above. **See Group Exhibit 2 –** Order and Transcript from oral argument on Plaintiff's motion to strike a waiver defense in a BIPA claim.

EWF incorporated its arguments on its waiver and estoppel defenses in both its challenges to adequacy under Rule 23(a) and predominance under Rule 23(b)(3).

**1. Plaintiff is Not An Adequate Class Representative Because She Waived Her Rights Under BIPA.**

One of the core threshold conditions of Rule 23(a) is that the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Santiago v. City of Chi*, 19 F.4th 1010, 1018 (7th Cir. 2021). In order to be an adequate representative, "[a] named plaintiff *must* be a member of the putative class and have the *same interest* and injury as other members. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) (emphasis added)).

EWF argued for its waiver defense that Plaintiff—through her long history of using biometric clocks—knew or should have known about her rights under BIPA when she started her employment with United Tape at the time she gave up her alleged biometric information. As a result she could not act as a class representative under Rule 23(a)(4).

Plaintiff explained that she was instructed to provide her first/last name for the system and to choose a finger to use for clocking in/out. (EWF Opp. at 18). Plaintiff further explained that she would put a finger down in order to use the system. (EWF Opp. at 18). Importantly, Plaintiff did not express any concern to anyone at United Tape regarding the collection or storage of her biometric information in connection with the Time Clock. In addition, Plaintiff asserted that she was aware of the BIPA laws but waited to reach out to counsel *until several months after her employment with Employer Solutions Staffing Group*. (EWF Opp. at 18-19). Even more alarming, Plaintiff sued another company under BIPA approximately two months *before* she voluntarily provided her alleged biometric information to United Tape. (EWF Opp. at 19). Plaintiff unquestionably knew of her BIPA rights and proceeded with enrolling in a timeclock using her finger print, which satisfies EWF's waiver defense. Moreover, each day that she presented her finger for reading, and voluntarily proceeded to clock in/out of work every day with the intent to never exercise her known rights (or care where their biometrics landed). The elements to prove estoppel are likewise met.

A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members. See *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). It is hard to see how Plaintiff could be an adequate class representative when the facts clearly establish she waived her rights under BIPA and may even be estopped from pursuing such a claim by continuing to clock in and out without ever raising any

objection to the collection of her alleged biometric information. Yet, the Court's Order seemingly dismissed these arguments as "under developed" despite the detailed factual analysis offered by EWF. When fully considering these defenses it is clear Plaintiff is not an adequate class representative and class certification should have been denied.

**2. Predominance Is Not Met Because Individual Issues Will Dominate Over Class Issues.**

Plaintiff's experience is likely to greatly differ from person-to-person within the class because, as argued in EWF's opposition, EWF had hundreds of clients throughout the state using its timeclocks. EWF demonstrated that it has a likelihood of success of prevailing on its affirmative defenses against the Plaintiff. However, when analyzing class certification issues this is not required. *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 846 (7th Cir. 2022) (district courts are not required to determine the merits of an affirmative defense but only to consider whether determining the merits would require individual inquiries rather than class-wide proof).

The conduct of each and every class member will surely be different based on who their employer was and their individual experiences while enrolling into the timeclocks. In addition and contrary to the court's Order, evaluating the waiver defense requires an individualized inquiry because the sole focus is on *intent*. *Hahn v. Cty. Of Kane*, 2013 IL App (2d) 120660) (waiver is the intentional relinquishment of a known right). Inquiring into 2,620 class members' intent cannot be "common". In other words, EWF's affirmative defenses raised 2620 individual issues that would need to be addressed by the Court and predominance is not met as a result. Respectfully, the Court erred in its analysis and should have denied class certification.

WHEREFORE, EasyWorkforce Software, LLC respectfully requests this Honorable Court grant its Motion for Reconsideration, deny class certification and for any other relief deemed just and proper.

Date: August 29, 2023

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH**

By: ***/s/ Josh M. Kantrow***
One of Its Attorneys

Josh M. Kantrow
Thomas M. Wolf
Cameron T. Liljestrand
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F: 312.345.1778
Josh.Kantrow@lewisbrisbois.com
Thomas.Wolf@lewisbrisbois.com
Cameron.Liljestrand@lewisbrisbois.com
Attorneys for EasyWorkforce Software, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system on this 29th day of August 2023, which will send electronic notification to the attorneys of records at the email addresses on file with the Court.

s/ Josh M. Kantrow

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIA TAPIA-RENDON,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED TAPE & FINISHING CO., INC.; AND EASYWORKFORCE SOFTWARE, LLC,<br><br>*Defendants*. | Case No. 1:21-cv-3400<br><br>Judge: Hon. Matthew F. Kennelly<br><br>Magistrate: Hon. Beth W. Jantz |

**PLAINTIFF'S SECOND SUPPLEMENTAL RULE 26(a)(1) DISCLOSURES**

Pursuant to Fed. R. Civ. P. 26(a)(1) and Fed. R. Civ. P. 26(e), Plaintiff Maria Tapia-Rendon hereby makes the following supplemental initial disclosures:

**I. Identity of individuals likely to have discoverable information.**

| Individual | Topics |
|---|---|
| Maria Tapia-Rendon<br>c/o Nick Larry Law LLC<br>1720 W Division St<br>Chicago, IL 60622<br>773.694.4690 | The circumstances under which Plaintiff's fingerprint was scanned and captured by Defendants, whether she received written notice of the purpose for which her fingerprint was collected and duration for which it would be retained, and whether she consented to the scanning and capture of her fingerprints, damages. |
| David Harding<br>c/o Nick Larry Law LLC<br>1720 W Division St<br>Chicago, IL 60622<br>773.694.4690 | Expert opinions concerning the functionality of the Biometric Devices; EasyWorkforce's storage of data collected from the Biometric Devices and its compliance with industry standards while doing the same; and the potential for misuse of information collected from the Biometric Devices. |
| Sino Jos<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000 | EasyWorkforce's products and services; EasyWorkforce's storage of data collected through the timeclocks and enrollment |



**Exhibit 1**

| | |
|---|---|
| Chicago, IL 60606 | devices it sold; EasyWorkforce's data-security measures; EasyWorkforce's policies and procedures for obtaining consent prior to capturing biometric data; EasyWorkforce's compliance operations; EasyWorkforce's awareness of BIPA; and the authenticity of documents produced by EasyWorkforce. |
| Jose Gonzales<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60606 | EasyWorkforce's sales of timeclocks, enrollment devices, and time-and-attendance software; EasyWorkforce's relationships with its customers; and the authenticity of documents produced by EasyWorkforce. |
| Oscar Castillo<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60606 | EasyWorkforce's capture, collection, or other obtainment of template data from workers' fingerprints; and the authenticity of documents produced by EasyWorkforce. |
| Yoandy Martinez<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60606 | EasyWorkforce's source code for the timeclocks and enrollment devices it sells; the third-party modules and/or libraries used in EasyWorkforce's software and/or by the timeclocks and enrollment devices sold by EasyWorkforce; the synchronization of data between the timeclocks and enrollment devices sold by EasyWorkforce and the servers leased by EasyWorkforce; the encryption of data collected by the timeclocks and enrollment devices sold by EasyWorkforce; and the authenticity of documents produced by EasyWorkforce. |
| Narciso Oceguera<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60606 | EasyWorkforce's IT and data-storage infrastructure; EasyWorkforce's data-security measures as they concern information collected through timeclocks or enrollment devices; access to the timeclock and enrollment device data stored on EasyWorkforce's servers; EasyWorkforce's data-security and privacy practices; and the authenticity of documents produced by EasyWorkforce. |
| Eddie Sanchez<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60606 | EasyWorkforce's software and technology, and its decisions regarding the same; the hardware components of EasyWorkforce timeclocks and enrollment devices; and the |

| | |
|---|---|
| | authenticity of documents produced by EasyWorkforce. |
| Carlos Morales<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60622 | EasyWorkforce's time-and-attendance software; and the authenticity of documents produced by EasyWorkforce. |
| Vladimir Guerra<br>c/o Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60622 | Version 1.0 of EasyWorkforce's time-and-attendance software; the data collected by EasyWorkforce through its time-and-attendance software; storage of the data collected by EasyWorkforce through its time-and-attendance software; and the authenticity of documents produced by EasyWorkforce. |
| Marco Quintero<br>3141 Commerce Pkwy<br>Miramar, FL 33025 | SekureID Solutions Corp.'s relationship with EasyWorkforce; the SekureID hardware sold by EasyWorkforce; SekureID's indemnification of EasyWorkforce; the functionality of the timeclocks and enrollment devices sold by EasyWorkforce; the data collected by the timeclocks and enrollment devices sold by EasyWorkforce. |
| Employees or representatives of Innovatrics, s.r.o.<br>Pri vinohradoch 82<br>831 06 Bratislava<br>Slovak Republic | The functionality of the fingerprint-matching algorithm used by the Biometric Devices. |
| Employees or representatives of Vault Networks, Inc.<br>500 Green Rd.<br>Deerfield, FL 33064 | Storage of the data collected through the Biometric Devices. |
| All individuals identified in Defendants' initial disclosures and in discovery in this matter | The circumstances under which Plaintiff's and the Classes' fingerprints were scanned; whether and how Plaintiff's and the Classes biometrics were disclosed; whether informed, written consent was obtained prior to such collection and disclosure; and whether Defendants' misconduct was intentional or reckless. |

**II. Documents Plaintiff may use to support her claims.**

| Document Description | Location |
|---|---|
| Plaintiff's document production, interrogatory answers, and deposition testimony | Nick Larry Law LLC, 1720 W Division St, Chicago, IL 60622 |
| Expert report of David Harding and supporting exhibits | Nick Larry Law LLC, 1720 W Division St, Chicago, IL 60622 |
| United Tape's discovery responses and document production | Nick Larry Law LLC, 1720 W Division St, Chicago, IL 60622 |
| EasyWorkforce's discovery responses and document production | Nick Larry Law LLC, 1720 W Division St, Chicago, IL 60622 |

**III. Computation of damages.**

On behalf of herself and the proposed EasyWorkforce Class, Plaintiff seeks from EasyWorkforce Software, LLC damages of $5,000 for each of its BIPA violations. For each Class Member, that includes one violation of 740 ILCS 14/15(b) for each scan. To date, the number of violations of 740 ILCS 14/15(b) is at least 2,439,412. Thus, the total damages sought by the EasyWorkforce Class from EasyWorkforce are at least $12,197,060,000.

On behalf of herself and the proposed EasyWorkforce Subclass, Plaintiff seeks from EasyWorkforce Software, LLC damages of $5,000 for each of its BIPA violations. For each Subclass Member, that includes one violation of 740 ILCS 14/15(d) for each scan and one violation of 740 ILCS 14/15(e) for each scan. The total number of scans is at least 2,439,412. Thus, the total damages sought by the EasyWorkforce Subclass from EasyWorkforce are at least $24,394,120,000.

**IV. Insurance.**

Plaintiff states that the following insurance policies may be liable to satisfy all or part of a possible judgment owed by EasyWorkforce to the Class:

- Beazley MediaTech policy no. W2CA73200101, produced at EAS000081–000132;
- Scottsdale Insurance Company policy no. CPS2389286; and
- Wilshire Insurance Company policy nos. CL00228693, CL00228769, CL00260161, CL00293822, produced at EAS000404–457, EAS001120–1370.

Plaintiff is unaware of any other insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Dated: July 6, 2023

Respectfully submitted,

s/ J. Dominick Larry
One of Plaintiff's Attorneys

Thomas R. Kayes
THE CIVIL RIGHTS GROUP, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 60612
T: 708.722.2241
tom@civilrightsgroup.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
T: 773.694.4669
nick@nicklarry.law

*Attorneys for Plaintiff and the Classes*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on July 6, 2023, I served the foregoing by electronic mail upon those listed below:

Darcy L. Proctor
James K. Borcia
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
dproctor@tresslerllp.com
jborcia@tresslerllp.com
*Counsel for United Tape & Finishing Co.*

Mark A. Olthoff
Amy D. Fitts
POLSINELLI PC
900 W. 48th Pl., Suite 900
Kansas City, Missouri 64112
molthoff@polsinelli.com
afitts@polsinelli.com
*Counsel for EasyWorkforce Software, LLC*

Dmitry Shifrin
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
dshifrin@polsinelli.com
*Counsel for EasyWorkforce Software, LLC*

Thomas M. Wolf
Josh M. Kantrow
Cameron T. Liljestrand
550 W. Adams St., Suite 300
Chicago, IL 60661
LEWIS BRISBOIS BISGAARD & SMITH
LLP
thomas.wolf@lewisbrisbois.com
josh.kantrow@lewisbrisbois.com
cameron.liljestrand@lewisbrisbois.com
*Counsel for EasyWorkforce Software, LLC*

Dated: July 6, 2023

s/ J. Dominick Larry
One of Plaintiff's Attorneys

A
D. H.

STATE OF ILLINOIS
CIRCUIT COURT OF COOK COUNTY
CHANCERY DIVISION

| | |
|---|---|
| BERTRAND BAYEG, on behalf of himself and a class of similarly-situated individuals,<br><br>Plaintiff, | Case No. 2019-CH-08828 |
| v. | Hon. Alison C. Conlon |
| THE ADMIRAL AT THE LAKE, an Illinois non-profit corporation,<br><br>Defendant. | Calendar 4 |

**ORDER**

This matter coming to be heard on August 2, 2022 for hearing on Plaintiff's 2-615 Motion to Strike Defendant's Second Amended Affirmative Defenses No. 11 (Laches) and No. 4 (Waiver), the Court being duly advised, IT IS HEREBY ORDERED:

(1) Plaintiff's Motion to Strike is GRANTED, in part, as to Defendant's Affirmative Defense No. 11 (Laches). Defendant's Affirmative Defense No. 11 (Laches) is stricken with prejudice for the reasons stated on the record. Plaintiff's Motion to Strike is DENIED with prejudice, in part, as to Defendant's Affirmative Defense (No. 4). Defendant's Affirmative Defense No. 4 (Waiver) stands for the reasons stated on the record.

(2) The case management conference set for September 20, 2022 shall proceed as previously ordered.

*It is so ordered.*

AC

*Prepared by:*
Michael J. Roman
LEWIS BRISBOIS BISGAARD & SMITH LLP
michael.roman@lewisbrisbois.com

*As reviewed by:*
Gregg M. Barbarkoff
KEOGH LAW, LTD.
gbarbakoff@keoghlaw.com

Judge Alison C. Conlon
AUG 03 2022
Circuit Court – 2140

4879-3872-9773.1

**EXHIBIT 2**

FILED
8/8/2023 2:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2019CH08828
Calendar, 4
23875627

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

BERTRAND BAYEG, individually and on behalf of other similarly situated,

Plaintiff,

vs. No. 2019CH08828

THE ADMIRAL AT THE LAKE,

Defendant.

REPORT OF REMOTE PROCEEDINGS before the HON. JUDGE ALISON C. CONLON, Richard J. Daley Center, Room 2408, taken in the above-entitled cause, before Tracy L. Abbott, Certified Shorthand Reporter, on the 2nd day of August, 2022, at the hour of 10:30 a.m., via Zoom videoconference.

REPORTED BY:
Tracy L. Abbott, CSR
License No. 084-003182
APPEARING REMOTELY FROM WINNEBAGO COUNTY, ILLINOIS

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

REMOTE APPEARANCES:

KEOGH LAW, LTD.
BY: MR. GREGG M. BARBAKOFF
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(866) 726-1092
gbarbakoff@keoghlaw.com

On behalf of the Plaintiff;

LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
BY: MR. MICHAEL ROMAN
550 West Adams Street, Suite 300
Chicago, Illinois 60661
(312) 345-1718
michael.roman@lewisbrisbois.com

On behalf of the Defendant;

ALSO PRESENT REMOTELY:

MS. ABBI OLSON, Court clerk.
MS. KAITLYN WATKINS, judicial extern.

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

THE COURT: Good morning, everyone. Are we ready proceed?

MR. ROMAN: We are. Good morning, Judge.

THE COURT: Very good. Ms. Olson, will you call the case, please?

THE CLERK: 19-CH-08828, Bayeg v. Admiral at the Lake.

THE COURT: Who is here on behalf the plaintiff, please?

MR. BARBAKOFF: Good morning, your Honor. Greg Barbakoff on behalf of plaintiff.

THE COURT: Good morning. And on behalf of defendant?

MR. ROMAN: Good morning, Judge, Michael Roman for defendant.

THE COURT: Good morning. All right. We're here on the Plaintiff's 2-615 motion to strike two of the second amended affirmative defenses of laches and waiver. I have reviewed the papers and will entertain some brief argument from both of you starting with the movant, please.

MR. BARBAKOFF: Thank you, your Honor. Before I begin, given your prior statement, did

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

you have any particular areas or questions that you want a discussion on?

THE COURT: You know, I do have a question about the timing of the lawsuit that the plaintiff filed against Eden. When did that happen?

MR. BARBAKOFF: It was filed at the same time as this lawsuit, your Honor.

THE COURT: Oh, like the exact same day?

MR. BARBAKOFF: I don't know if it was the exact same day, but I believe both were filed -- as memory serves, yes, the Eden lawsuit was also filed in September of 2019, right around the same time as this lawsuit.

I know that what we're dealing with here is an issue that speaks to the pleadings rather than the facts outside the pleadings; but just by way of background, after our client learned about BIPA, he actually reached out to our firm to find out if his prior experiences both with Eden and Admiral, whether he had been subject to a violation of the statute.

We conducted our investigation,

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

concluded that he had a -- we had a good faith basis to believe that he absolutely had, had his biometric privacy rights violated and proceeded to file both suits.

THE COURT: Okay. On the laches issue, Mr. Roman, what is your client's strongest way of articulating what prejudice has been suffered by the defendant?

MR. ROMAN: Judge, I think on that point, it's the unique facts of this case; and that's particularly that this plaintiff is seeking, you know, a per scan theory of damages that is astronomical; and I think we've -- you know, unverified yet, but we have some reason to believe through discovery that Mr. Bayeg did know about his biometric rights before filing suit against them.

So the prejudice would be that our client investigated whether they needed to have a BIPA policy. One of the considerations of that that they were not subject -- I guess, two, that first the technology they felt when they investigated it did not implicate BIPA. The second was that given the kind of culture of the

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

company that if there was an issue, and the employees needed to have some assurances as to how the technology worked, that those would be raised. They have not received any complaints except for the complaint that we're here to talk about today, the suit.

So the prejudice would be that it seems that this particular plaintiff, he could have waited, knowing that there was damages to accrue; and that would be the prejudice to Admiral if judgment was against him that it's particular to this plaintiff.

THE COURT: But doesn't -- wouldn't that turn any BIPA plaintiff into some kind of monitor of employers? I mean, I'm just having trouble following the logic that somehow the company changed its position because an employee didn't sue it from the first day that he joined the company. And I don't -- it seems like the company just kept doing what it was doing and, in fact, had already investigated it through a team, you know, probably more reliable than a lone plaintiff.

You know, nothing against

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

Mr. Bayeg, but his job in life is not to monitor BIPA complaints, right? I mean, his job was to be an aide at this facility. So I have kind of a policy concern that this argument about laches and particularly the prejudice piece under the employer's construction of it would turn employees into BIPA monitors.

MR. ROMAN: Judge, first answer, the broader implications, I think that that's what we put in the pleadings is that Admiral has a code of conduct, and a little aside --

THE COURT: Can you -- Mr. Roman, I missed that last part. Could you be a little louder, please?

MR. ROMAN: Yes. I said, Admiral has a code of conduct, and you know I have seen a few -- and I'm not just talking about an employee handbook. It is an agreement. Admiral has a very strong culture that they like to implement. One of those codes is that if any violations of the law or if an employee thinks that a policy or a procedure is incorrect, that it's an open-door policy. And, again, I want to stress that it's not -- from what I have seen in other cases, other

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

clients, it's not a standard just come talk to us. It is an agreement that Mr. Bayeg signed coming on.

So I think with the laches, it does not need to be any plaintiff in any BIPA case. We do think that it is specific to this case, to this plaintiff and this defendant; and I think that that's an issue of fact that obviously on the merits, if we get there on summary judgment, the Court could rule; but we think at the pleadings stage, this is something that we can viably raise.

THE COURT: Okay. Mr. Barbakoff, do you have any response?

MR. BARBAKOFF: A couple points. One, to your Honor's concern about turning employees into monitors of BIPA, the plaintiff agrees. And that's precisely why we think this type of defense is inapplicable to BIPA claims. Because the point of BIPA isn't just to remedy past violations. In fact, it's quite the contrary.

BIPA is a comprehensive regulatory statute that biometric collectors are supposed to comply with on their own volition, and the whole

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

point of it is to make sure that they're taking the proper steps to safeguard and protect the biometric data that they collect and following the proper procedures before these types of issues occur. So this type of laches defense actually turns that on its head because it would essentially excuse the defendant's failure to affirmatively comply with the statute, which is the whole point in the first place, and incentivize them not to do so so long as they can say, um, well, the gentleman suing us already knew about biometric information; maybe he knew about BIPA.

Well, in this day and age, most people in Illinois are well aware of BIPA because they received their $650 checks from the Facebook settlement. The statute is not exactly a secret; but even if you know the statute exists, that doesn't mean that you know that you have a cause of action or know that the technology that's being used is violating BIPA. And it imposes an extremely heavy burden on the class of people the statute is supposed to protect while essentially exculpating the people the statue is supposed to

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

regulate.

As to the prejudice issue, what Mr. Roman pointed out is that there is an open-door policy, and they expect employees to come in and report violations of the statute; and that should show -- that somehow supports the prejudice, their prejudice argument. But prejudice comes down to the delay in filing suit.

So essentially, if I'm reading defendant's argument correctly, he should be barred from raising laches because on his first day of work, he didn't announce to the high heavens that the defendant was violating the law and immediately run off to sue his brand-new employer. But putting all that aside, the bigger issue is the lack of any causal connection between the prejudice, which is the allegedly increased damages that could be owed to the class, and plaintiff's conduct.

Plaintiff started in September of 2017. According to defendant's affirmative defenses, they had launched an investigation, done their own investigation into the statute, and conferred with their vendor by February of 2018;

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

and at that point they decided BIPA doesn't apply. Now, while we appreciate they're saying that there's an open-door policy and they were factoring in the input from their employees, there is nothing I've seen to suggest that after conducting that type of an analysis, going through the statute, conferring with the vendor, discussing the potential technology, that they would suddenly do an about-face because a certified nursing assistant said, you know, maybe that technology does collect biometric identifiers.

And moreover, they have been doing this before plaintiff arrived. They continued doing this after they left. And it seems that their decision not to begin complying with BIPA at an earlier date was really the result of their investigation. And moreover, they only started complying roughly one month before plaintiff filed this suit. So what we have is an ongoing situation that seems attributable entirely to their own analysis that predated plaintiff's employment and continued on after he left.

Without any causal connection, the

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

laches claim necessarily fails.

THE COURT: All right. Thank you. I took a hard look at a number of laches cases to just see where this prejudice argument fell in the different types of prejudices that have persuaded courts that a laches defense could apply. So here's where I fall. Here's the ruling on the motion.

I'm going to grant the motion and strike the laches defense for the following reasons: I conclude it as insufficient as pled, and consequently I'm not going to reach the larger issue of whether such an equitable defense should lie in a case involving statutory privacy rights.

An essential element of laches is that the defendant must, quote, "show prejudice or hardship from the delay, i.e., the delay induced him to change his position adversely." A classic example is in Pyle, P-y-l-e, versus Farrell, 12 Ill. 2d 547 from our Supreme Court in the year of 1958 which was a suit that was brought by a son who inherited the mineral estate in his parent's land in Hardin County, Illinois in 1932. At the time he lived in California. He moved back to

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

Illinois 14 years later in 1946. At no time between 1932 and 1954 did he visit the land or pay taxes on it or attempt to learn the tax status.

In 1954, a geologist approached him about a lease, and it was discovered that the land had been sold to the defendant in 1932 for delinquent taxes. The plaintiff claimed he never received notice of taxes due, nor the tax sale. But in any event, for more than 20 years, the defendant had been paying taxes on the mineral estate. The plaintiff sued to quiet title predicated on the theory that the tax sale and resulting deed did not comply with statutory requirements. The trial court dismissed the claim as barred by laches and the appellate court affirmed.

Specific -- there was a lot of delay in that case, but that's not what I'm citing it for. Specific to the prejudice issue, the Court applied the rule that a party is guilty of laches quote, "where he remains passive while an adverse claimant incurs risk, enters into obligations or makes expenditures for improvement or taxes," close quote.

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

Admiral quotes most of this in its brief. It just said makes expenditures and left off the for improvement or taxes. I think for improvement or taxes is an important piece of the analysis because it signals not just ordinary expenses but a real change in position of some level. So there the Court found that the defendant purchaser had expended money for taxes, and he had incurred risks and obligations attendant to a mineral estate lease. And that persuaded both courts, the trial and the reviewing court, that the essential element of prejudice to the defendant was there.

So that's a bit of -- it's a good example, but sometimes these land-use cases are not so useful in our more modern context. So I also took a look at the Mo, M-o, versus Hergan, H-e-r-g-a-n, case 2012 IL App (1st) 113179. That arose from a dispute among owners of certain real estate ventures, and the ventures contained a certain degree of risk. A few years in, one of the owners accused the other owners of failing to give her a sufficient ownership share or allocation; but the disgruntled owner did not file

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

suit until 10 years after the initial allocations were made. In the meantime, the value of the ventures had increased substantially. I'm talking nine figures. It was really impressive.

The 1st District found that the Plaintiff's delay in bringing suit caused prejudice to the other owners who, in the interim, had continued to participate in the ventures and create value on her behalf, while she in the meantime was withholding her decision of whether or not to do something formal to press for an acknowledgement that she had more equity. The Court's analysis focused on the risk involved in the business enterprise, finding that, quote, "A person may not withhold his claim awaiting the outcome of a doubtful enterprise and, after the enterprise has resulted in financial success favorable to the claimant, then assert his interest, especially where he has thus avoided the risks of the enterprise," close quote.

I find that the instant case doesn't fit in to any of the rubrics or the themes that are enunciated and illustrated in these cases and the other laches examples. I don't see that

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

Defendant Admiral incurred any risk from Bayeg's alleged delay any more than it would have had Mr. Bayeg never been at the company.

The defendant didn't enter into any new obligations. It was already using the timekeeper. It continued to use the timekeeper. There is no allegation that the defendant made expenditures for improvements or taxes or anything of the like that would amount to a change that would fit into the prejudice rubric given by the cases. Rather, the defendant merely continued to use the time clock as part of running its business.

So I do find that this affirmative defense amounts to an assertion that the plaintiff somehow had a duty and obligation to monitor Admiral's compliance with BIPA, which has no basis in the statute and really runs afoul of the statutory purposes that can be easily found on its face and in its plain language.

I do agree with the way that the particular -- that the plaintiff did articulate it under questioning, that to accept this defense would put an unfair burden on the plaintiffs and,

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

at the same time, exculpate companies by giving them the excuse, well, you, plaintiffs, didn't tell us to comply, so we didn't have to, which is not an accurate interpretation of BIPA and the framework that it gives us. I also do find it significant that Admiral had separately investigated its statutory obligations.

And so for all of those reasons, the motion to strike is granted as to the laches defense. I do not think this can be capably repled at this point. So the dismissal will be with prejudice.

I do want to hear argument now on the waiver piece of it. And just give me a moment to peruse my notes to see if I have any specific questions to start the conversation.

I'm going to let you go loose. Okay. So movement you have the floor as to the waiver.

MR. BARBAKOFF: Thank you, your Honor. Well, with respect to waiver, we found many similar issues that we felt plagued the laches defense. First and foremost, we believe that a waiver defense is inconsistent with the purpose of

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

the statute, especially when one is dealing with Section 14(b) -- or pardon me, with the Section 15(b) claim. And the reason for this is that the whole purpose of that provision as the Illinois court had held in Rosenbach was to make sure that consumers have informed consent before handing over their biometric data. The failure to comply with that requirement gives rise to the very harm that the legislature sought to prevent in the first place.

In other words, making an argument that somebody waived the need to get the disclosures required by statute before turning over their biometric data just engenders the very harm the statute was designed to prevent. And as many courts have held when construing similar consumer protection and disclosure provisions, an implied waiver defense is unavailable if it's going to frustrate the very purpose of the statute, which is what we feel that the problem is here.

Now, with respect to the waiver defense itself in terms of the allegations, waiver comes in two varieties, express or implied. An

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

express waiver is exactly what it sounds like. We actually see them pretty often in day-to-day life. My daughter has become a big fan of a place called Jump Zone in Vernon Hills. It's basically an area with a lot of trampolines. Before she can go on, we have to sign a document expressly waiving any claims that might arise from their negligence for any injuries that she sustains.

Now, there is no indication that there is anything here remotely resembling an express waiver, and all of the allegations really pertain to an implied waiver. Now, it's true, waiver can be implied by conduct. But waiver of a legal right, particularly one granted by statute, isn't like we inferred, which is why the Illinois courts routinely hold that to establish waiver, a critical element is that the party against whom the doctrine is asserted, meaning the party who allegedly waived the right, must have made a clear, unequivocal manifestation of an intent to waive that right. And what that means is that waiver will only be inferred when their conduct is inconsistent with any other intent than to waive that right.

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

Now, as a result, so long as courts have been able to discern a plausible alternative explanation, really any alternative explanation, it routinely rejected waiver defenses.

THE COURT: Mr. Barbakoff, is that true even at the pleading stage?

MR. BARBAKOFF: Whether waiver was rejected? I have to take a look again. I believe that Dustman and Rush Medical, I believe that those were both on the pleadings. I am not certain. I would have to take a look at the cases again. But the fact remains that even at the pleading stage, you have to be able to allege certain facts that would be able to show conduct inconsistent with anything else than an intent to waive that right.

While other elements of the claim such as what the defendant knew and whether they were really -- whether they intended to waive may require discovery. To get past the pleadings, you would still need to demonstrate why that conduct amounted to waiver. Now, this is probably -- and maybe this -- I understand that we have a stake in

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

this argument. But we think this is probably one of the easiest examples in which a waiver defense could not apply. If you have to be able to show conduct that's clear and unequivocal and only consistent with an intent to waive that right, the simple act of using a time clock is not going to be enough.

Just at bottom, people who punch time clocks do it for a reason. They want to make sure they get paid what they're owed. These are hourly employees. So clocking in and out ensures that they're getting compensated for the time worked; and conversely the employer requires them to do so to ensure that it is only paying them for the time that they actually worked. So both sides have a stake in ensuring that the time is recorded properly. That has nothing to do with waiving a statutory right.

And, perhaps, a better example is, if 20 people walked by, if one were to sit themselves right by Admiral's time clock and watch 20 people walk by and clock in, there is no way to tell which of those people was just using the time clock to record their hours versus the person

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

who's really just trying to waive their legal right.

Now, because the easiest explanation as to why somebody would use a time clock is to record their hours, that implied waiver defense necessarily fails.

THE COURT: That's an Occam's razor defense -- argument, right? Simplest explanation is usually the right one.

MR. BARBAKOFF: This is true. But even with respect to -- even with respect to the actual standard that's used in these waiver cases, it's not just the simplest explanation. It's whether there is any explanation.

In the Dustman case, the defendants were subject to an arbitration agreement. They had previously rejected time and again every attempt by the plaintiff to force them to arbitrate their claims. Later on the plaintiff filed a different suit against them in court, and they moved to compel the -- and there was a motion to compel arbitration. Now, the defendant -- strike that.

The plaintiffs eventually filed

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

suit against them in the court, and the defendants moved to compel arbitration. The arguments the plaintiffs raised is that the defendant had waived their right to arbitrate by consistently refusing to arbitrate prior claims; and the Court said, look, that might seem unfair, it might even seem strange, but there's many plausible explanations. The easiest one that I can think of is that defendants felt that they had the right to arbitrate only those claims they wanted to put in arbitration. Certain claims they might decide they want to proceed in court. So while it might seem unfair to allow them to compel arbitration after refusing to arbitrate in so many previous instances, there is not enough to show waiver.

Now, again, this is a far easier case. There's been no conduct that's been described at all on the part of my plaintiff that would be consistent with anything other -- that would be inconsistent, I should say, with anything other than an intent to waive that legal right.

THE COURT: Okay. Thank you, Mr. Barbakoff. Mr. Roman?

MR. ROMAN: Thank you, Judge. I think

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

the one case that was not discussed either here in argument or much in the brief was the Brennan case that we cited to which interpreted the AIDS Confidentiality Act that a number of appellate courts in Illinois have used as a comparator for the statutory rights in BIPA. The structure of the two statutes are nearly identical.

And I think what the Brennan court said was when evaluating a common law defense, unless it's expressly abrogated from the statute, then as a matter of law it may apply. We think that that is applicable here to BIPA. We don't think that -- there is nothing in the statute that says a defendant cannot avail himself of the waiver defense.

And I think Mr. Barbakoff and I'd disagree as to precisely the purpose of the statute that the Supreme Court cited to in Rosenbach. We pointed out in our brief that the purpose is really just to be able to withhold that consent. We laid it out in our briefs. I'm happy to answer any questions on that; but the facts as pled, Mr. Barbakoff is focusing a lot on whether it could be any other intention other than to

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

waive your right. I think that that's a factual question.

And, you know, for example, we've not yet taken Mr. Bayeg's deposition. We plan to very soon. I think a combination of the conduct with, you know, a statement that he doesn't care about his biometric rights or didn't at least at that time, I think that that will implicate the implied waiver. And, again, I think it's a lot of factual dispute that we were having in the briefing; but as a matter of law, I think it's something that we can raise.

THE COURT: So what was -- what is your best articulation of how Mr. Bayeg's conduct is inconsistent with any other intent than to waive?

MR. ROMAN: Well, again, this particular plaintiff is pursuing a damages theory that 99 percent of plaintiffs are not pursuing. I think the recent argument before the Supreme Court, that was said by members of the plaintiff. So I think that it would be inconsistent -- or would not be inconsistent with the right to waive it other than because of the damages that he's seeking.

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

THE COURT: And the timing again, so Mr. Bayeg filed both lawsuits in 2019, correct?

MR. BARBAKOFF: Yes, your Honor.

THE COURT: Did you say September of 2019?

MR. BARBAKOFF: Yes.

THE COURT: And you don't know yet, do you, Mr. Roman, the date on which he first contacted a lawyer about BIPA, right?

MR. ROMAN: Other than Mr. Bayeg's statement earlier today I think alluded to sometime between that timeframe, no, I don't know the exact date.

THE COURT: And remind me, I apologize, I know I wrote a timeline somewhere in this case, but I don't have it in front of me now. He started working at Admiral when?

MR. BARBAKOFF: September, 2017.

MR. ROMAN: September, 2017.

THE COURT: 9/17. And Admiral used this time clock until when.

MR. ROMAN: It is still in use.

THE COURT: Oh, it's still in use. Okay.

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

MR. ROMAN: If I may, I think the time period that might be relevant is that Admiral implemented a BIPA policy in between the time he resigned from the company, which was, Mr. Barbakoff can check me, I think March of 2019 and July of 2019 when the lawsuit was filed.

THE COURT: Okay. And filed 9/19, and BIPA -- Admiral implemented a BIPA policy sometime between March and September of 2019?

MR. ROMAN: Correct.

THE COURT: Okay. Mr. Barbakoff, any brief reply?

MR. BARBAKOFF: A few points, your Honor. One, given the argument that was just raised about how he manifested his intent to waive -- how he -- strike that. How he allegedly manifested his intent to waive his BIPA rights just by using their time clock, the concern that I have is largely the same that we have with the laches defense. Most people these days on an iPhone or a Samsung Galaxy, and most of those phones unlock using biometrics. Trying to find an example of which any person who could possibly bring a BIPA claim has ever used a biometric

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

device before is relatively easy in this day and age. Now, under their reasoning, if you know that the statute exists and you previously used a biometric scanner before, you're going to waive your BIPA rights just by using somebody else's biometric device.

On the one hand, that would again seem to defeat the purpose of the statute. Merely because somebody knows BIPA exists shouldn't strip them away of its protection; but on the other hand, that argument could be applied to any plaintiff in any scenario and would largely gut the statute and destroy its efficacy.

Now, another point with regarding the waiver, the argument that Mr. Roman waived was that he should be -- he should have been deemed to waive his biometric rights by using the time clock because he had a motive to increase his damage and assume -- and assert a per scan liability. Well, if that's the case, and Mr. Bayeg was -- wasn't really working at the job for compensation or because that was his chosen career, but really it was a way to let his damages increase, then why would he have intended to waive his BIPA rights?

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

He can't both be just trying to stack up damages and at the same time waiving his rights. The two arguments are inconsistent.

Now, in terms of -- in terms of the statutory purpose, with respect to the AIDS Confidentiality Act, we agree that courts have held that that can be waived. The difference is that the Illinois Supreme Court specifically stated that with respect to BIPA, if you failed to comply with the statutory procedures, the harm the statute was designed to prevent immediately springs to life.

So there is a clear statement from the Supreme Court that an argument -- that something like this waiver argument that would allow the defendant to go ahead and fail to comply with the statutory obligations but then turn around and absolve itself of any responsibility and say it was the plaintiff's fault really defeats the purpose of the statute because, again, the statute is not designed just to let people know that biometrics are being collected. Anyone who uses a fingerprint scanner knows they're using a fingerprint scanner.

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

The difference is the statute is designed to make sure that the defendant discloses its own biometric practices. What are we collecting? Biometric identifiers or biometric information? Meaning are we storing the identifier, or are we turning it into a different form? How long are we holding onto it for? When are we going to destroy it? What's our practices for retaining it like? That's the risks that the statute was designed to advise consumers of, not the general risk that are attendant to any particular biometric technology; but what are the risks posed by the defendant's biometric technology?

And there is nothing here that we have heard that suggested that the plaintiff had waived his right to receive that information or moreover waived his right to bring suit based on his failure to receive it.

THE COURT: Okay.

MR. ROMAN: May I respond, your Honor, just briefly?

THE COURT: Sure.

MR. ROMAN: On the inconsistency

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

argument, I really disagree that, you know, allowing damages to accrue is not indicative of waiving the right because the purpose of the statute is to safeguard the data and have the ability to do that. If he knew of his ability to assert his rights and purposely did not do that, I think that that's what implicates the waiver. so I just wanted to clarify that bit.

THE COURT: Okay. All right. Thank you for that. Give me just a few minutes to collect my thoughts on this, and I'll be back with you momentarily. Okay. Thank you.

MR. ROMAN: Thank you, your Honor.

MR. BARBAKOFF: Thank you, Judge.

(A brief recess was had.)

THE COURT: All right. Thank you for your patience. I'm ready to rule on the waiver defense.

This defense I think is a closer call than the laches defense. Everyone agrees that there is no express waiver pled. The battle is over whether an implied waiver is adequately pled as a defense.

So looking at the quality of the

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

allegations to state a defense of implied waiver, the pleader must plead, among other things, that the conduct was plainly inconsistent with any other intention than to waive. Here drawing all inferences in favor of the pleader defendant, as I must, there is conceivably a set of facts where the defendant Admiral could show that plaintiff's conduct was plainly inconsistent with any other intention than to waive.

The defendant alleges that plaintiff knew of his rights under BIPA, yet submitted himself and his biometric information to the timekeeping device in order to increase his damages. While plaintiff's counterpoint that he was doing it to record his time and stay gainfully employed seems more likely, that's not a determination that I can or should make right now. Instead, that showing would depend on many facts that may or may not be adduced in discovery. We will see where it leads.

For now the affirmative defense will stand. So the motion to strike is denied on that ground.

Anything else we needs to discuss

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

today? Do we have another date on the books? Is discovery progressing? Anything else I need to know?

MR. BARBAKOFF: I believe our next date is early September, your Honor.

THE COURT: Okay.

MR. BARBAKOFF: We have -- just providing background, we have been -- after much negotiation and much discussion with the manufacturer of the time clock, it sounds like we are probably going to have to move to compel afterall. They have said that they were going to -- just cards on the table, they had been negotiating to provide an affidavit, discussing among other items the type of data that they're timekeeping system collects. Our hope is that that can still go through; but just given the delays, we may wind up having to file a motion to compel to obtain the source code, which was what they were hoping to obviate the need for by providing the affidavit.

THE COURT: Okay. All right. I see we are on for September 20th, based on my notes, as I just scrolled up. So keep on, carry on, and it

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

sounds like I may see you before then. If not, have a good rest of the summer, okay?

MR. BARBAKOFF: Thank you, your Honor.

MR. ROMAN: Thanks, Judge.

MR. BARBAKOFF: The motion to compel, just to clarify, will be happening in Florida rather than Illinois State Court because we had to serve them through the IDAA.

THE COURT: Okay, right, right. Well, then maybe I won't see you until September. Have a good Labor Day too.

MR. ROMAN: I am excited about different jurisdictions, just from the weather perspective, your Honor.

MR. BARBAKOFF: Thank you, your Honor.

MR. ROMAN: Thank you.

THE COURT: Thank you, Madam Reporter.

(Which were all of the proceedings had in the above-entitled matter, adjourning at 11:19 a.m.)

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

STATE OF ILLINOIS )
) SS.
COUNTY OF WINNEBAGO )

I, Tracy L. Abbott, Certified Shorthand Reporter, a Notary Public in and for the County of Winnebago, State of Illinois, do hereby certify that I reported stenographically the proceedings in the above-entitled matter and that the foregoing is a true, correct and complete transcript of my stenographic notes so taken as aforesaid.

IN TESTIMONY WHEREOF I have hereunto set my hand and affixed my notarial seal this 16th day of August, A.D. 2022.

Tracy L. Abbott, C.S.R. No. 84-3182

FILED DATE: 8/8/2023 2:33 PM 2019CH08828


**$**

**$650**
9:16

**1**

**10**
15:1

**113179**
14:18

**12**
12:19

**14**
13:1

**14(b)**
18:2

**15(b)**
18:3

**19-CH-08828**
3:7

**1932**
12:23 13:2,6

**1946**
13:1

**1954**
13:2,4

**1958**
12:21

**1st**
14:18 15:5

**2**

**2-615**
3:18

**20**
13:9 21:20, 22

**2012**
14:18

**2017**
10:21 26:18, 19

**2018**
10:24

**2019**
4:14 26:2,5 27:5,6,9

**2d**
12:20

**5**

**547**
12:20

**9**

**9/17**
26:20

**9/19**
27:7

**99**
25:18

**A**

**ability**
31:5

**about-face**
11:9

**abrogated**
24:10

**absolutely**
5:2

**absolve**
29:18

**accept**
16:23

**accrue**
6:10 31:2

**accurate**
17:4

**accused**
14:22

**acknowledgement**
15:12

**act**
21:6 24:4 29:6

**action**
9:20

**actual**
22:11

**adequately**
31:22

**Admiral**
3:8 4:22 6:10 7:10, 15,18 14:1 16:1 17:6 26:17,20 27:2,8

**Admiral's**
16:17 21:21

**adverse**
13:22

**adversely**
12:18

**advise**
30:10

**affirmative**
3:19 10:21 16:14

**affirmatively**
9:8

**affirmed**
13:16

**afoul**
16:18

**age**
9:14 28:2

**agree**
16:21 29:6

**agreement**
7:18 8:2 22:17

**agrees**
8:17 31:20

**ahead**
29:16

**aide**
7:3

**AIDS**
24:3 29:5

**allegation**
16:7

**allegations**
18:23 19:11

**allege**
20:14

**alleged**
16:2

**allegedly**
10:17 19:19 27:16

**allocation**
14:24

**allocations**
15:1

**allowing**
31:2

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**alluded**
26:11

**alternative**
20:3

**amended**
3:19

**amount**
16:9

**amounted**
20:23

**amounts**
16:15

**analysis**
11:6,22 14:5
15:13

**announce**
10:12

**apologize**
26:14

**App**
14:18

**appellate**
13:15 24:4

**applicable**
24:12

**applied**
13:20 28:11

**apply**
11:1 12:6
21:3 24:11

**approached**
13:4

**arbitrate**
22:19 23:4,
5,10,14

**arbitration**
22:16,22
23:2,11,13

**area**
19:4

**areas**
4:1

**argument**
3:21 7:4
10:7,10 12:4
17:13 18:11
21:1 22:8
24:2 25:19
27:14 28:11,
15 29:14,15
31:1

**arguments**
23:2 29:3

**arise**
19:7

**arose**
14:19

**arrived**
11:14

**articulate**
16:22

**articulating**
5:7

**articulation**
25:14

**assert**
15:18 28:19
31:6

**asserted**
19:18

**assertion**
16:15

**assistant**
11:10

**assume**
28:19

**assurances**
6:2

**astronomical**
5:13

**attempt**
13:3 22:18

**attendant**
14:10 30:11

**attributable**
11:21

**avail**
24:14

**avoided**
15:19

**awaiting**
15:15

**aware**
9:15

**B**

**back**
12:24 31:11

**background**
4:19

**Barbakoff**
3:11,12,23
4:7,11 8:13,
15 17:20
20:6,8 22:10
23:23 24:16,
23 26:3,6,18
27:5,11,13
31:14

**barred**
10:11 13:15

**based**
30:18

**basically**
19:4

**basis**
5:2 16:17

**battle**
31:21

**Bayeg**
3:7 5:15 7:1
8:2 16:3
26:2 28:20

**Bayeg's**
16:1 25:4,14
26:10

**begin**
3:24 11:16

**behalf**
3:9,12,14
15:9

**big**
19:3

**bigger**
10:15

**biometric**
5:3,16 8:23
9:3,12 11:11
18:7,14 25:7
27:24 28:4,
6,17 30:3,4,
12,13

**biometrics**
27:22 29:22

**BIPA**
4:20 5:20,23
6:14 7:2,7
8:5,17,19,
20,22 9:13,
15,21 11:1,
16 16:17
17:4 24:6,12
26:9 27:3,8,
17,24 28:5,
9,24 29:9

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**bit** 14:14 31:8
**bottom** 21:8
**brand-new** 10:14
**Brennan** 24:2,8
**briefing** 25:11
**briefly** 30:22
**briefs** 24:21
**bring** 27:24 30:18
**bringing** 15:6
**broader** 7:9
**brought** 12:21
**burden** 9:22 16:24
**business** 15:14 16:13

C

**California** 12:24
**call** 3:6 31:20
**called** 19:3
**capably** 17:10
**care** 25:6
**career** 28:22
**case** 3:6 5:10 8:6,7 12:14 13:18 14:18 15:21 22:15 23:17 24:1,2 26:15 28:20
**cases** 7:24 12:3 14:15 15:23 16:11 20:12 22:12
**causal** 10:16 11:24
**caused** 15:6
**certified** 11:10
**change** 12:18 14:6 16:9
**changed** 6:17
**check** 27:5
**checks** 9:16
**chosen** 28:22
**cited** 24:3,18
**citing** 13:18
**claim** 12:1 13:14 15:15 18:3 20:18 27:24
**claimant** 13:22 15:18
**claimed** 13:7
**claims** 8:19 19:7 22:19 23:5, 10,11
**clarify** 31:8
**class** 9:22 10:18
**classic** 12:18
**clear** 19:20 21:4 29:13
**CLERK** 3:7
**client** 4:19 5:19
**client's** 5:6
**clients** 8:1
**clock** 16:12 21:6, 21,22,24 22:5 26:21 27:18 28:17
**clocking** 21:11
**clocks** 21:9
**close** 13:24 15:20
**closer** 31:19
**code** 7:10,16
**codes** 7:20
**collect** 9:3 11:11 31:11
**collected** 29:22
**collecting** 30:4
**collectors** 8:23
**combination** 25:5
**common** 24:9
**companies** 17:1
**company** 6:1,17,19,20 16:3 27:4
**comparator** 24:5
**compel** 22:21,22 23:2,13
**compensated** 21:12
**compensation** 28:21
**complaint** 6:5
**complaints** 6:4 7:2
**compliance** 16:17
**comply**

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

8:24 9:8 13:13 17:3 18:7 29:10, 16

**complying** 11:16,19

**comprehensive** 8:22

**concern** 7:4 8:16 27:18

**conclude** 12:11

**concluded** 5:1

**conduct** 7:11,16 10:19 19:13, 22 20:15,22 21:4 23:17 25:5,14

**conducted** 4:24

**conducting** 11:6

**conferred** 10:24

**conferring** 11:7

**Confidentiality** 24:4 29:6

**connection** 10:16 11:24

**consent** 18:6 24:21

**considerations** 5:20

**consistent** 21:5 23:19

**consistently** 23:4

**construction** 7:6

**construing** 18:16

**consumer** 18:17

**consumers** 18:6 30:10

**contacted** 26:9

**contained** 14:20

**context** 14:16

**continued** 11:14,23 15:8 16:6,11

**contrary** 8:21

**conversation** 17:16

**conversely** 21:13

**correct** 26:2 27:10

**correctly** 10:10

**County** 12:23

**couple** 8:15

**court** 3:1,5,9,13, 17 4:3,9 5:5 6:13 7:12 8:10,13 12:2,20 13:14,15,20 14:7,12 18:5 20:6 22:7,20 23:1,5,12,22 24:8,18 25:13,20 26:1,4,7,14, 20,23 27:7, 11 29:8,14 30:20,23 31:9,16

**Court's** 15:13

**courts** 12:6 14:11 18:16 19:16 20:2 24:5 29:6

**create** 15:9

**critical** 19:17

**culture** 5:24 7:19

**D**

**damage** 28:18

**damages** 5:12 6:9 10:18 25:17, 23 28:23 29:1 31:2

**data** 9:3 18:7,14 31:4

**date** 11:17 26:8, 13

**daughter** 19:3

**day** 4:10,12 6:18 9:14 10:12 28:1

**day-to-day** 19:2

**days** 27:20

**dealing** 4:16 18:1

**decide** 23:11

**decided** 11:1

**decision** 11:16 15:10

**deed** 13:13

**deemed** 28:16

**defeat** 28:8

**defeats** 29:20

**defendant** 3:14,16 5:8 8:7 10:13 12:16 13:6, 10 14:8,13 16:1,4,7,11 20:19 22:22 23:3 24:14 29:16 30:2

**defendant's** 9:7 10:10,21 30:13

**defendants** 22:16 23:1,9

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**defense**
8:18 9:5 12:6,10,13 16:15,23 17:10,23,24 18:18,23 21:2 22:6,8 24:9,15 27:20 31:18, 19,20,23

**defenses**
3:20 10:22 20:5

**degree**
14:21

**delay**
10:8 12:17 13:18 15:6 16:2

**delinquent**
13:7

**demonstrate**
20:22

**deposition**
25:4

**designed**
18:15 29:11, 21 30:2,10

**destroy**
28:13 30:8

**device**
28:1,6

**difference**
29:7 30:1

**disagree**
24:17 31:1

**discern**
20:2

**discloses**
30:2

**disclosure**
18:17

**disclosures**
18:13

**discovered**
13:5

**discovery**
5:15 20:21

**discussed**
24:1

**discussing**
11:8

**discussion**
4:2

**disgruntled**
14:24

**dismissal**
17:11

**dismissed**
13:14

**dispute**
14:19 25:10

**District**
15:5

**doctrine**
19:18

**document**
19:6

**door**
10:4

**doubtful**
15:16

**due**
13:8

**Dustman**
20:10 22:15

**duty**
16:16

**E**

**earlier**
11:17 26:11

**easier**
23:16

**easiest**
21:2 22:3 23:8

**easily**
16:19

**easy**
28:1

**Eden**
4:5,13,22

**efficacy**
28:13

**element**
12:15 14:12 19:17

**elements**
20:18

**else's**
28:5

**employee**
6:17 7:17,21

**employees**
6:2 7:6 8:16 10:4 11:4 21:11

**employer**
10:15 21:13

**employer's**
7:6

**employers**
6:15

**employment**
11:22

**engenders**
18:14

**ensure**
21:14

**ensures**
21:11

**ensuring**
21:16

**enter**
16:4

**enterprise**
15:14,16,17, 20

**enters**
13:22

**entertain**
3:21

**enunciated**
15:23

**equitable**
12:13

**equity**
15:12

**essential**
12:15 14:12

**essentially**
9:7,23 10:9

**establish**
19:16

**estate**
12:22 13:11 14:10,20

**evaluating**
24:9

**event**
13:9

**eventually**
22:24

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**exact**
4:9,12 26:13

**examples**
15:24 21:2

**exculpate**
17:1

**exculpating**
9:24

**excuse**
9:7 17:2

**exists**
9:18 28:3,9

**expect**
10:4

**expended**
14:8

**expenditures**
13:23 14:2 16:8

**expenses**
14:6

**experiences**
4:21

**explanation**
20:3,4 22:4, 8,13,14

**explanations**
23:7

**express**
18:24 19:1, 11 31:21

**expressly**
19:6 24:10

**extremely**
9:22

**F**

**face**
16:20

**Facebook**
9:16

**facility**
7:3

**fact**
6:21 8:8,21 20:13

**factoring**
11:4

**facts**
4:18 5:10 20:15 24:22

**factual**
25:1,10

**fail**
29:16

**failed**
29:9

**failing**
14:22

**fails**
12:1 22:6

**failure**
9:7 18:7 30:19

**faith**
5:1

**fall**
12:7

**fan**
19:3

**Farrell**
12:19

**fault**
29:19

**favorable**
15:18

**February**
10:24

**feel**
18:20

**fell**
12:4

**felt**
5:22 17:22 23:9

**figures**
15:4

**file**
5:4 14:24

**filed**
4:5,7,12,14 11:19 22:20, 24 26:2 27:6,7

**filing**
5:16 10:8

**financial**
15:17

**find**
4:21 15:21 16:14 17:5 27:22

**finding**
15:14

**fingerprint**
29:23,24

**firm**
4:21

**fit**
15:22 16:10

**floor**
17:18

**focused**
15:13

**focusing**
24:23

**force**
22:18

**foremost**
17:23

**form**
30:7

**formal**
15:11

**found**
14:7 15:5 16:19 17:21

**framework**
17:5

**front**
26:16

**frustrate**
18:19

**G**

**Galaxy**
27:21

**general**
30:11

**gentleman**
9:11

**geologist**
13:4

**give**
14:23 17:14 31:10

**giving**
17:1

**good**
3:1,3,5,11, 13,15,17 5:1 14:14

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**grant**
12:9

**granted**
17:9 19:14

**Greg**
3:12

**guess**
5:21

**guilty**
13:20

**gut**
28:12

**H**

**H-E-R-G-A-N**
14:18

**hand**
28:7,11

**handbook**
7:18

**handing**
18:6

**happen**
4:6

**happy**
24:21

**hard**
12:3

**Hardin**
12:23

**hardship**
12:17

**harm**
18:8,15 29:10

**head**
9:6

**hear**
17:13

**heard**
30:16

**heavens**
10:13

**heavy**
9:22

**held**
18:5,16 29:7

**Hergan**
14:17

**high**
10:12

**Hills**
19:4

**hold**
19:16

**holding**
30:7

**Honor**
3:12,23 4:8 17:20 26:3 27:14 30:21 31:13

**Honor's**
8:16

**hourly**
21:11

**hours**
21:24 22:5

**I**

**i.e.**
12:17

**identical**
24:7

**identifier**
30:6

**identifiers**
11:12 30:4

**IL**
14:18

**Ill**
12:20

**Illinois**
9:15 12:23 13:1 18:4 19:15 24:5 29:8

**illustrated**
15:23

**immediately**
10:14 29:11

**implement**
7:19

**implemented**
27:3,8

**implicate**
5:23 25:8

**implicates**
31:7

**implications**
7:9

**implied**
18:18,24 19:12,13 22:5 25:9 31:22

**important**
14:4

**imposes**
9:21

**impressive**
15:4

**improvement**
13:23 14:3,4

**improvements**
16:8

**inapplicable**
8:19

**incentivize**
9:10

**inconsistency**
30:24

**inconsistent**
17:24 19:23 20:16 23:20 25:15,21,22 29:3

**incorrect**
7:22

**increase**
28:18,23

**increased**
10:17 15:3

**incurred**
14:9 16:1

**incurs**
13:22

**indication**
19:9

**indicative**
31:2

**induced**
12:17

**inferred**
19:15,22

**information**
9:12 30:5,17

**informed**
18:6

**inherited**

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

12:22
**initial** 15:1
**injuries** 19:8
**input** 11:4
**instances** 23:15
**instant** 15:21
**insufficient** 12:11
**intended** 20:20 28:24
**intent** 19:20,23 20:16 21:5 23:21 25:15 27:15,17
**intention** 24:24
**interest** 15:19
**interim** 15:7
**interpretation** 17:4
**interpreted** 24:3
**investigated** 5:19,23 6:21 17:7
**investigation** 4:24 10:22, 23 11:18
**involved** 15:13
**involving** 12:14
**iphone** 27:21
**issue** 4:17 5:5 6:1 8:8 10:2,16 12:13 13:19
**issues** 9:4 17:22

**J**

**job** 7:1,2 28:21
**joined** 6:18
**Judge** 3:4,15 5:9 7:8 23:24 31:14
**judgment** 6:11 8:10
**July** 27:6
**Jump** 19:4

**K**

**kind** 5:24 6:14 7:3
**knew** 9:11,12 20:19 31:5
**knowing** 6:9

**L**

**laches** 3:20 5:5 7:4 8:4 9:5 10:11 12:1, 3,6,10,15 13:15,21 15:24 17:9, 22 27:20 31:20
**lack** 10:16
**laid** 24:21
**Lake** 3:8
**land** 12:23 13:2,6
**land-use** 14:15
**language** 16:20
**largely** 27:19 28:12
**larger** 12:12
**launched** 10:22
**law** 7:21 10:13 24:9,11 25:11
**lawsuit** 4:4,8,13,15 27:6
**lawsuits** 26:2
**lawyer** 26:9
**learn** 13:3
**learned** 4:20
**lease** 13:5 14:10
**left** 11:15,23 14:2
**legal** 19:14 22:1 23:21
**legislature** 18:9
**level** 14:7
**liability** 28:19
**lie** 12:14
**life** 7:1 19:2 29:12
**lived** 12:24
**logic** 6:16
**lone** 6:22
**long** 9:10 20:1 30:7
**loose** 17:17
**lot** 13:17 19:5 24:23 25:9

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

louder
7:14

M

M-O
14:17

made
15:2 16:7 19:19

make
9:1 18:5 21:9 30:2

makes
13:23 14:2

making
18:11

manifestation
19:20

manifested
27:15,17

March
27:5,9

matter
24:11 25:11

meaning
19:18 30:5

means
19:21

meantime
15:2,10

Medical
20:10

members
25:20

memory
4:13

merits
8:9

Michael
3:16

mineral
12:22 13:10 14:10

minutes
31:10

missed
7:13

Mo
14:17

modern
14:16

moment
17:14

momentarily
31:12

money
14:8

monitor
6:15 7:1 16:16

monitors
7:7 8:17

month
11:19

morning
3:1,3,11,13, 15,17

motion
3:18 12:8,9 17:9 22:21

motive
28:18

movant
3:22

moved
12:24 22:21 23:2

movement
17:18

N

necessarily
12:1 22:6

needed
5:19 6:2

negligence
19:7

notes
17:15

notice
13:8

number
12:3 24:4

nursing
11:10

O

obligation
16:16

obligations
13:23 14:9 16:5 17:7 29:17

Occam's
22:7

occur
9:5

Olson
3:5

ongoing
11:20

open-
10:3

open-door
7:22 11:3

ordinary
14:5

outcome
15:16

owed
10:18 21:10

owner
14:24

owners
14:19,22 15:7

ownership
14:23

P

P-Y-L-E
12:19

paid
21:10

papers
3:21

pardon
18:2

parent's
12:22

part
7:13 16:12 23:18

participate
15:8

party
13:20 19:17, 18

passive
13:21

past
8:20 20:21

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**patience** 31:17
**pay** 13:2
**paying** 13:10 21:14
**people** 9:15,22,24 21:8,20,22, 23 27:20 29:21
**percent** 25:18
**period** 27:2
**person** 15:15 21:24 27:23
**persuaded** 12:5 14:11
**pertain** 19:12
**peruse** 17:15
**phones** 27:22
**piece** 7:5 14:4 17:14
**place** 9:9 18:10 19:3
**plagued** 17:22
**plain** 16:20
**plaintiff** 3:10,12 4:5 5:11 6:8,12, 14,23 8:5,7, 17 10:20 11:14,19 13:7,11 16:15,22 22:18,19 23:18 25:17, 20 28:12 30:16
**plaintiff's** 3:18 10:19 11:22 15:6 29:19
**plaintiffs** 16:24 17:2 22:24 23:3 25:18
**plan** 25:4
**plausible** 20:2 23:7
**pleading** 20:7,14
**pleadings** 4:17,18 7:10 8:11 20:11, 21
**pled** 12:11 24:23 31:21,23
**point** 5:10 8:19 9:1,9 11:1 17:11 28:14
**pointed** 10:3 24:19
**points** 8:15 27:13
**policy** 5:20 7:4,21, 23 10:4 11:3 27:3,8
**posed** 30:13
**position** 6:17 12:18 14:6
**possibly** 27:23
**potential** 11:8
**practices** 30:3,8
**precisely** 8:18 24:17
**predated** 11:22
**predicated** 13:12
**prejudice** 5:7,18 6:7, 10 7:5 10:2, 7,8,17 12:4, 16 13:19 14:12 15:7 16:10 17:12
**prejudices** 12:5
**press** 15:11
**pretty** 19:2
**prevent** 18:9,15 29:11
**previous** 23:14
**previously** 22:17 28:3
**prior** 3:24 4:21 23:5
**privacy** 5:3 12:14
**problem** 18:20
**procedure** 7:22
**procedures** 9:4 29:10
**proceed** 3:2 23:12
**proceeded** 5:3
**proper** 9:2,4
**properly** 21:17
**protect** 9:2,23
**protection** 18:17 28:10
**provision** 18:4
**provisions** 18:17
**punch** 21:8
**purchaser** 14:8
**purpose** 17:24 18:4, 19 24:17,20 28:8 29:5,20 31:3
**purposely** 31:6

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**purposes** 16:19
**pursuing** 25:17,18
**put** 7:10 16:24 23:10
**putting** 10:15
**Pyle** 12:19

**Q**

**quality** 31:24
**question** 4:4 25:2
**questioning** 16:23
**questions** 4:1 17:16 24:22
**quiet** 13:11
**quote** 12:16 13:21, 24 15:14,20
**quotes** 14:1

**R**

**raise** 8:12 25:12
**raised** 6:3 23:3 27:15
**raising** 10:11
**razor** 22:7
**reach** 12:12
**reached** 4:20
**reading** 10:9
**ready** 3:2 31:17
**real** 14:6,19
**reason** 5:14 18:3 21:9
**reasoning** 28:2
**reasons** 12:11 17:8
**receive** 30:17,19
**received** 6:4 9:16 13:8
**recent** 25:19
**recess** 31:15
**record** 21:24 22:5
**recorded** 21:16
**refusing** 23:4,14
**regulate** 10:1
**regulatory** 8:22
**rejected** 20:4,9 22:17
**relevant** 27:2
**reliable** 6:22
**remains** 13:21 20:13
**remedy** 8:20
**remind** 26:14
**remotely** 19:10
**repled** 17:11
**reply** 27:12
**report** 10:5
**require** 20:21
**required** 18:13
**requirement** 18:8
**requirements** 13:14
**requires** 21:13
**resembling** 19:10
**resigned** 27:4
**respect** 17:21 18:22 22:11 29:5,9
**respond** 30:21
**response** 8:14
**responsibility** 29:18
**result** 11:17 20:1
**resulted** 15:17
**resulting** 13:13
**retaining** 30:9
**reviewed** 3:20
**reviewing** 14:11
**rights** 5:3,16 12:14 24:6 25:7 27:17 28:5, 17,24 29:2 31:6
**rise** 18:8
**risk** 13:22 14:21 15:13 16:1 30:11
**risks** 14:9 15:20 30:9,13
**Roman** 3:3,15,16 5:6,9 7:8, 12,15 10:3 23:23,24 25:16 26:8, 10,19,22

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

27:1,10 28:15 30:21, 24 31:13

**Rosenbach** 18:5 24:19

**roughly** 11:19

**routinely** 19:16 20:4

**rubric** 16:10

**rubrics** 15:22

**rule** 8:10 13:20 31:17

**ruling** 12:7

**run** 10:14

**running** 16:12

**runs** 16:18

**Rush** 20:10

S

**safeguard** 9:2 31:4

**sale** 13:8,12

**Samsung** 27:21

**scan** 5:12 28:19

**scanner** 28:4 29:23, 24

**scenario** 28:12

**secret** 9:17

**Section** 18:2

**seeking** 5:12 25:24

**separately** 17:6

**September** 4:14 10:20 26:4,18,19 27:9

**serves** 4:13

**settlement** 9:17

**share** 14:23

**show** 10:6 12:16 20:15 21:3 23:15

**sides** 21:15

**sign** 19:6

**signals** 14:5

**signed** 8:2

**significant** 17:6

**similar** 17:22 18:16

**simple** 21:6

**simplest** 22:8,13

**sit** 21:20

**situation** 11:20

**sold** 13:6

**son** 12:21

**sought** 18:9

**sounds** 19:1

**speaks** 4:17

**specific** 8:6 13:17,19 17:15

**specifically** 29:8

**springs** 29:12

**stack** 29:1

**stage** 8:11 20:7,14

**stake** 20:24 21:16

**standard** 8:1 22:12

**start** 17:16

**started** 10:20 11:18 26:17

**starting** 3:22

**stated** 29:9

**statement** 3:24 25:6 26:11 29:13

**statue** 9:24

**status** 13:3

**statute** 4:23 8:23 9:8,17,18,23 10:5,23 11:7 16:18 18:1, 13,15,20 19:14 24:10, 13,18 28:3, 8,13 29:11, 20,21 30:1, 10 31:4

**statutes** 24:7

**statutory** 12:14 13:13 16:19 17:7 21:18 24:6 29:5,10,17

**steps** 9:2

**storing** 30:5

**strange** 23:7

**stress** 7:23

**strike** 3:19 12:10 17:9 22:23

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

27:16
**strip** 28:9
**strong** 7:19
**strongest** 5:6
**structure** 24:6
**subject** 4:22 5:21 22:16
**substantially** 15:3
**success** 15:17
**suddenly** 11:9
**sue** 6:18 10:14
**sued** 13:11
**suffered** 5:7
**sufficient** 14:23
**suggest** 11:5
**suggested** 30:16
**suing** 9:11
**suit** 5:16 6:6 10:8 11:20 12:21 15:1,6 22:20 23:1 30:18
**suits** 5:4
**summary** 8:9
**supports** 10:6
**supposed** 8:23 9:23,24
**Supreme** 12:20 24:18 25:19 29:8, 14
**sustains** 19:8

**T**

**taking** 9:1
**talk** 6:5 8:1
**talking** 7:17 15:3
**tax** 13:3,8,12
**taxes** 13:3,7,8,10, 24 14:3,4,8 16:8
**team** 6:21
**technology** 5:22 6:3 9:20 11:8,11 30:12,14
**terms** 18:23 29:4
**themes** 15:22
**theory** 5:12 13:12 25:17
**thinks** 7:21
**thoughts** 31:11
**time** 4:8,15 12:24 13:1 16:12 17:1 21:6,9, 12,15,16,21, 23 22:4,17 25:8 26:21 27:1,3,18 28:17 29:2
**timeframe** 26:12
**timekeeper** 16:6
**timeline** 26:15
**timing** 4:4 26:1
**title** 13:11
**today** 6:5 26:11
**trampolines** 19:5
**trial** 13:14 14:11
**trouble** 6:16
**true** 19:12 20:6 22:10
**turn** 6:14 7:6 29:17
**turning** 8:16 18:13 30:6
**turns** 9:6
**type** 8:18 9:5 11:6
**types** 9:4 12:5

**U**

**unavailable** 18:18
**understand** 20:24
**unequivocal** 19:20 21:4
**unfair** 16:24 23:6, 13
**unique** 5:10
**unlock** 27:22
**unverified** 5:14

**V**

**varieties** 18:24
**vendor** 10:24 11:7
**ventures** 14:20 15:3,8
**Vernon** 19:4

FILED DATE: 8/8/2023 2:33 PM 2019CH08828

**versus**
12:19 14:17 21:24

**viably**
8:12

**violated**
5:3

**violating**
9:21 10:13

**violation**
4:23

**violations**
7:20 8:20 10:5

**visit**
13:2

**volition**
8:24

W

**waited**
6:9

**waive**
19:21,23 20:17,20 21:5 22:1 23:21 25:1, 15,22 27:15, 17 28:4,17, 24

**waived**
18:12 19:19 23:3 28:15 29:7 30:17, 18

**waiver**
3:20 17:14, 19,21,24 18:18,22,23 19:1,11,12, 13,16,22 20:4,8,23 21:2 22:6,12 23:15 24:15 25:9 28:15 29:15 31:7, 17,21,22

**waiving**
19:6 21:17 29:2 31:3

**walk**
21:22

**walked**
21:20

**wanted**
23:10 31:8

**watch**
21:21

**withhold**
15:15 24:20

**withholding**
15:10

**words**
18:11

**work**
10:12

**worked**
6:3 21:13,15

**working**
26:17 28:21

**wrote**
26:15

Y

**year**
12:20

**years**
13:1,9 14:21 15:1

Z

**Zone**
19:4

# Exhibit
# C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIA TAPIA-RENDON, on behalf of herself and all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 21 C 3400** |
| **UNITED TAPE & FINISHING CO. INC. and EASYWORKFORCE SOFTWARE, LLC,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Maria Tapia-Rendon sued EasyWorkforce Software LLC (EWF) for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1–99. Tapia-Rendon moved to certify a class and subclass under Federal Rule of Civil Procedure 23(b)(3). On August 15, 2023, the Court granted the motion for class certification. *Tapia-Rendon v. United Tape & Finishing Co., Inc.*, No. 21 C 3400, 2023 WL 5228178 (N.D. Ill. Aug. 15, 2023) (hereinafter "Class Cert. Order"). EWF then filed a motion for reconsideration. The Court held oral argument on the motion. For the reasons stated below, the Court denies EWF's motion.

### Background

The Court's class certification order discusses the relevant background of this case. To summarize, EWF sells workplace timekeeping systems that allow employers to track employees as they enter and exit the workplace. Employees clock in and clock

out by scanning their fingers on EWF devices, and EWF software identifies the employees and tracks their entries. The parties dispute whether EWF's devices capture biometric identifiers and biometric information as those terms are defined in BIPA. EWF has sold its timekeeping systems to hundreds of customers in Illinois, including Tapia-Rendon's employer United Tape & Finishing Co. Tapia-Rendon filed suit alleging that EWF and United Tape violated BIPA sections 15(b), 15(d), and 15(e) by collecting, sharing, and storing her biometrics without following the protocols mandated by the statute. United Tape opted to settle the claims against it, and the Court approved the class settlement agreement of the United Tape claims in May 2023. Only the claims against EWF remain.

On May 19, 2023, Tapia-Rendon filed a motion for certification under Rule 23(b)(3) of a class of individuals who had used EWF biometric devices on or after June 24, 2016 and a subclass of individuals who had used EWF biometric devices on or before April 30, 2022. EWF opposed certification. First, EWF argued that Tapia-Rendon was not an adequate class representative because she did not use EWF's devices as many times as other class members and therefore would have a smaller recovery than the average class member. Second, EWF argued that a class action was not a superior method of adjudication because class members' claims are valuable enough to incentivize individual litigation and the potential for an excessive aggregate damages award would render class litigation unmanageable. Third, EWF argued that common issues did not predominate because EWF's affirmative defenses of waiver and estoppel required individualized analysis.

The Court considered EWF's arguments but found that class certification was

appropriate. The Court found that the class satisfied the numerosity, commonality, and typicality requirements of Rule 23(a), none of which EWF disputed. With respect to the Rule 23(a) requirement that a representative party must "fairly and adequately protect the interests of the class," the Court found that EWF forfeited the point by failing to develop and support its argument. The Court also stated that, even considering the smaller-recovery argument on its merits, Tapia-Rendon was an adequate representative because she suffered the same type of injury arising from the same course of events and was entitled to the same type of recovery as the other class members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotations omitted)). Tapia-Rendon therefore shared "the same interest in vindicating [her] statutory rights under the BIPA" as her fellow class members, even if her ultimate recovery might be less than the average class member. Class Cert. Order at 9.

Next, the Court found that the class satisfied the Rule 23(b)(3) requirements "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In response to EWF's argument that the potential for substantial individual damages made individual litigation preferable to class-wide proceedings, the Court noted that no other class members had filed suit. This weighed against EWF's hypothesis that class members had sufficient incentive to litigate individually. In any event, the Court explained that even considering the "hypothetical possibility that some individual class members may prefer to litigate

their claims individually . . . the Court is persuaded that litigating these claims on a class-wide basis would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Class Cert. Order at 12 (quoting *Amchem Prods., Inc.*, 521 U.S. at 615).

The Court also disagreed with EWF's argument that class proceedings would be unmanageable because of the Illinois Supreme Court's decision in *Cothron v. White Castle System, Inc.*, 2023 IL 128004, 216 N.E.3d 918, in which the court held that a separate BIPA claim accrues each time a private entity scans a biometric identifier in violation of the statute. *Id.* ¶ 1, 216 N.E.3d at 920. The court in *Cothron* also stated that damages under BIPA are discretionary rather than mandatory. *Id.* ¶ 42. EWF argued that *Cothron* opened the door for an award in the billions if the class members' claims are aggregated and that the consequent need for the Court to reduce the excessive award would create a flood of individualized damages inquiries. But EWF conceded that the Seventh Circuit held in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), that the potential for massive class-wide damages does not render certification inappropriate. In addition, the Court explained that the class had requested only statutory damages and not actual damages, so there was no reason to believe that damages would not be awarded—or could not be reduced—on a standardized basis across the class. Class Cert. Order at 13–14.

Finally, the Court disagreed with EWF's argument that common issues would not predominate because EWF's waiver and estoppel defenses would require individual evaluations of each class members' conduct. The Court first explained that the question

whether these defenses are even available under BIPA is a common issue. Moreover, EWF itself framed the waiver defense as one that would be equally applicable to all class members. *See* Def.'s Resp. to Pl.'s Mot. for Class Cert. at 18 ("BIPA was passed in 2008, meaning any resident of Illinois, including Plaintiff, should know about her BIPA rights."). The Court further found that EWF forfeited its argument that the estoppel defense defeated the predominance requirement because "it is not apparent—and EWF has not explained—how it supposedly applies in this case, and more importantly, there's no indication that its application would vary across the class." Class Cert. Order at 16. The Court concluded that, even if the application of EWF's defenses might differ among class members, "EWF fail[ed] to explain—and the Court cannot see—how these issues *predominate* over the numerous common issues." Class Cert. Order at 17.

Because the Court found that the requirements of Rule 23(a) and 23(b)(3) were met, it granted Tapia-Rendon's motion to certify:

> **The Class:** All individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016.
>
> **The Subclass:** All members who used a cloud-based EWF biometric device in Illinois on or before April 30, 2022.

**Discussion**

Federal Rule of Civil Procedure 54(b) permits a district court to revise a non-final order at any time before entering judgment. A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, "a motion to reconsider is only appropriate where a court has misunderstood a party,

where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

Because the class certification order thoroughly discusses the requirements for class certification under Rules 23(a) and 23(b), the Court will not repeat that analysis here. Rather, it will address each of EWF's arguments for reconsideration in turn.

**A. Rule 23(b)(3) superiority requirement**

EWF first argues that the Court erred in finding that the proposed class meets the "superiority" requirement of Rule 23(b)(3). To certify a class action under Rule 23(b)(3) the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule identifies four considerations that are "pertinent" to these determinations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). EWF asserts that the Court's superiority analysis was flawed because it did not place enough weight on the fact that class members have a substantial incentive to pursue individual litigation after the Illinois Supreme Court's

decision in *Cothron*. Relatedly, EWF says that the Court improperly considered the fact that no class members have filed individual suits against EWF. EWF also argues that the Court misunderstood its argument that a class action would be unmanageable because of potential complications associated with awarding damages.

**1. Individual incentive to litigate**

As the Court noted in its certification order, the Illinois Supreme Court held in *Cothron* that a defendant can commit a fresh BIPA violation (or even multiple violations) each time a fingerprint is scanned. Class Cert. Order at 3 (citing *Cothron*, 2023 IL 128004, ¶ 1). Because BIPA authorizes statutory damages of $1,000 for negligent violations and $5,000 for reckless or intentional violations, 740 ILCS 14/20(1)–(2), individuals who have had their fingerprints scanned numerous times can potentially recover thousands of dollars per scan. In this case, the plaintiffs allege that EWF violated three different subsections of BIPA with each scan and therefore seek $15,000 in damages per scan based on allegations of reckless or intentional conduct on EWF's part. Because many class members scanned their fingers numerous times throughout their employment, each could theoretically recover thousands or even, potentially, millions of dollars. EWF contends that given the high potential value of each class member's claims, class members are sufficiently incentivized to sue individually, and a class action is not superior to this one-by-one approach.

The Court disagrees. To start, there are several reasons why the incentives for individual suit in this case are likely a good deal weaker than EWF suggests. First, the amount that a BIPA plaintiff realistically can expect to recover cannot be predicted by simply multiplying the number of possible violations by $1,000 or $5,000. As this Court

has previously discussed, the Illinois Supreme Court indicated in *Cothron* that BIPA's damages are discretionary. *See Rogers v. BNSF Ry. Co.,* No. 19 C 3083, 2023 WL 4297654, at *7–*9 (N.D. Ill. June 30, 2023). In federal court, the parties are entitled to have a jury exercise that discretion. *See id.* at *9. Although the Court has not yet reached the question of how to instruct a jury in a post-*Cothron* BIPA suit, the Illinois Supreme Court has indicated that an appropriate award under BIPA would "(1) fairly compensate[ ] claiming class members and (2) include[ ] an amount designed to deter future violations, without destroying defendant's business." *Cothron*, 2023 IL 128004, ¶ 42, 216 N.E.3d at 918. This suggests that the jury would be permitted to consider factors such as the harm suffered by the class members and the proportionality of any damages award in relation to the severity of the defendant's misconduct. *See also St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919) (explaining that the Fourteenth Amendment bars states from enacting statutory damage provisions that are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable"). Given that, as EWF points out, the class members in this case do not appear to have suffered any harm apart from an arguable invasion of privacy, there is no real reason to believe that jackpot-like individual jury awards are likely.

Second, BIPA litigation, if carried through to a conclusion, is costly and time-consuming. That has been this Court's consistent experience in several years of presiding over both individual and class BIPA suits. For example, class counsel stated at oral argument that this case required investigation into the scanner's source code and other technical details to determine whether and how biometric information was obtained and electronically stored. And retention of expert witnesses to address these

and other issues tends to be the norm if the case proceeds past the initial stages. That tends to require a significant outlay of funds on the part of plaintiff's counsel, not to mention the significant time commitment that litigating such a case requires. Even with BIPA's fee-shifting provision, 740 ILCS 14/20(3), attorneys may conclude that it is not worth the investment to pursue BIPA claims on an individual basis given the uncertainty regarding damages in light of their discretionary nature.

Third, as the Court explained in its order granting class certification, *see* Class Cert. Order at 12, BIPA violations are often surreptitious, in the sense that class members may not be aware that their legal rights have been violated—let alone that they could be entitled to a significant recovery as a result. Without the notice that they would receive as part of a class action, these individuals may never know that they had a potentially valuable claim in the first place. See *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (stating that whether "the plaintiff will be aware of her rights" under a statute is among the "considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing [the statute's] objectives"); *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (rejecting the defendant's argument "that certification should be denied because class members could obtain a larger award if they filed individual suits" in part because that argument "presumes that the class members are aware that their rights may have been violated").

Some combination of these observations likely explains why BIPA suits commonly are pursued on a class-wide rather than an individual basis. Indeed, as the Court discussed in its certification order, no member of *this* class has brought an

individual suit thus far. Nor did any member of the class that entered into a settlement with EWF's co-defendant, United Tape, exercise their right to opt out of that settlement.

EWF responds that the Court should not—and in fact cannot—consider whether class members actually have filed or are likely to file suit. Instead, EWF insists that "[t]he inquiry is focused on the potential amount of recovery and whether there is an incentive to sue, not whether the individual actually sued the defendant." Def.'s Mot. for Reconsideration at 5. EWF cites to the Seventh Circuit's decision in *Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008), for this proposition. But *Andrews* did not establish the categorical rule that EWF suggests. In that case, the Seventh Circuit held that the Truth in Lending Act (TILA) remedy of rescission could not be pursued on a class-wide basis. *Andrews*, 545 F.3d at 571. This holding was premised mainly on a TILA-specific textual argument and on the highly individualistic nature of the TILA rescission remedy, which requires undoing complex credit transactions. In reaching this conclusion, the Seventh Circuit briefly addressed the plaintiffs' argument that a class action was the only "realistic" means of recovery. *Id.* at 577. The court noted in response that "TILA rescission is not the sort of remedy that would not otherwise be sought unless the class-action mechanism were available" because "a prevailing debtor with a typical loan can expect to receive over $50,000, plus attorney's fees and costs." *Id.*

This statement cannot be read to establish a categorical rule that courts must deny certification any time a class could theoretically recover over $50,000 per person pursuant to a statute. Nor does it say that courts cannot look at whether putative class members actually have pursued individual suits. Indeed, that would be at odds with the

text of Rule 23(b)(3)(B), which specifically instructs courts to consider "the extent and nature of any litigation concerning the controversy *already begun* by or against class members" (emphasis added). Rather, the Seventh Circuit simply explained that the possibility for significant individual recovery was *one* consideration that supported its conclusion that class actions are not appropriate in TILA rescission cases. There is therefore no basis for EWF's argument that the Court has failed to heed Seventh Circuit precedent.

In sum, the Court reaffirms its previous conclusion that the hypothetical possibility that individuals may prefer to litigate their claims individually does not outweigh the advantages that class-wide proceedings offer in this case.

**2. Manageability**

Rule 23(b)(3) also requires courts to consider "the likely difficulties in managing a class action" when deciding whether to certify a class. EWF argues that a class action would be unmanageable because (1) "a damages award in the billions would present manageability concerns because the award would surely need to be reduced by the Court," as violative of EWF's due process rights, and (2) "any reduction in this case would necessarily have to occur for each individual class member because the damages may be awarded per-scan, not per-person." Def.'s Mot. for Reconsideration at 8–9.

The Court considered and rejected these arguments in its class certification order, and EWF has provided no appropriate basis for the Court to reconsider its decision. As EWF recognizes and the Court has already stated, the Seventh Circuit has held that the large size of a potential damages award when class members' claims are

aggregated is not grounds upon which to refuse class certification. *Murray*, 434 F.3d at 953 (explaining that "[t]he reason that damages can be substantial . . . does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize [statutory damages]" without setting limits on "the aggregate award to any class"). Contrary to EWF's argument, this is true even if there is a possibility that an aggregate damages award may be so excessive as to violate the Due Process Clause of the Fourteenth Amendment. *See id.* (explaining that the "constitutional limits [on excessive damages awards] are best applied after a class has been certified" because "a judge may evaluate the defendant's overall conduct and control its total exposure" rather than "[r]educing recoveries by forcing everyone to litigate independently").

EWF nevertheless insists that the task of reducing an excessive award would be unmanageable in this case because some class members' fingers were scanned thousands of times, but others were scanned only a handful of times. EWF stresses that if the Court were to reduce the damages award on a per-scan basis, some class members would receive large awards while other class members would receive modest ones. But this is a straightforward consequence of the statutory scheme as interpreted by the Illinois Supreme Court in *Cothron*: because each scan is a distinct violation, more scans equals more dollars. In this case, there is no reason to believe that a factfinder would conclude that some class members should receive more dollars-per-scan than others. EWF's conduct does not differ among class members, nor does it seem likely that class members differ in the harm they experienced as a result of EWF's actions. (Recall that the class has not requested actual damages.) The Court therefore does not anticipate that a flood of individualized damages inquiries will affect its ability

to manage the class action.

**B. Waiver and estoppel defenses**

EWF next argues that the Court erred in its analysis of EWF's argument that its waiver and estoppel affirmative defenses require the denial of class certification because the defenses would "require individual evaluations of each class members' conduct when they provided their alleged biometric information to their employer and, in turn, to EWF." Def.'s Resp. to Pl.'s Mot. for Class Cert. at 18. First, EWF asserts that the Court incorrectly deemed this argument forfeited. In EWF's view, it was not required to "cite authority in support of its position that these are viable affirmative defense [sic] because Plaintiff did not challenge EWF's waiver and estoppel defenses until its reply brief." Def.'s Mot. for Reconsideration at 9. The Court disagrees. EWF introduced the proposition that these defenses defeat class certification. That requires EWF to articulate at least some colorable legal argument that the defenses apply to the BIPA claims at issue. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 789 (N.D. Ill. 2020) (reasoning that "mere speculation" that a "purportedly individualized issue predominates over common issues" is insufficient to defeat class certification).

Regardless of the forfeiture, as the Court explained in its class certification order and reiterates now, whether these defenses are available against BIPA claims is a common issue that is appropriate to resolve on a class-wide basis. Moreover, the Court is not convinced that the application of EWF's defenses, if available, would require highly individualized inquiries. "As EWF frames the waiver defense—namely, that all residents of Illinois were on notice of their rights under the BIPA as of the law's passing in 2008—it is equally applicable to all class members." Class Cert. Order at 16. With

respect to the estoppel defense, EWF *still* has not explained how it applies in this context or why it would necessitate individualized evaluations—even after it was called out on this in the Court's earlier ruling. As far as the Court can tell, the gist of the estoppel argument is that EWF "in good faith[ ] relied" on the conduct of class members. Def.'s Mot. for Reconsideration at 10 (quoting *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001)). But it appears that the class members here all acted in the same way: by scanning their fingers to clock in and out of work. If that conduct somehow relieves EWF from BIPA liability, it would do so on a class-wide basis. EWF has offered no reason for the Court to reconsider its previous finding that common issues predominate over individual questions in this case.

**C. Adequacy of class representative**

Finally, EWF argues that Tapia-Rendon is an inadequate representative of the class because she allegedly knew of her rights under BIPA when she used EWF's timeclock. In EWF's view, this means that Tapia-Rendon waived her rights under the statute. *See* Def.'s Mot. for Reconsideration at 11. An individual may be an inadequate class representative if she "is subject to a defense that couldn't be sustained against other class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011). But EWF did not develop this argument in its class certification response brief. Although it discussed the application of the waiver defense to Tapia-Rendon in an attempt to explain why the 23(b)(3) *predominance* requirement was not met, it failed to explain or support with authority how that affects Tapia-Rendon's *adequacy* as a class representative under 23(a)(4). "Arguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited." *Pole v.*

*Randolph*, 570 F.3d 922, 938 (7th Cir. 2009). At any rate, as just discussed, EWF's defenses do not appear to be particularly unique to Tapia-Rendon. Rather, they are the same defenses it intends to raise against the class as a whole. The Court therefore sees no reason to revisit its finding that Tapia-Rendon is an adequate class representative.

## Conclusion

For the reasons stated above, the Court denies EWF's motion for reconsideration [dkt. no. 170] of the class certification order. The case is set for a telephonic status hearing on February 8, 2024 at 9:15 a.m. for the purpose of addressing the proposed class notice and setting a schedule for further proceedings. The following call-in number will be used: 888-684-8852, access code 746-1053.

MATTHEW F. KENNELLY
United States District Judge

Date: February 2, 2024

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated, | ) | Case No. 1:21-cv-3400 |
| | ) | Judge: Hon. Matthew F. Kennelly |
| Plaintiff, | ) | |
| v. | ) | Magistrate: Hon. Beth W. Jantz |
| EASYWORKFORCE SOFTWARE, LLC, | ) | |
| Defendant. | ) | |

**EASYWORKFORCE SOFTWARE, LLC'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Josh M. Kantrow
Thomas M. Wolf
Cameron T. Liljestrand
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F: 312.345.1778
Josh.Kantrow@lewisbrisbois.com
Thomas.Wolf@lewisbrisbois.com
Cameron.Liljestrand@lewisbrisbois.com
*Attorneys for EasyWorkforce Software, LLC*

**TABLE OF CONTENTS**

**Page**


TABLE OF CONTENTS ........................................................................................................

I. INTRODUCTION ..........................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................................2

A. Plaintiff's Claims ..........................................................................................................2

B. EWF's Time Clocks .........................................................................................................3

C. Plaintiff's Usage Of The EWF Time-keeping Devices. ...........................................3

D. Potential Class Size and Number of Alleged BIPA Violations. ............................4

E. Damages Sought By Plaintiff and the Putative Class Members ............................4

III. LEGAL STANDARD ..........................................................................................................4

A. Rule 23(a) requirements .................................................................................................5

1. Numerosity ...................................................................................................................5

2. Commonality ..................................................................................................................6

3. Typicality .......................................................................................................................6

4. Adequacy of representation .......................................................................................6

B. Rule 23(b) Requirements .................................................................................................7

1. Predominance ...................................................................................................................7

2. Superiority .......................................................................................................................8

IV. ARGUMENT .......................................................................................................................8

A. Plaintiff Is Not An Adequate Representative of the Class She Seeks To Represent under Rule 23(a). ...................................................................................8

B. Class Action Is Not The Superior Method Of Adjudication under Rule 23(b)(3) Because Significant Damages Are Available for Every Class Member. ...........................................................................................................10

1. This Court Has Discretion to Deny Class Certification When All or Almost All Class Members Can Recover Potentially Significant Damages. .........................................................................................................10

2. There Is Significant Incentive For Individual Litigation Because BIPA Allows For "Per-Scan" Damages. ..................................................12

C. Manageability of the Class Would Be Nightmarish If Judgment Is Found Against EWF. ..................................................................................................14

D. Class Action Is Not The Superior Method Of Adjudication Because The Potential Damages Are Grossly Disproportionate To The Harm Alleged. ...........16

E. Class-wide Issues Do Not Predominate Over Individualized Ones. .....................17

**TABLE OF AUTHORITIES**

**Page**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).........................................................................................8, 14

*Andrews v. Chevy Chase Bank*,
545 F.3d 570 (7th Cir. 2008) ..................................................................11, 12, 13, 15

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ..........................................................................................9

*Cunningham v. Charter Corp. v. Learject, Inc.*,
2009 U.S. Dist. LEXIS 35184 (S.D. Ill. 2009) .............................................................5

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) ..........................................................................................6

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*,
29 F.4th 839 (7th Cir. 2022) ..........................................................................................19

*Hamilton v. O'Connor Chevrolet, Inc.*,
2006 U.S. Dist. LEXIS 44149 (N.D. Ill. June 12, 2006).......................................................14

*Heard v. Becton, Dickinson & Co.*,
2021 U.S. Dist. LEXIS 44160 (N.D. Ill. 2021) ................................................................18

*Hyderi v. Washington Mut. Bank, FA*,
2006 U.S. Dist. LEXIS 13781 (N.D. Ill. 2006) ..........................................................10, 12, 13

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ..........................................................................................19

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) ..........................................................................................17

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ........................................................................................17

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) ....................10

*Marcial v. Coronet Ins. Co.*,
880 F.2d 954 (7th Cir. 1989) ....................6

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ....................7, 17, 20

*Miller v. Janssen Pharmaceutica Prods., L.P.*,
No. 05-CV-4076-DRH, 2007 U.S. Dist. LEXIS 31863, 2007 WL 1295824
(S.D. Ill. May 1, 2007) ....................8

*Murphy v. Prof's Transp.*,
2017 U.S. Dist. LEXIS 194391 (S.D. Ill. 2017) ....................11, 12, 13

*Murray v. GMAC Mortgage Corp.*,
434 F.3d 948 (7th Cir. 2006) ....................8, 10, 11, 17

*Rogers v. BNSF Ry. Co.*,
No. 19-cv-3083 2022 WL 854348 (N.D. Ill. Mar. 22, 2022) ....................13

*Rogers v. BNSF Ry. Co.*,
No. 19-cv-3083, Dkt. #223 ....................13

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ....................7

*Rosen Fam. Chiropractic, S.C. v. Chi-Town Pizza on Div. St., Inc.*,
2015 U.S. Dist. LEXIS 18366 (N.D. Ill. 2015) ....................5

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) ....................14

*Santiago v. City of Chi*,
19 F.4th 1010 (7th Cir. 2021) ....................8

*Sec'y of Labor v. Fitzsimmons*,
805 F.2d 682 (7th Cir. 1986) ....................6

*State Farm Mut. Auto Ins. Co. v. Campbell*,
538 U.S. 408 ....................15

*In re Trans Union Corp. Privacy Litig.*,
2002 U.S. Dist. LEXIS 17209 (N.D. Ill. 2002) ....................16

*Vulcan Golf, LLC v. Google Inc.*,
2008 U.S. Dist. LEXIS 102819 (N.D. Ill. 2008) ....................11, 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).....4, 5

*Woods v. Vector Mktg. Corp.*,
No. C-14-0264 EMC, 2015 WL 5188682 (N.D. Cal. Sept. 4, 2015) .....14

**State Cases**

*Cothron v. White Castle Sys.*,
2023 IL 128004.....1, 4, 12, 13. 15, 16

*Geddes v. Mill Creek Country Club, Inc.*,
196 Ill. 2d 302 (Ill. 2001).....18

*Hahn v. Cty. Of Kane*,
2013 IL App (2d) 120660 .....17

*People v. Lander*,
215 Ill.2d 577 (2005) .....18

**Constitution**

Fourteenth Amendment .....15

U.S. Constitution.....2

**Statutes**

740 ILCS 14/20(1)-(3) .....12

BIPA .....1, 2, 3, 4, 9, 10, 12, 13, 14, 15, 16, 18, 19

**Court Rules**

FRCP 23.....1, 4, 5

FRCP 23(b)(3) .....1, 2, 7, 8, 10, 14, 17

FRCP 23(b)(3)(A)-(D) .....7

Rule 23(a).....1, 5, 8

Rule 23(a)(1) .....5

Rule 23(a)(2) .....6

Rule 23(a)(2)'s.....8

Rule 23(a)(3) .....6

Rule 23(a)(4) ....................................................................................................6, 8

Rule 23(b) ....................................................................................................5, 7

Rule 23(b)(3)(D) ....................................................................................................14

Rule 23(b)(3)'s ....................................................................................................7

Rule 23(b)'s ....................................................................................................7

## I. <u>INTRODUCTION</u>

Plaintiff, Maria Tapia-Rendon, has moved this Court to certify a state-wide class of individuals against EasyWorkforce Software, LLC ("EWF") for alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"). Plaintiff's motion argues that under FRCP 23 she has met all the elements required to certify a state-wide class of persons that scanned their fingers for timekeeping purposes while using a timeclock(s) sold to employers by EWF. However, Plaintiff's motion should be denied and no class should be certified for any of the following reasons.

First, Plaintiff cannot satisfy the adequacy requirement under Rule 23(a) because her claim against EWF pales in comparison to the potential recovery for the average class members. In fact, the average class member's claim may be on average 66 times greater than her potential recovery. Under the circumstances, she is not an adequate representative of the potential class she seeks to represent because her interest in the litigation is drastically lower than the average class member.

Second, Plaintiff cannot satisfy the superiority element under FRCP 23(b)(3) because a class action is no longer the superior method of adjudication of BIPA claims following the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004, which held that each and every scan of an individual's biometric data constitutes a separate violation of the statute. As a result, while the trial court has discretion in awarding damages, the potential damages available accrue "per-scan" for each class member and could potentially amount to millions of dollars plus attorneys' fees and costs per class member. That potential for recovery provides enough incentive for class members to pursue their claims on an individualized basis.

Third, managing a class of this size with the potential for monumental damages would be extremely difficult should judgment be entered in favor of the class and against EWF in light of due process concerns under the U.S. Constitution.

Fourth, the requirements of Rule 23(b)(3) cannot be met because the potential damages in this case are grossly disproportionate to the alleged harm, which consists of zero financial, physical or other harm aside from a technical violation of BIPA. The record is devoid of any facts suggesting otherwise.

Finally, class wide issues do not predominate over individualized ones. Every individual in the putative class may be entitled to different damages based on the number of times they scanned their finger into the EWF devices running afoul of the predominance requirement. Further, EWF's available defenses concerning Plaintiff's conduct, such as waiver and equitable estoppel, will require an individual inquiry into each class member's conduct because they voluntarily provided their alleged biometric information to their employer and EWF, waiving their BIPA rights or the ability to sue EWF in the process. Because common questions will be overwhelmed by these individual determinations, class certification must be denied.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Claims

Plaintiff alleges that EWF violated BIPA sections 15(b), 15(d) and 15(e) by collecting Plaintiff's and the putative class members' biometric identifiers and/or biometric information through the EWF Time Clock without first obtaining Plaintiff's or the putative class members' consent and storing the information without encryption. *See* Docket # 127, Counts 4-6. Plaintiff seeks to certify the following putative classes against EWF:

> All individuals who used any cloud-based EasyWorkforce Biometric Device in the State of Illinois on or after June 24, 2016. ("the Class").

> All Class members who used a cloud-based EasyWorkforce Biometric device in the State of Illinois on or before April 30, 2022. ("the Subclass").

Mot. at 3. Plaintiff alleges that the putative class is comprised of at least 2,620 members and the putative subclass contains "nearly as many." Mot. at 5. Plaintiff seeks to recover $1,000 for negligent violations and $5,000 for reckless or intentional violations for each section of BIPA that was violated every time a putative class member "scanned" their finger using EWF's Time Clock. See Docket #127, par. 39.

### B. EWF's Time Clocks

EWF sold United Tape & Finishing Co., Plaintiff's employer, a TL250 Smart Fingerprint Terminal and a software licenses on December 4, 2020. *See* **Ex. 1**, EWF's Suppl. Answers to Pls. First Set of Interrogatories, No. 1; Plaintiff's Exhibit #2 Dkt. #140-2. In addition, EWF sold other timeclock devices to hundreds of customers throughout Illinois: EC10, EC20, EC200, EC500, EC600, Xenio10, Xenio20, Xenio200, Xenio500, Xenio700, TL200, TL250, and TL500. *See Id;* **Ex. 2**, Jos Dep. at 55:3-16. EWF's CEO and former technology officer, Sino Jos, testified that EWF's timeclocks image a portion of a finger presented at the sensor and generates a unique identifier, i.e., a "digital template." *See* **Ex. 2**, at 208:3-209:10. In addition, Jos confirmed that the timeclocks do not "capture the fingerprints itself. That's not the intent. We just need to get a digital template of the image that we capture." **Ex. 2** at 209:25-210:4). Jos confirmed that the image is not stored on cloud servers nor the timeclock. **Ex. 2** at 210:5-16.

### C. Plaintiff's Usage Of The EWF Time-keeping Devices.

Plaintiff initially enrolled into the United Tape timeclock as a condition of her employment. As Plaintiff states in her Motion, she used the timeclock to scan in and out of work after enrollment. *See* **Ex. 3**, Tapia-Rendon Dep. at 112:9-16. According to EWF's records produced in discovery,

Plaintiff scanned in and out of work a total of 14 times starting on January 7, 2021. *See* **Ex. 4,** EAS001371

**D. Potential Class Size and Number of Alleged BIPA Violations.**

EWF identified in discovery that the class, and potentially the sub class, consists of at least 2620 individuals. **Ex. 5,** EAS001453-1456. Those individuals scanned in and out of the timeclocks in question 2,439,412 times through the class period. **See Ex. 5,** EAS001453-1456. Pursuant to the holding in *Cothron v. White Castle Sys.*, 2023 IL 128004, ¶1 (discussed more fully below) each scan into the timeclock where biometric information or identifiers are collected amounts to a separate violation of BIPA. Thus, there are potentially over 2 million separate, alleged violations of the statute currently.

**E. Damages Sought By Plaintiff and the Putative Class Members**

Although *Cothron* held that each scan represents a separate violation of BIPA, Plaintiff alleges in the Complaint that three separate sections of BIPA were violated by EWF per-scan. Dkt. #127, Counts 4-6. Dkt., # 127, prayer for relief. Thus, Plaintiff appears to request $3,000 for each negligent violation of BIPA and $15,000 per reckless or intentional violation. Plaintiff is not seeking any actual damages nor does she allege any actual damages were incurred by any class member in the Complaint.

## III. <u>LEGAL STANDARD</u>

It is well-established that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations omitted). A plaintiff seeking to certify a class action must comply with each Fed. R. Civ. P. 23 requirement. Specifically,

> [i]n order to certify a class under Rule 23, the party must show that its proposed class satisfies every one of the four prerequisites under

> Rule 23(a), and that its proposed class falls within at least one of the enumerated Rule 23(b) categories…

*Cunningham v. Charter Corp. v. Learject, Inc.*, 2009 U.S. Dist. LEXIS 35184, at *10 (S.D. Ill. 2009) (internal citations omitted); *see also Dukes*, 564 U.S. at 345 (outlining the prerequisites). "The burden of proving that all four Rule 23(a) prerequisites are satisfied and that the proposed class falls within one of the three Rule 23(b) categories rests squarely with the party seeking class certification." *Cunningham*, 2009 U.S. Dist. LEXIS 35184, at *11.

However, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original). "Courts enjoy broad discretion in deciding whether the party seeking certification has met its burden of proof. While a court generally may not consider a party's probability of success on the merits when deciding a motion for class certification, it should look beyond the pleadings to make whatever factual and legal inquiries are necessary" to determine whether the plaintiff has adequately established the requirements of Fed. R. Civ. P. 23. *Cunningham*, 2009 U.S. Dist. LEXIS, at *11.

"Analysis of these requirements must be rigorous, particularly where certification could expose a defendant to a very large potential liability." *Rosen Fam. Chiropractic, S.C. v. Chi-Town Pizza on Div. St., Inc.*, 2015 U.S. Dist. LEXIS 18366, at *7 (N.D. Ill. 2015) (citation omitted; internal quotation marks omitted).

**A. Rule 23(a) requirements**

**1. Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Fed. R. Civ. P. 23(a)(1). Although a court cannot rely on pure speculation regarding

class size, plaintiffs need not "specify the exact number of persons in the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). EWF does not contest this requirement.

**2. Commonality**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589,594 (7th Cir. 1998). A common set of operative facts is ordinarily present when the defendants are claimed to have engaged in "standardized conduct towards members of the proposed class." *Id*. EWF does not contest this requirement.

**3. Typicality**

The typicality requirement of Rule 23(a)(3), which is closely related to the commonality requirement of Rule 23(a)(2), is met if the class representatives' claims are typical of those of the class. The named plaintiffs' claims are typical if they "[arise] from the same event or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). The claims of the named plaintiffs must have "the same essential characteristics" as the claims of the proposed class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584,597 (7th Cir. 1993). EWF does not contest this requirement.

**4. Adequacy of representation**

Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent the class as a whole. See Fed. R. Civ. P. 23(a)(4). The Court evaluates whether plaintiffs have fulfilled this criterion by looking at both "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (citing *Sec'y of Labor v. Fitzsimmons*, 805

F.2d 682, 697 (7th Cir. 1986)). A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members. See *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). For the reasons discussed, EWF contests this requirement.

**B. Rule 23(b) Requirements**

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of Rule 23(b)'s three subsections. Here, Plaintiff has argued that Rule 23(b)(3) applies. This rule allows for certification upon a finding that "questions of law or fact common to members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3). With respect to the Court's "superiority" analysis, the Federal Rules suggest that the Court should consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

FRCP 23(b)(3)(A)-(D).

**1. Predominance**

"Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quotation omitted). "If, to make a prima facie showing on a given question, the members of a

proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (quotation omitted). Predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement overlaps considerably with Rule 23(a)(2)'s commonality requirement, although the predominance requirement is "far more demanding." *Id.* "Where liability determinations are both individual and fact intensive, class certification under Rule 23(b)(3) is improper." *Miller v. Janssen Pharmaceutica Prods., L.P.*, No. 05-CV-4076-DRH, 2007 U.S. Dist. LEXIS 31863, 2007 WL 1295824, at *21 (S.D. Ill. May 1, 2007).

**2. Superiority**

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) was designed for situations ... in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate[.]" *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

## IV. ARGUMENT

### A. Plaintiff Is Not An Adequate Representative of the Class She Seeks To Represent under Rule 23(a).

One of the core threshold conditions of Rule 23(a) is that the representative party must “fairly and adequately protect the interests of the class.” Fed. R. Civ. P. 23(a)(4); *Santiago v. City of Chi*, 19 F.4th 1010, 1018 (7th Cir. 2021). In order to be an adequate representative, “[a] named

plaintiff *must* be a member of the putative class and have the *same interest* and injury as other members. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) (emphasis added)).

Here, Plaintiff's potential claim against EWF is dramatically smaller when compared to the potential recovery for the average class member. For instance, Plaintiff has a total of 14 scans using the EWF Time Clocks. *See* **Ex. 4,** EAS001371**.** Each of those scans could allegedly allow for a recovery of $3,000 for negligent violations of BIPA and $15,000 for reckless or intentional violations of the statute. This would entitle Plaintiff to alleged damages ranging from $42,000 to $210,000. When compared to the average class member, however, Plaintiff's potential damages pale in comparison. There are a total of 2,439,412 combined scans between the 2,620 class members. See **Ex. 5**, EAS001453-1456. This averages out to approximately 931 scans per class member over the class period (2,439,412 scans / 2620 potential class members = 931 scans on average per person)[1]. This means that the remaining class members may attempt to seek recovery in the range of $2,793,000 to $13,965,000[2], which is roughly 66 times larger than Plaintiff's potential claim.

Under these circumstances, Plaintiff is not an adequate representative of the class because her interests in the litigation are drastically lower than the average class member and it appears likely she would be antagonistic to the interests of other class members. See *Warren Schwartz, Long-Shot Class Actions: Toward a Normative Theory of Uncertainty, 8 Legal Theory* 297, 299 (2002) (Where average damages are substantial, plaintiffs are likely to be risk averse since they have more to lose as the stakes increase). No reasonable person would pick this Plaintiff, who

[1] Each class member's share of any recovery would vary based upon how many times they scanned their finger on the timeclocks in question. EWF is merely taking the average for illustrative purposes to help guide the Court's decision.

[2] This calculation assumes that Plaintiff is correct that she each scan into a timeclock amounts to three violations of BIPA, which EWF disputes.

likely has the smallest potential stake in this case, to represent a class full of individuals with potentially multi-million dollar claims. She is not an adequate representative of the class as a result. Lastly, for the arguments raised in Section IV.E. below this Plaintiff also waived her BIPA rights and is estopped from suing EWF for these alleged BIPA violations.

**B. Class Action Is Not The Superior Method Of Adjudication under Rule 23(b)(3) Because Significant Damages Are Available for Every Class Member.**

**1. This Court Has Discretion to Deny Class Certification When All or Almost All Class Members Can Recover Potentially Significant Damages.**

Class actions were designed, in part, to provide a procedural means of incentivizing suits involving many class members with otherwise *de minimis* injuries. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Rule 23(b)(3) and the class-action mechanism was designed for situations in which the potential recovery is too slight to incentivize individual lawsuits, but the injury is substantial in the aggregate. *Murray*, 434 F.3d at 953. When a few class members' injuries prove to be substantial, they may opt out and litigate independently. *Id*. Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether when analyzing the superiority element under Rule 23(b)(3). *Id*. Courts within this judicial circuit can, within their discretion, reject class certification when the class members can recover potentially significant damages. The below cases are instructive to this Court.

In *Hyderi v. Washing Mut. Bank, FA*, the court denied class certification of a putative class of nearly one thousand persons seeking $1,000 per class member for violation of the Real Estate Settlement Procedures Act (“the Act”). *Hyderi v. Washington Mut. Bank, FA*, 2006 U.S. Dist. LEXIS 13781, at **41-45 (N.D. Ill. 2006). The court held that the availability of statutory damages of up to $1,000 and attorney’s fees and costs, irrespective of whether the plaintiff suffered “any

actual harm," provided enough incentive for individuals to pursue their own claims. *Id*. Further, the court noted that "Congress was obviously attuned to the potential for negative value suits, took meaningful steps to provide incentives for plaintiffs to pursue winning claims, and those incentives are material when assessing whether class treatment is superior and appropriate." *Id.* at *45.

In *Murphy v. Prof's Transp.*, 2017 U.S. Dist. LEXIS 194391, at *27-28 (S.D. Ill. 2017) the Court denied class certification holding that the potential recovery for each class member was around $18,000 per class member plus payment of attorneys' fees in a successful suit. The Court held as a result that, "individual litigation is the superior method of resolving these claims." *Id*.

In *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577-78 (7th Cir. 2008) the 7th Circuit reversed a district court's decision to certify a class because the hundreds or thousands of individual class members could recover over $50,000 each, plus attorney's fees and costs. The Court ruled that the claim being prosecuted was not one that would otherwise not be brought unless the class-action mechanism were available due to the available damages. *Id*.

In *Vulcan Golf, LLC v. Google Inc.*, 2008 U.S. Dist. LEXIS 102819, at *41-44 (N.D. Ill. 2008) the court rejected class certification noting certification was inappropriate when the maximum statutory damages available were $100,000. The Court rejected the plaintiff's arguments that class certification was superior, which relied on *Murray v. GMAC Mortgage Corp.*, discussed above, because, according to the *Vulcan Golf* court, the plaintiffs in *Murray* had their damages capped at $1,000 per person by statute. *Id*. Thus, it was the relatively low amount of the statutory damages in *Murray* that led the court to conclude that class certification might be appropriate in that case. In *Vulcan Golf*, however, the maximum statutory damages available to the class members, consisting of potentially millions of individuals (*Id*. at *9), was $100,000 each, in

addition to their attorneys' fees and costs. *Id*. Thus, as *Andrews*, the concern that plaintiffs would not have the incentive to sue individually was not present and the class was not certified. *Id*.

**2. There Is Significant Incentive For Individual Litigation Because BIPA Allows For "Per-Scan" Damages.**

BIPA provides that each class member aggrieved by a violation of the statute shall have a right of action against an offending party and may recover 1) $1,000 for a negligent violation of a provision in the statute, 2) $5,000 for an intentional or reckless violation of a provision of the statute and 3) reasonable attorneys' fees and costs. 740 ILCS 14/20(1)-(3).

Significantly, the Illinois Supreme Court in *Cothron v. White Castle Sys.*, 2023 IL 128004, ¶1, held that a separate claim accrues under BIPA each time a private entity scans or transmits an individual's biometric identifier or information in violation of section 15(b) or 15(d). The *Cothron* court was tasked with interpreting whether the statute allowed plaintiffs to recover damages under BIPA every time they scanned their finger on a timeclock used by the defendant (the "per-scan" theory) or whether the class members' claim accrued only once when the defendant first scanned the employee's finger into the timeclock (the "per-person" theory). The Court rejected the per-person theory as no such limitation appeared in the statute. *Id*., at ¶39.

As established above, the potential recovery per class member could be $2,793,000 for negligent violations and $13,965,000 for intentional violations of BIPA, plus their attorneys' fees and litigation costs. The amount of damages potentially available per person in this case is dramatically greater than in *Hyderi* ($1,000 plus attorney's fees), *Murphy* ($18,000 plus attorneys' fees and costs), *Andrews*, ($50,000 plus attorneys' fees and costs) and *Vulcan Golf* ($100,000 plus attorneys' fees and costs). Significantly, all of those cases rejected class certification due to the fact that substantial damages were available for each class member. Further, despite the class sizes being in the thousands in *Andrews* and millions in *Vulcan Golf*, class certification was denied. With

potentially multi-million dollar recoveries available in this case for most of the 2620 class members, there is an obvious and indisputable incentive for them to sue individually such that a class-action is not a superior method of adjudication in this case.

Lastly, EWF is aware that this Court has certified a class action that appears to be the only BIPA trial to date in *Rogers v. BNSF Ry. Co.*, No. 19-cv-3083 2022 WL 854348 (N.D. Ill. Mar. 22, 2022), which Plaintiff cites to in her Motion. Plaintiff's reliance on *Rogers* is inapposite here for two reasons.

First, the defendant in *Rogers* conceded superiority in response to the plaintiff's motion for class certification, unlike EWF in this case. *Id*. at *9. As such, the defendant in *Rogers* did not provide this Court with the authority within this circuit and district EWF cites above, specifically the *Hyderi, Murphy, Andrews, and Vulcan Golf cases.*

Second, this Court's decision in *Rogers* pre-dated *Cothron*. This Court granted class certification in *Rogers* stating that the claims involved "uniform statutory damages and there is no indication that class members' interests would be better served individually controlling their own actions." *Id*. at *9. This Court did not have the benefit of knowing how the Illinois Supreme Court would rule on the per-scan vs. per-person damages issue at the time however. That issue has been decided and changed the BIPA landscape in several ways, including when analyzing the elements under Rule 23(b)(3).

Damages would only be uniform under BIPA if they were awarded on a per-person basis, which ultimately they were in *Rogers* following trial. *See Rogers v. BNSF Ry. Co.*, No. 19-cv-3083, Dkt. #223. However, the *Cothron* court rejected the per-person theory of damages. As such, individual BIPA plaintiffs can now seek damages based on the per-scan theory, which necessarily must vary, as it would for the putative class in this case, based on the number of times each person

scanned into a timeclock. Thus, potential damages are no longer uniform and the foundation of this Court's ruling certifying the class in the *BNSF* case is no longer valid.

Further, there does not appear to be a scenario in BIPA cases where a litigant with a potential multi-million dollar damages claim would be better served by having someone else represent them rather than individually controlling their claim. *See Amchem Prods.*, 521 U.S.at 616-617; *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010). *Accord, e.g., Woods v. Vector Mktg. Corp.*, 2015 U.S. Dist. LEXIS 118678, at *45 (N.D. Cal. Sept. 4, 2015) (explaining that the "superiority factor . . . weighs against certification where individual damages 'run high' such that individual class members have a strong interest 'in making individual decisions on whether and when to settle"). Class certification should be denied in this case as a result.

**C. Manageability of the Class Would Be Nightmarish If Judgment Is Found Against EWF.**

When looking at the Rule 23(b)(3) factors, the Court must analyze, among other things, the difficulties likely to be encountered in the management of a class action--or what is typically referred to as the "manageability" analysis under Rule 23(b)(3)(D). *Hamilton v. O'Connor Chevrolet, Inc.*, 2006 U.S. Dist. LEXIS 44149, at *18 (N.D. Ill. June 12, 2006). Determining whether a class action satisfies manageability concerns involves a practical, on-the-ground assessment of whether the proposed efficiencies from a class action will outweigh the administrative problems and inefficiencies likely to ensue. *Id*. at 45. "This type of balancing analysis is appropriate because the district court must balance whether any administrative and management problems (which will also negatively impact other litigants) are outweighed by efficiencies to the absent class members (who either will proceed in this courtroom or otherwise be free to file their own suits if and as they see fit)." *Id*. at 46 "If the class certification only serves

to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims." *Andrews*, 545 F.3dat 577.

Here, if judgment is found in favor of the class and against EWF it would require the Court to individually determine the amount of damages available to each of the more than 2600 class members because damages may be awarded to each class member based on the number of times they scanned their finger on a timeclock. *Cothron*. 2023 IL 128004, ¶45.

Further, because the statute allows damages to accrue every time an individual scans their finger into the timeclock , any judgment may be violative of EWF's constitutional due process rights. Even assuming the class could only recover $1,000 per violation of BIPA, any judgment in aggregate could be in excess of $2 billion because there are over 2 million total scans on a timeclock. This rises to over $10 billion in aggregate for reckless or intentional violations. Those numbers triple if Plaintiff is awarded damages for three separate violations per scan.

EWF cannot imagine any scenario where damages in these amounts would withstand a constitutional challenge under the Fourteenth Amendment to the Constitution. The Due Process Clause of the Fourteenth Amendment "prohibits the imposition of grossly excessive or arbitrary punishments" in civil suits especially without fair notice. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416-17. "The reason is that elementary notions of fairness … dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty[.]" *Id* at 417.

A judgment in excess of $2 billion, potentially as high as $10 billion or more, is a grossly excessive punishment against EWF and is violative of its constitutional rights especially when no actual harm has occurred to any class member and, according to Plaintiff's own expert, there is no

real world harm currently even if the alleged biometric data fell into the wrong hands. *See* **Ex. 6**, Harding Dep. at 50:9-19, 50:20-51:6, 54:14-21. This likely would require the Court to either 1) declare BIPA unconstitutional in its entirety or 2) exercising the discretion authorized by the *Cothron* court, reduce the amount of any judgment within constitutional bounds. See *Campbell*, 538 U.S. 408, 417 (an award that would be unconstitutionally excessive may be reduced by the Court).

The Illinois Supreme Court in *Cothron* stated in dicta that judges have the ability to award damages within their discretion and to fashion a damages award that fairly compensated the class members. *Cothron*, 2023 IL 128004, ¶42. However, doing so would require this Court to make 2620 individual damage determinations for each and every class member deciding what fairly compensates each individual while also ensuring any award does not violate EWF's constitutional due process rights. This is a foreseeable nightmare for the Court where it potentially may need to conduct several hundreds or thousands of plaintiff-specific hearings. In this scenario, there is a substantial chance that the Court will be enmeshed in lengthy individualized proceedings, in which the expenditure of judicial resources are outweighed by efficiencies to the absent class members. Accordingly, this factor weighs heavily against class certification under Rule 23(b)(3).

**D. Class Action Is Not The Superior Method Of Adjudication Because The Potential Damages Are Grossly Disproportionate To The Harm Alleged.**

A class action is not the "superior" method of adjudication where potential damages are disproportionate to the actual harm alleged. *See, e.g., In re Trans Union Corp. Privacy Litig.*, 2002 U.S. Dist. LEXIS 17209, at *64-71 (N.D. Ill. 2002) (superiority lacking where statutory damages would be "grossly disproportionate to any actual damage."). Plaintiff cannot dispute that such is the case here because she is suing for annihilative statutory damages in the aggregate and there is no actual harm to any class member.

Several courts around the country hold that such a potential recovery defeats superiority, especially where, as is the case here, the Plaintiff does not allege that any single class member was actually harmed by the conduct at issue. *See e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n. 5 (11th Cir. 2003) (class action not superior where "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974) (holding that because a class judgment could potentially result in $750 million in damages, certification should be denied).[3] This is buttressed by the fact that Plaintiff's own expert witness testified that (1) there is no current real-world harm even if the data on the EWF servers fell into the wrong hands, (2) the information cannot be used for any practical purpose, and (3) the information cannot be reverse engineered into an individual's fingerprint. *See* **Ex. 6**, pgs., 50:9-19, 50:20-51:6, 54:14-21.

**E. Class-wide Issues Do Not Predominate Over Individualized Ones.**

Plaintiff has also failed to demonstrate that class issues predominate over individualized ones. "Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members predominate over questions that are individual to members of the class." *Messner*, 669 F.3d at 814 (quotations omitted).

In addition to the individualized damages concerns in Section IV.C above, class certification is inappropriate here because EWF's waiver[4] and equitable estoppel[5] affirmative

[3] EWF is aware that the 7th Circuit in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), rejected the above analysis. EWF recognizes and that *Murray* is binding on this Court unless and until the U.S. Supreme Court and/or the 7th Circuit reverse the holding in *Murray*. As such, EWF is making this argument solely to preserve its right on appeal.

[4] Waiver is the intentional relinquishment of a known right. *Hahn v. Cty. Of Kane*, 2013 IL App (2d) 120660).

[5] Under Illinois law, a party is equitably estopped asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to

defenses require individual evaluations of each class members' conduct when they provided their alleged biometric information to their employer and, in turn, to EWF. *Heard v. Becton, Dickinson & Co.*, 2021 U.S. Dist. LEXIS 44160, at *37 (N.D. Ill. 2021) (predominance fails when affirmative defenses will require a person-by-person evaluation of conduct to determine whether a defense precludes individual recovery).

BIPA was passed in 2008, meaning any resident of Illinois, including Plaintiff, should know about her BIPA rights. In fact, Plaintiff is deemed to know the law. *People v. Lander*, 215 Ill.2d 577, 588-89 (2005) ("It is well settled that all citizens are charged with knowledge of the law."). So long as Plaintiff knew or should have known of her BIPA rights each day that she presented her finger for reading, and voluntarily proceeded to clock in/out of work every day with the intent to never exercise her known rights (or care where their biometrics landed), Plaintiff relinquished her claims or waiver her rights under BIPA.

Here, Plaintiff explained that she was absent the first day the new clocking system was implemented so she had to get her credentials in the system the following day. *See* **Ex. 3,** Tapia-Rendon Dep. at 85:9-16. Plaintiff was instructed to provide her first/last name for the system and to choose a finger to use for clocking in/out. **Ex. 3**, at 85:14-86:4. Plaintiff decided to have her pinky used because "[she did not] think [she] could hurt [her] pinky more than any finger." **Ex. 3**, at 86:4-6. Plaintiff explained all she would have to do is put a finger down to use the system. **Ex. 3**, at 86:15-16. Importantly, Plaintiff did not express any concern to anyone at United Tape regarding the collection or storage of her biometric information in connection with the Time Clock. **Ex. 3**, at 87:18-88:14. Further, Plaintiff explained she was aware of the BIPA laws but waited to

---

change his or her position for the worse." See *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (Ill. 2001).

reach out to counsel until several months after her employment with Employer Solutions Staffing Group. **Ex. 3**, at 94:22-96:2. Plaintiff's knowledge of her BIPA rights is confirmed by the fact that she sued another employer approximately two months *before* she voluntarily provided her alleged biometric information to United Tape, and allegedly by extension to EWF, by scanning her finger on the EWF timeclock at issue in this case. *See* **Ex. 7,** Plaintiff's November 13, 2020 Complaint. *See also* **Ex. 4 –** Initial scan with United Tape established on January 7, 2021 and Plaintiff's **Ex. 2**, Dkt. 140-2 – Purchase order for the EWF timeclock by United Tape (f/k/a Peel & Stick) on December 4, 2020 - several weeks after Plaintiff filed her first BIPA lawsuit.

Plaintiff's conduct meets all the necessary elements for EWF's waiver defense and, at a minimum, she should also be estopped from suing for BIPA violations when she provided her alleged biometric information voluntarily while expressing any concern for months after the data was collected.[6] However, Plaintiff's experience is likely to differ from person-to-person within the class because EWF had hundreds of clients throughout the state using its timeclocks. Each class member's conduct is likely to differ based on who their employer was. A person-by-person analysis for the remaining class members will be required when evaluating EWF's defenses as a result.

Because common questions will be overwhelmed by individual determinations, class certification must be denied. *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) (Predominance is only satisfied when "common questions represent a significant aspect of

---

[6] EWF demonstrated that it has a likelihood of success of prevailing on its affirmative defenses. However, when analyzing class certification issues this is not required. *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 846 (7th Cir. 2022) (district courts are not required to determine the merits of an affirmative defense but only to consider whether determining the merits would require individual inquiries rather than class-wide proof).

a case and … can be resolved for all members of a class in a single adjudication.") (citing *Messner*, F.3d at 815). EWF's waiver and estoppel defenses make predominance impossible.

## CONCLUSION

For the forgoing reasons, EWF respectfully requests that the Court deny Plaintiff's Motion for Class Certification, and that the Court grant such further relief as it deems appropriate.

Date: June 12, 2023

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH**

By: ***/s/ Josh M. Kantrow***
One of Its Attorneys

Josh M. Kantrow
Thomas M. Wolf
Cameron T. Liljestrand
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F: 312.345.1778
Josh.Kantrow@lewisbrisbois.com
Thomas.Wolf@lewisbrisbois.com
Cameron.Liljestrand@lewisbrisbois.com
*Attorneys for EasyWorkforce Software, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system on this 12th day of June 2023, which will send electronic notification to the attorneys of records at the email addresses on file with the Court.

*s/ Josh M. Kantrow*

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA TAPIA-RENDON,<br><br>Plaintiff,<br><br>v.<br><br>EMPLOYER SOLUTIONS STAFFING GROUP II, LLC; UNITED TAPE & FINISHING CO., INC.; AND EASYWORKFORCE SOFTWARE, LLC,<br><br>Defendant. | ) | Case No. 1:21-cv-3400 |

**DEFENDANT EASYWORKFORCE SOFTWARE, LLC'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Easyworkforce Software, LLC ("Easyworkforce") hereby submits its supplemental Objections and Answers to Plaintiff's First Set of Interrogatories.

**GENERAL OBJECTIONS TO EACH INTERROGATORY**

1. Easyworkforce objects to each Definition, Instruction, and Interrogatory to the extent that it does not comply with the Federal Rules of Civil Procedure or the Local Rules of this Court.

2. Easyworkforce objects to each Definition, Instruction, and Interrogatory to the extent that it expressly or impliedly seeks information or documents protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or any other privileges or reasons for non-production. Inadvertent disclosure of privileged documents or information is not intended to be, and may not be construed as, a waiver of any applicable privilege.

3. Easyworkforce objects to Definition No. 1(a) to the extent it seeks information inconsistent with the scope of discoverable information under Fed. R. Civ. P. 26 and 33.

Easyworkforce further objects to the definition of "Biometric Timeclock" to the extent it is inconsistent with or outside the scope of the Illinois Biometric Information Privacy Act and objects to the term as a legal conclusion. Easyworkforce also objects to the time frame of the interrogatories to the extent it is inconsistent with the applicable statutes of limitation.

4. Easyworkforce objects to each Interrogatory to the extent that it concerns matters or issues that are beyond the scope of the allegations of the Complaint including but not limited to the identities of members of the putative Plaintiff class. No class has been certified. Discovery concerning information outside of class certification issues or the elements of Fed. R. Civ. P. 23, is premature, improper, and outside the scope of permissible discovery in Fed. R. Civ. P. 26. Accordingly, Easyworkforce objects to each Interrogatory to the extent that it would require Easyworkforce to provide information pertaining to individual putative class members as overbroad and unduly burdensome, and for the independent reason that such requests are premature, overly broad, unduly burdensome, disproportionate to the needs of the case, and not relevant to any party's claims or defenses because no class has been certified in this case.

5. Easyworkforce objects to each Interrogatory to the extent that it expressly or impliedly seeks information that is confidential or proprietary in nature, or that constitutes protected commercial, financial, and/or trade secret information of Easyworkforce.

6. Each of these objections shall be deemed incorporated into each of Easyworkforce's responses below. Unless set forth specifically below, Easyworkforce is not withholding information based on these objections.

## INTERROGATORIES

1. Describe—by device name, hardware manufacturer, hardware model, software program and version, device description, device location, and device owner—all Biometric Timeclocks used in Illinois.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Subject to and without waiving its objections, Easyworkforce states that defendant United Tape & Finishing Co. purchased a TL250 Smart Fingerprint Terminal and a software license. Other timeclock devices sold and used in Illinois are:

EC10
EC20
EC200
EC500
EC700
Xenio10
Xenio20
Xenio200
Xenio500
Xenio700
TL200
TL250
TL500

2. Identify each Biometric Timeclock described in Your answer to Interrogatory No. 1 that was used by Plaintiff.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the term "use" as vague, ambiguous, and susceptible to multiple interpretations. Subject to and without waiving its objections, Easyworkforce states defendant United Tape & Finishing Co. purchased a TL250 Smart Fingerprint Terminal. Based upon the information provided by defendant United Tape, Plaintiff "used" the TL250 Smart fingerprint Terminal.

3. State the number of individuals who used a Biometric Timeclock.

**RESPONSE:** Easyworkforce objects to this interrogatory as it calls for speculation, is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the term "uses" as vague, ambiguous, and susceptible to multiple interpretations. Subject to and without waiving its objections, Easyworkforce states that defendant United Tape & Finishing Co. purchased a TL250 Smart Fingerprint Terminal. Easyworkforce believes there were 32 employees that used the terminal based upon information from United Tape.

EasyWorkforce believes the number of employees who used a biometric timeclock it sold in Illinois was 2, 614.

4. State the number of times Plaintiff scanned Plaintiff's fingerprints and handprints using a Biometric Timeclock.

**RESPONSE:** Based upon information provided by defendant United Tape, Plaintiff used the TL250 Smart Fingerprint Terminal at United Tape & Finishing Co. Plaintiff used her finger to clock in or clock out. Easyworkforce has no information that Plaintiff ever scanned a handprint. Based upon the information provided by United Tape, Plaintiff used the device 14 times.

5. State the number of times individuals in Illinois scanned their fingerprints, handprints, and facial geometry using a Biometric Timeclock.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Subject to and without waiving its objections based upon information provided by the employers of Illinois individuals to whom Easyworkforce sold a biometric timeclock, individuals used the systems 2,007,510 times. Easyworkforce has no information that anyone scanned a handprint or facial geometry.

6. For each Biometric Timeclock identified in Your answer to Interrogatory No. 1, identify all data fields collected, captured, or created by You upon an individual's Biometric Timeclock first, or "registration" use of the Biometric Timeclock.

**RESPONSE:** Easyworkforce objects to this interrogatory as it presumes facts not in evidence and to the extent it calls for a legal conclusion as it does not collect, capture or create data. Subject to and without waiving its objections, the data fields required are an employee ID and identification modality. Other data fields available from use are: first name, last name, employee ID, work location, work department, and employee type.

7. For each Biometric Timeclock identified in Your answer to Interrogatory No. 1, identify all data fields collected, captured, or created by You upon an individual's use of a Biometric Timeclock.

**RESPONSE:** Easyworkforce objects to this interrogatory as it presumes facts not in evidence and to the extent is calls for a legal conclusion as it does not collect, capture or create data. Subject to and without waiving its objections, the data fields required are an employee ID and an identification modality. Other data fields available from use are: first name, last name, employee ID, work location, work department, and employee type.

8. Identify all purposes for which you used the information collected through the Biometric Timeclocks described in Your answer to Interrogatory No. 1.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the term "collected" as it is vague, ambiguous, susceptible to multiple interpretations, and calls for a legal conclusion. Subject to and without waiving its objections, Easyworkforce states it did not "use" any information collected by United Tape & Finishing Co. or any other customer for any "purpose".

9. Identify each person to whom You disclosed any information collected through the Biometric Timeclocks described in Your answer to Interrogatory No. 1.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the term "collected" as it is vague, ambiguous, susceptible to multiple interpretations, and calls for a legal conclusion. Subject to and without waiving its objections, Easyworkforce states it did not disclose any information collected by United Tape & Finishing Co. or any other customer.

10. Identify every person who accessed information obtained through use of a Biometric Timeclock.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Subject to and without waiving its objections, Easyworkforce states it does not know every person who accessed any information through use of the timeclock devices. Easyworkforce presumes the employers of individuals may have accessed information. Easyworkforce does not access information unless specifically authorized or directed by employers and only then to perform system maintenance.

11. Describe every method by which You contend that You informed any individual in Illinois in writing that their biometric identifier or biometric information would be collected or stored.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the terms "biometric identifier" and "biometric information" as they are vague, ambiguous, susceptible to multiple

interpretations, and calls for a legal conclusion. Subject to and without waiving its objections Easyworkforce does not contend it communicated with employees of customers. Easyworkforce relied upon and expected the employers to whom equipment and software were sold to inform their employees that biometric information would be collected or stored.

12. Describe every method by which You contend that You informed any individual in Illinois in writing of the specific purpose for which their biometric identifier or biometric information would be collected, stored, or used.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the terms "biometric identifier" and "biometric information" as they are vague, ambiguous, susceptible to multiple interpretations, and calls for a legal conclusion. Subject to and without waiving its objections Easyworkforce does not contend it communicated with employees of customers. Easyworkforce relied upon and expected the employers to whom equipment and software were sold to inform their employees that biometric information would be collected or stored.

13. Describe every method by which You contend that You informed any individual in Illinois in writing of the length of term for which their biometric identifier or biometric information would be collected, stored, or used.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the terms "biometric identifier" and "biometric information" as they are vague, ambiguous, susceptible to multiple interpretations, and calls for a legal conclusion. Subject to and without waiving its objections Easyworkforce does not contend it communicated with employees of customers. Easyworkforce relied upon and expected the employers to whom equipment and software were sold to inform their employees that biometric information would be collected or stored.

14. Describe every method by which You contend that any individual in Illinois consented to the disclosure or redisclosure of their biometric identifier or biometric information.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the terms "biometric identifier" and "biometric information" as they are vague, ambiguous, susceptible to multiple interpretations, and calls for a legal conclusion. Subject to and without waiving its

objections Easyworkforce does not know if any person including Plaintiff consented to the disclosure or redisclosure of their biometric information. Further answering, Easyworkforce is unaware of any "redisclosure" of any individual's biometric information.

15. If You contend that You possessed a written policy establishing a retention schedule or guidelines for permanently destroying biometric identifiers or biometric information, identify all methods by which that policy was made available to the public.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to the terms "biometric identifier" and "biometric information" as they are vague, ambiguous, susceptible to multiple interpretations, and calls for a legal conclusion. Subject to and without waiving its objections, Easyworkforce did not create a retention schedule or guidelines for any of the employers to whom it sold a biometric device. Easyworkforce does not have its own written policy establishing a retention schedule or guideline for destroying biometric information. The data collected by the employers is not owned or processed by Easyworkforce and Easyworkforce is not in the position to decide for employers how long their information is retained.

16. Describe all actions You undertook to comply with the Illinois Biometric Information Privacy Act, 740 ILCS 14/1–99, before the filing of Plaintiff's complaint.

**RESPONSE:** Easyworkforce objects to this interrogatory as it is overly broad, unduly burdensome, outside the scope of permissible discovery, and disproportionate to the needs to the case. Easyworkforce also objects to this interrogatory as it is vague, ambiguous and calls for a legal conclusion with regard to the phrase "comply with." Subject to and without waiving its objections, Easyworkforce does not employ individuals in Illinois or require individuals to use a biometric timeclock. Easyworkforce relies upon and expects employers to whom it sells biometric clocks and software to comply with all applicable laws as Easyworkforce does not know or have a relationship with individuals who are employed.

17. Identify, with as much specificity as possible and with a range if necessary, the date on which You became aware of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1–99.

**RESPONSE:** Easyworkforce does not know with specificity or a date range the date it become aware of BIPA.

17. List the names and addresses of all persons not already identified who have knowledge of the facts asserted in Plaintiff's complaint.

**RESPONSE:** See persons identified in Easyworkforce's initial disclosures.

Respectfully submitted,

Polsinelli PC

/s/Mark A. Olthoff

Dmitry Shifrin
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
Phone: 312-819-1900
Fax: (312) 819-1910
Email: dshifrin@polsinelli.com

Mark A. Olthoff (pro hac vice)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Phone: (816) 753-1000
Fax: (816) 753-1536
Email: molthoff@polsinelli.com

ATTORNEYS FOR DEFENDANT
EASYWORKFORCE SOFTWARE, INC.

## CERTIFICATE OF SERVICE

I certify that on the 10th day of June, 2022, a true and correct copy of the foregoing document was electronically mailed to the following attorneys of record:

J. Dominick Larry
Nick Larry Law LLC
8 S. Michigan Avenue, Suite 2600
Chicago, IL 60603
Email: nick@nicklarry.law

Tom Kayes
Law Office of Thomas R. Kayes, LLC
2045 W. Grand Avenue
Suite B, PMB 62448
Chicago, IL 60612
Email: tom@kayes.law
*Attorneys for Plaintiff*

Darcy L. Proctor
John M. O'Driscoll
Tressler LLP
233 S. Wacker Drive
61st Floor
Chicago, IL 60606
Email: DProctor@tresslerllp.com
Email: jodriscoll@tresslerllp.com

Todd Mitchell Rowe
Tressler Soderstrom Maloney & Priess, LLP
233 S. Wacker Drive
22nd Floor
Chicago, IL 60606
Email: trowe@tsmp.com
*Attorneys for Defendant*
*United Tape & Finishing Co., Inc.*

*/s/ Mark A. Olthoff*
Counsel for Easyworkforce

**VERIFICATION**

STATE OF FLORIDA )
) ss.
COUNTY OF BROWARD )

I, SINO JOS, being first duly sworn, on oath state that I have read the foregoing answers to interrogatories, and the answers given therein are true, correct, and complete to the best of my knowledge and belief.

______________________

Subscribed and sworn to before me this 10th day of JUNE, 2022.

Sandra B Lugo
Comm.: HH 183846
Expires: Oct. 24, 2025
Notary Public - State of Florida

______________________
Notary Public

81539125.4

# Exhibit 2

discrete individuals have held that job since 2016.

So it may be that, you know, turnover is extremely low, and it's only been 15 different people over that time. It may be that turnover is extremely high, and it has been 150 people who have held that job title but never more than 12.

So let me ask again: How many individuals have held the job title sales executive with Easy Workforce since 2016?

**A. I need to get back to you on that, the exact number, but the turnover is low.**

Q. Okay.

And just -- I'm just trying to figure out, for purposes of this deposition, if you had to estimate it, you know, plus or minus five people, would you be able to do so?

**A. Yes.**

Q. Okay.

And what would your estimate be?

**A. I would say maybe about four or five.**

Q. Four or five additional people beyond the 12?



**A. Correct.**

Q. Okay.

And do you know how many customers Easy Workforce has had since 2016 who have purchased a time clock?

**A. I don't know the exact number but approximately thousands.**

Q. Thousands or a thousand?

**A. In the thousands. I don't know the exact number but I can find out.**

Q. Do you know how many customers, how many time clock customers Easy Workforce has had in Illinois since 2016?

**A. I don't know the exact number.**

Q. Are you able to estimate?

**A. I would say maybe 100 to 200, maybe.**

Q. Do you know whether Easy Workforce, whether its gmail business suite, includes a tool called Google Vault?

**A. We don't use Google Vault.**

Q. When you say that, do you mean it has not been used or it is not available to use?

**A. It's not been used. I'm not sure if our suite has that product available. I need to check.**



Q. Okay.

So you said when you were describing the efforts to collect documents responsive to Request No. 9 that you went to Reggie and asked him to forward communications with United Tape.

Does that mean that the primary method of written communication between your sales representatives and the customers is via email?

**A. Yes.**

Q. Okay.

Are you aware of any other method of communication regarding the functionality of the software between, sorry, methods of written communication regarding the software between sales executives and Easy Workforce customers?

**A. No other other than email.**

Q. Has Easy Workforce ever been involved in litigation prior to this case?

**A. No.**

Q. Has Easy Workforce ever had to produce emails in response to a request prior to this case?

**A. No.**

Q. Without getting into the substance,



has Easy Workforce ever been the subject of any sort of regulatory investigation?

**A. No.**

Q. Do you know how much time it took Reggie to gather and send you the emails that he provided with United Tape?

**A. I don't know.**

Q. Reggie would know presumably?

**A. He would.**

Q. Okay.

Beyond time or not counting the time that Reggie spent gathering those documents, are you aware of any out-of-pocket expenses to the company related to Reggie searching and providing his communications with United Tape to you?

**A. Just time.**

Q. We're going to scroll further down. Okay.

Please take a moment, and you don't need to read a loud but just for yourself read Request No. 21 and the response, and let me know when you've had a chance to read it.

**A. Yes.**

Q. Do you see that it says Easy Workforce has no responsive documents?

A. **Correct.**
Q. Okay.
To your knowledge, has anything about the functionality of the devices listed in Request No. 65 changed from July 29th until August 9th of this year?
A. **It did not.**
Q. So what changed from July 29th to August 9th to that answer being changed?
A. **I think the object was to clarify it than just one word admitting it.**
Q. Did Easy Workforce become aware of any new information concerning the functionality of those devices between July 29, 2022 and August 9, 2022?
A. **I don't think so.**
Q. Okay.
Turning to No. 66, that was also one that was previously admitted and it is admitted in part, that lists the same devices.
So I'm going to ask the same question: Did anything about the functionality of those devices change from July 29th to August 9th as it concerns, of course, Request No. 66?
A. **It does not.**



Q. Did Easy Workforce become aware of any new information about those devices as it concerns Request No. 66 between July 29th and August 9th?
A. **It doesn't, to clarify further.**
Q. Okay.
So there is no new information. No made aware to you about those device?
A. **Ask me again, please.**
Q. Just to clarify, I was asking whether Easy Workforce became aware of any new information about the functionality of those devices during that time?
A. **Not really.**
Q. Okay.
So if you look back at 65, it now says an initial image of a finger is captured.
Do you see that?
A. **I see.**
Q. What does that image entail?
A. **It entails the same image of the portion of the finger that is presented at the sensor.**
Q. Does that image include the fingerprint itself?



A. **It's made of the finger that's produced.**
Q. And that image is inclusive of what is commonly known as the fingerprint; is that correct?
A. **I would say it's an image of the finger, but if that's the common use of the lingo, well.**
Q. Is fingerprint a description that Easy Workforce uses to describe what is imaged by its products?
A. **From an external standpoint it is used because, to your point, it's a common lingo.**
Q. Okay.
And we talked earlier about the digital templates, the minutia points of the finger, geometry.
For the digital templates to be created, is it true that the finger image must include the fingerprint?
A. **The finger image is good enough.**
Q. What do you mean by that?
A. **The image of the, you know, and the shape of the design of the finger that is good enough.**



Q. What do you mean by that is good enough?
A. **Ultimately, what the system is trying to produce is a unique identifier for an individual and whatever details that a person can be reclarified that becomes a digital template.**
**So it's two separate person A from person B. So whatever unique data capturing and digital template isolation it can do that is good enough.**
Q. And it's getting those from, I believe, you said the swirls and the ridge; is that correct?
A. **Or the major part of the finger.**
Q. And that is described by Easy Workforce in its public phasing documents as fingerprint, correct?
A. **Yeah, I have seen it.**
Q. Okay.
So at the end of 65 it now says otherwise denied, which it did not say previously.
Do you know what's being otherwise denied there?
A. **I think capturing the fingerprint is**

**what is denied because we don't capture the fingerprints itself. That's not the intent. We just need to get a digital template of the image that we capture.**
Q. All right.
So when the image of the fingerprint is taken on the device, is that stored for, I guess we'll start with this, is that image ever stored on the cloud servers?
MR. OLTHOFF: Object to the form.
**A. It's not stored in the cloud servers.**
Q. Okay.
Is it stored for any length of time on the time clocks itself?
**A. It is not.**
Q. Even in Ram storage or even some sort of temporary storage?
**A. I think storage means it's held for a period of time. This is only captured for digital template. So we need to define what that time frame means, you know, to define storage.**
Q. There is a period of time in which the image is maintained on the device though, correct, for processing?



**A. It is captured and processed. It could be in the software itself.**
Q. Okay.
And let's turn to 66. It again talks about an initial image of a finger.
Is that the same initial image of the finger that we just discussed?
**A. Yes.**
Q. Otherwise denies at the end of the response, you know what is being otherwise denied there?
**A. Same as the last one.**
Q. And going ahead to 68, as you'll recall from me, the version of these served on July 29th, that was -- No. 68 was admitted.
In this version it's now denied, and you'll see that No. 68 also deals with the same set of devices we were just talking about.
So did Easy Workforce between July -- did the devices in question in No. 68 change in functionality at all between July 29th and August 9th?
**A. It did not.**
Q. Okay.
Was Easy Workforce made aware of any



new facts not previously known regarding the functionality of those devices as it concerns Request No. 68 between July 29th and August 9th?
**A. No.**
Q. Okay.
We're going to talk a little bit more about the synchronization between the devices and the cloud.
Let me just pull up the right document. Sorry. I am having an exhibit issue here.
(Interruption from the record.)
Q. Okay. We're looking back at Exhibit 3, which we talked about earlier, and I'm going to go down to that email we talked about earlier from Reggie to Jennifer at United Tape dated Tuesday, November 24, 2020 at 10:54 a.m.
Do you see that email?
**A. I do.**
Q. Okay.
Do you see the second sentence of paragraph No. 1 where it says "They will synchronize automatically with the server."?
**A. I do.**
Q. Okay.



What data synchronizes with the servers?
**A. The time clock data.**
Q. And which data fields, to your understanding, are those?
**A. It is the clocking time and the clocking person's ID that goes to the server.**
Q. And so the way this works as soon as the connection is re-established in the cloud the two things will interface and update and sync?
**A. Correct.**
Q. So let me ask you something about the cloud functionality.
So when Easy Workforce updates its software for the customers using the cloud version, there is nothing they need to do, is there?
**A. They don't need to do anything.**
Q. For the on-premises customers, do they need to download and install software update?
**A. If they request, they will be provided with a downloadable software but generally they don't.**
Q. Do you know for the customers using

# Exhibit 3

A For my boarding -- onboarding. I was just having a hard time logging into my -- I -- I don't remember if it was I wanted the pay stubs, but it was just more like my login account that I had to do.
Q When you say logging in, do you mean into the system associated with your pay?
A Yeah. Just for -- just for the -- how can I say it? Yeah. To use -- so I can use it and I can refer back to it for pay stubs.
Q Do you know if you produced that email in connection with this litigation?
A Yes.
Q So did there come a time when you worked at the Peel & Stik facility where you used a time clock?
A Can you repeat that?
Q Sure. Did there come a time while working at the Peel & Stik facility and employed by ESSG where you used a time clock?
A Yes.
Q And when was that?
A This was in I wanna say almost right away when I started with my assignment with them. A couple weeks maybe.
Q Do you recall -- sorry. I thought you were finished. Go ahead.



A No. I apologize. Maybe a couple weeks later.
Q Okay. So when you first began working at the United Tape/Peel & Stik facility, you did not use a time clock; is that correct?
A No. I don't recall. Or -- they had a different type of clocking in and a clocking out system.
Q Tell me what you remember about that system.
A We had to sign the paper with -- so basically it was just a paper with our names. We had to sign in and out. And I'm not sure the name of the -- the -- the system they had or what it was called, but we had to put in the card, like, the big yellow cards and it would time it -- or, yeah. Just the punch in card if that's --
Q Okay. Okay. So when you first started working at the Peel & Stik facility, you would sign in on a physical sign-in sheet and then use sort of a punch-in/punch-out system; is that correct?
A Yeah, correct.
Q Okay. And that original system did not require your fingerprint; is that correct?
A Correct.
Q Okay. So then there came a point in time where how you clocked in and clocked out while were working at the Peel & Stik facility changed; right?



A Actually we did the three at the same time.
Q Okay. So the -- the clock in that involved the fingerprint was added on to the sign-in sheet and the punch-in clock; is that correct?
A Correct.
Q Okay. And that happened a few weeks into your employment at the Peel & Stik facility?
A Correct.
Q Okay. So who told you that there would be a change that you would then need to use the fingerprint time clock in addition to the other two mechanisms that we discussed?
MR. LARRY: Objection, form. You can answer.
A Nobody.
Q How did you know to use the new time clock?
A I had -- if I'm not mistaken, I was absent the first day. And then the next day when I came in, I -- like I said, we were doing the writing and then the yellow card. And I think it was one of my coworkers who said to go back and to use the -- the new system they had.
Q Do you recall who that coworker was?
A No.
Q Okay. Do you recall what they told you?
A They said this is what is the new system. This is



an additional way of us clocking in and clocking out. And they said if you need any guidance, you need to go to the office and ask them for help.
Q Did you go to the office and ask them for help?
A Yes.
Q Okay. Who did you ask?
A The secretary.
Q Okay. And what did you say?
A I said I was absent yesterday and I believe there is additional clocking in and out system that we have to use and is it possible for me to -- I think what it was they needed to write my name, my first and last name in the system first like programming it. And then I would have to choose one of my fingers, if I'm not mistaken, and then it would be activated.
Q And so what did the secretary say back to you?
A She said yes. Come with me and I will have your name added to the system.
Q Okay. And when you say come with me, did you then go to a different location within the facility?
A Yeah. We left the office and then we went to the small section where the clock system was at.
Q Okay. And what happened next?
A She showed me how my name was entered in the system

and she just asked me which finger did I prefer to use.
Q And what did you say?
A My pinky because it's less -- I said my pinky because I don't think I could hurt my pinky more than any finger.
Q And so then did you go ahead and provide your pinky fingerprint?
A Yes.
Q Did the secretary say anything else to you while you were in the process of setting up your fingerprint system?
A No. She said thank you and walked away.
Q Did she show you how to use the system?
A She just said, you know, just put your finger -- your pinky down and then you're set to go.
Q Is that how you used the system? You just had to put your pinky down one time; is that right?
A Correct.
Q Do you recall what the system looked like that required your fingerprint?
A Yeah. There was a -- some sort of like I want to say a screen, a small flat screen. And on the right side there was a small opening where you could provide your -- your fingerprints with.



Q Was this the same sort of system that you had used at Staffing Network?
A Similar.
Q How were they similar?
A They were with the -- only with the fingerprints. And I had to place, if I'm not mistaken, I wanna say four fingers. I can't remember, but I know it was -- it was a little different. It didn't look, you know, exactly the same.
Q Do you think you had to use more fingers on the Staffing Network device than the device that you used at United Tape; is that fair?
A Yes.
Q Did you watch other coworkers at the United Tape facility clock in or out using the fingerprint time clock?
A Yes.
Q Did you ever have a discussion with any of them regarding the collection or storage of your biometric information --
MR. LARRY: Objection --
Q -- in connection with using that time clock?
MR. LARRY: Objection, form. You can answer.
A No.
Q Did you express any concerns to anyone at United



Tape also known as Peel & Stik regarding the collection or storage of your biometric information in connection with the fingerprint time clock?
MR. LARRY: Objection, form. You can answer.
A No.
Q Did you ever discuss your biometric information at all with anyone from United Tape or also known as Peel & Stik?
MR. LARRY: Objection, form. You can answer.
A No.
Q Did you ever discuss your biometric information at all with anyone from ESSG?
MR. LARRY: Objection, form. You can answer.
A No.
MS. FITTS: Carissa, if you could pull up the document Bates-stamped United Tape_0001 through -0077, please and mark it as Exhibit 3.
(Exhibit 3 was marked for identification.)
MS. FITTS: Ms. Tapia, for the record, this is again United Tape_0001 through -0077. This is a document production by the Defendant United Tape and it's a series of documents. I'm only at this point interested in questioning you about the last two pages of the document. You're obviously free to -- to look through the whole thing, but if -- if



it's okay with your counsel, I'd prefer to just start at the two pages that are relevant for our questioning at the moment.
MR. LARRY: That's fine by me if it's fine by her. Why don't -- why don't you go to the last two and then maybe that'll --
MS. FITTS: Sure. And they're a completely separate document, Ms. Tapia --
MR. LARRY: Yeah.
MS. FITTS: -- as I understand it from the way that we received it. It's just that they produced it all as one PDF unfortunately.
Carissa, if you could go to page 76 in the PDF. And for the record that would also end in -76 from the Bates-stamp perspective. And you could scroll down through it slowly through 77 so Ms. Tapia can have an opportunity to review the document. Okay. If you could go back up to page 76.
BY MS. FITTS:
Q Ms. Tapia, this is what appears to be a record of your time in and time out for the work that you performed at the Peel & Stik Woodridge facility in January of 2021.
Does that appear accurate to you?
A Yes.

Page 94

Q Sure. Have you ever been unable to work because of the mental anguish that you allege you suffered as a result of the collection or storage of your biometric information while employed at ESSG?
MR. LARRY: Objection, form. You can answer.
A You're saying if I wasn't -- if I was not working because of the mental anguish? If that --
Q Did you ever have -- yes. Did you ever have to call into work because of the mental anguish?
A Oh, no.
Q Did you ever ask anyone at United Tape how your biometric information might be used?
MR. LARRY: Objection, form. You can answer.
A No.
Q When did you first have concerns about the collection or storage of your biometric information in connection with your work at ESSG?
MR. LARRY: Objection, form. You can answer.
A When I realized that the days were going by and nobody was approaching us and explaining what was happening with that -- that clock system.
Q And at that point in time you already had an understanding about the BIPA law from your involvement in the Staffing Network case; correct?
A Yeah.

Page 95

Q So why did you not reach out to anyone about your concerns?
MR. LARRY: Objection, characterization of prior testimony. You can answer.
MS. FITTS: There's nothing referencing prior testimony but go ahead.
THE WITNESS: I wouldn't -- I would go days without me seeing somebody from the office.
BY MS. FITTS:
Q So when you did see someone from the office why did you not raise your concerns about the collection or storage of your biometric information?
A To be honest I don't know. I was hoping they would come to me or to ask as -- as, you know, as a group.
Q When did you first decide you should contact a lawyer about your concerns regarding the collection or storage of your biometric information while working at ESSG?
MR. LARRY: Objection, form. You can answer.
A A couple months later.
Q So although you were already aware of the BIPA laws from your involvement in the Staffing Network case, you didn't decide to reach out to counsel until several months after working for ESSG; is that

Page 96

correct?
A Yes.
Q Do you recall when the first conversation was that you had with the lawyer regarding the collection or storage of your biometric information associated with your employment at ESSG?
MR. LARRY: Objection, form. You can answer.
A Can you rephrase that for me?
Q Sure. When did you first speak to an attorney regarding the collection or storage of your biometric information in association with your employment at ESSG?
MR. LARRY: Objection, form. You can answer.
A A couple months later.
Q A couple months later than when you began employment at ESSG?
Is that what you're referring to?
A Yeah. It was later on.
Q And during this time you were -- I don't wanna know any of the substance, but during this time you were in contact with your attorneys for the Staffing Network matter; is that correct?
A Yeah.
Q And those are the same attorneys as your attorneys in this case; is that correct?

Page 97

A Correct.
MS. FITTS: Okay. Carissa, if you could open up -- sorry. Let me get the Bates number -- document ending -- document Tapia-Rendon_0006 and we'll mark this as Exhibit I believe we're at 4?
MS. NARCISO: That is correct.
(Exhibit 4 was marked for identification.)
BY MS. FITTS:
Q Great. Ms. Tapia, do you recognize this document?
A Yes.
Q Can you tell me what this is?
A It is the clock system that we were using at Peel & Stik with our biometrics.
Q And do you recall what date this photograph was taken?
A No.
Q Did you take this photograph?
A Yes.
Q How did you take this photograph?
A With my cell phone.
Q Why did you take this photograph?
A There was rumors going on that the new system we had which was is the one presented, it was not working and I had heard from other coworkers that they had trouble with it. So I used it more just

Q As an estimate. Did you do any sort of independent investigation -- sorry. Strike that.
Did you do any investigation independent from that done by your attorneys regarding the subject matter of your claims in this case?
A No.
Q Just in general are you aware of any companies that you use time clocks that collect biometric information other than Staffing Network and the clocks that you used at United Tape?
A No.
Q Have you ever spoken to anyone regarding time clocks that collect biometric information other than in connection with this litigation?
A No.
Q In your own words, can you tell me the basis of your claims in this lawsuit?
A Yes. My fingerprints were taken without my consent and from the law of the State of Illinois it's not allowed. So this is what is basically allowing me to have the case -- to -- to open this case.
Q And did you develop that understanding about the law of Illinois in connection with your role in the Staffing Network litigation?
A Correct.



Q Do you seek to represent anyone other than yourself in connection with this litigation?
A A class.
Q Can you tell me in your words who is in the class of people that you seek to represent?
A Yes. The people that I was working with at Peel & Stik, all of my coworkers.
Q Do you seek to represent any individuals who worked at facilities other than the United Tape facility?
A No.
Q Do you think that you can adequately represent your coworkers who worked at the United Tape facility?
MR. LARRY: Objection, form.
A Can you repeat that for me?
Q Sure. So you think you can adequately represent your coworkers who worked at the United Tape facility in connection with this litigation?
MR. LARRY: Objection, form.
A I don't know what you're trying to -- are you saying can I -- can I represent all my coworkers?
Q Yeah. Why do you think that you can represent your coworkers?
A Oh, okay. Sorry. I can represent my coworkers because nobody was asked permission for -- for fingerprints.



Q How do you know no one was asked?
A Nobody mentioned it and it was never -- yeah. It was never mentioned.
Q But you don't know for -- you've never asked anyone if they were asked for permission to have their biometric information collected while working at Peel & Stik; correct?
A Correct. I didn't ask.
Q Do you know whether others at United Tape were required to use the time clock that collected fingerprint information?
A Yes. You're saying if they were -- if that was the way of us to clock in and out?
Q Sure. For people other than you, are you aware of them using that same fingerprint time clock?
A Yes.
Q And how are you aware of that?
A I would see them.
Q Did you ever talk to them about using the time clock?
A No.
Q So right now you have two jobs; is that correct?
A Correct.
Q About how many hours a week do you currently work?
A I work approximately 35 to 40 hours at the hospital



and then I do three hours at church.
Q And do you have paid time off at any of your jobs that you currently have?
A No.
Q How much time were you able to devote to this litigation?
A I wanna say a few hours.
Q How many time -- through today, how much time have you spent in connection with this litigation?
A Are you referring to, like, on my way here like the commute or --
Q Sure. So -- so let me ask a couple better questions and hopefully we'll get through.
Have you met with your attorneys at all in connection with this litigation?
A No.
Q Okay. Have you spent any time emailing, calling or otherwise communicating with your attorneys in connection with this litigation?
A Yes.
Q Can you estimate about how much time you've spent communicating with your attorneys in connection with this litigation?
A I wanna say approximately, like, six hours.
Q Okay. And I asked you at the start of the

# Exhibit 4

| EMPLOYEE ID | DEVICE SERIAL NO | DATE & TIME |
|---|---|---|
| 83 | 62502160 | 1/7/2021 12:57 |
| 83 | 62502160 | 1/7/2021 17:01 |
| 83 | 62502160 | 1/8/2021 6:38 |
| 83 | 62502160 | 1/8/2021 16:01 |
| 83 | 62502160 | 1/11/2021 6:10 |
| 83 | 62502160 | 1/11/2021 16:03 |
| 83 | 62502160 | 1/13/2021 6:26 |
| 83 | 62502160 | 1/13/2021 16:00 |
| 83 | 62502160 | 1/14/2021 8:50 |
| 83 | 62502160 | 1/14/2021 16:00 |
| 83 | 62502160 | 1/15/2021 6:58 |
| 83 | 62502160 | 1/15/2021 16:00 |
| 83 | 62502160 | 1/19/2021 6:24 |
| 83 | 62502160 | 1/19/2021 16:00 |

# Exhibit 5

Employee and Scan Counts

| COMPANY_CODE | EMPLOYEES_WITH_SCANS | TOTAL_SCANS |
|---|---|---|
| 643 | 21 | 10953 |
| 8096 | 34 | 62347 |
| 8222 | 31 | 83589 |
| 8794 | 33 | 91326 |
| 11360 | 26 | 49780 |
| 11940 | 30 | 48086 |
| 32096 | 40 | 15257 |
| 34516 | 54 | 74381 |
| 34688 | 10 | 19761 |
| 34837 | 66 | 112195 |
| 34877 | 1 | 3477 |
| 35050 | 1 | 1327 |
| 35167 | 12 | 14019 |
| 35181 | 37 | 83395 |
| 35187 | 7 | 22269 |
| 35227 | 23 | 18122 |
| 35641 | 45 | 81297 |
| 35682 | 4 | 18 |
| 35685 | 5 | 2463 |
| 35742 | 77 | 83766 |
| 36063 | 4 | 8067 |
| 36121 | 20 | 39484 |
| 36563 | 6 | 3926 |
| 37882 | 0 | 0 |
| 37965 | 19 | 74252 |
| 38026 | 27 | 38523 |
| 38271 | 11 | 18202 |
| 38303 | 15 | 10683 |
| 38815 | 106 | 85412 |
| 38827 | 27 | 65918 |
| 38855 | 26 | 21327 |
| 38931 | 11 | 11469 |
| 39030 | 0 | 0 |
| 39384 | 10 | 3802 |
| 39538 | 167 | 248457 |
| 39726 | 28 | 30994 |
| 39832 | 76 | 99799 |
| 39847 | 44 | 56916 |
| 39909 | 0 | 0 |
| 39910 | 1 | 527 |
| 39936 | 6 | 1698 |
| 39937 | 43 | 25440 |
| 40375 | 0 | 0 |
| 40600 | 5 | 3782 |
| 40626 | 16 | 18550 |

Employee and Scan Counts

| COMPANY_CODE | EMPLOYEES_WITH_SCANS | TOTAL_SCANS |
|---|---|---|
| 40792 | 2 | 1369 |
| 40835 | 8 | 9991 |
| 40882 | 18 | 15434 |
| 40934 | 5 | 9144 |
| 40977 | 8 | 13808 |
| 41104 | 14 | 23326 |
| 41192 | 44 | 114084 |
| 41272 | 5 | 9054 |
| 41273 | 8 | 7064 |
| 41286 | 7 | 5963 |
| 41287 | 7 | 5286 |
| 41540 | 3 | 380 |
| 41578 | 9 | 9924 |
| 41725 | 10 | 9946 |
| 41737 | 7 | 4870 |
| 41751 | 25 | 7771 |
| 41794 | 7 | 3306 |
| 41820 | 0 | 0 |
| 41885 | 5 | 2679 |
| 41949 | 3 | 14 |
| 42021 | 1 | 2426 |
| 42061 | 6 | 10157 |
| 42172 | 18 | 5762 |
| 42189 | 28 | 37591 |
| 42275 | 19 | 5178 |
| 42350 | 13 | 12349 |
| 42542 | 19 | 15000 |
| 42580 | 2 | 639 |
| 42618 | 1 | 1 |
| 42868 | 20 | 467 |
| 43068 | 4 | 1248 |
| 43907 | 18 | 14418 |
| 44042 | 8 | 2863 |
| 44186 | 20 | 19075 |
| 44190 | 11 | 1075 |
| 44212 | 12 | 1168 |
| 44234 | 1 | 26 |
| 44484 | 3 | 1628 |
| 44626 | 16 | 4922 |
| 44694 | 0 | 0 |
| 44833 | 8 | 4919 |
| 44857 | 10 | 2145 |
| 45196 | 9 | 1158 |
| 45216 | 4 | 1240 |
| 45535 | 29 | 28431 |

Employee and Scan Counts

| COMPANY_CODE | EMPLOYEES_WITH_SCANS | TOTAL_SCANS |
|---|---|---|
| 45843 | 8 | 12272 |
| 45875 | 8 | 2251 |
| 46030 | 3 | 656 |
| 46044 | 1 | 1 |
| 46278 | 1 | 1 |
| 46570 | 0 | 0 |
| 46638 | 2 | 278 |
| 46665 | 7 | 5373 |
| 46911 | 2 | 12 |
| 47249 | 6 | 2747 |
| 47389 | 8 | 4095 |
| 47432 | 1 | 1 |
| 47480 | 6 | 4545 |
| 47578 | 9 | 10007 |
| 47600 | 7 | 1909 |
| 47801 | 1 | 303 |
| 47811 | 6 | 978 |
| 47812 | 28 | 15807 |
| 47947 | 10 | 2187 |
| 47969 | 24 | 19030 |
| 47970 | 14 | 10677 |
| 48104 | 4 | 1830 |
| 48138 | 4 | 1444 |
| 48262 | 1 | 141 |
| 48348 | 5 | 3388 |
| 48353 | 6 | 4581 |
| 48430 | 5 | 3751 |
| 48436 | 0 | 0 |
| 48450 | 0 | 0 |
| 48477 | 8 | 3509 |
| 48529 | 6 | 2243 |
| 48538 | 16 | 9158 |
| 48653 | 0 | 0 |
| 48772 | 0 | 0 |
| 48784 | 1 | 5 |
| 48903 | 7 | 2729 |
| 49059 | 6 | 2692 |
| 49266 | 96 | 38348 |
| 50005 | 4 | 86 |
| 50450 | 3 | 236 |
| 50476 | 21 | 2931 |
| 50619 | 0 | 0 |
| 51123 | 0 | 0 |
| 51409 | 2 | 565 |
| 47092 | 17 | 1236 |

Employee and Scan Counts

| COMPANY_CODE | EMPLOYEES_WITH_SCANS | TOTAL_SCANS |
|---|---|---|
| 47399 | 8 | 4106 |
| 47495 | 28 | 5990 |
| 47912 | 12 | 2933 |
| | | |
| **Totals for EWF 1.0 Accts** | 2112 | 2357387 |
| | | |
| | | |
| **Cancelled Accounts** | 326 | 67309 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **EWF 2.0 Accounts** | | |
| 643 | 5 | 92 |
| 48499 | 17 | 2035 |
| 49204 | 58 | 7264 |
| 49299 | 75 | 3399 |
| 49968 | 15 | 613 |
| 50127 | 3 | 14 |
| 50310 | 1 | 2 |
| 50395 | 1 | 63 |
| 50632 | 7 | 1234 |
| | | |
| **Totals for 2.0 Clients** | 182 | 14716 |
| | | |
| | | |
| **Grand Totals** | **2620** | **2439412** |

# Exhibit 6

case, correct?
A. Have I looked at the biometric templates that have been collected, is that the question?
Q. Yeah.
A. I have not looked at the biometric templates that have been collected.
Q. Did you ask to look at those?
A. No.
Q. If you were able to look at the biometric templates that were collected, would you be able to tell if a slap fingerprint versus a latent fingerprint were collected?
A. No.
Q. Why wouldn't you be able to do that?
A. Because the MINEX template is what we call a BLOB, a binary large object of binary data, and that binary data is only useful for the algorithm that created it. It is not human readable in the sense that it means something to us.
Q. Could those templates be reverse engineered into any individual's actual fingerprints?
A. In the case of MINEX, no.
Q. So if a -- just, you know, Russian is the bad guys again, right? Just say a Russian hacker hacks

specifically the EasyWorkforce cloud-based server in this case, gets all this data, based on your understanding of MINEX, none of that data could be reversed engineered into a fingerprint?

A. It could not be reverse engineered into a fingerprint.

Q. And that would be beneficial to the users who gave up that information, correct, that -- knowing that even if it's hacked, the information couldn't be reverse engineered to their unique biometric identifier?

A. I will answer the question in two ways. One, reverse engineering to the actual fingerprint, no. Does it mean it has no value, it can have value.

Q. Okay. In what ways could it have value?

A. Depending on how the system is architected and how a biometric matching system is architected, a fingerprint can be digitally, or what we call an injection, it can be submitted from a software to a platform to a server to an algorithm to do a match as the probe as if that probe were created from the algorithm from a biometric capture. Does that make sense?

Q. I have to digest it for a second, so hang on.

So you're saying that if that information were hacked, that in this scenario this Russian hacker could

some platform for matching to authenticate as somebody other than myself.

Q. Okay. But these are digital -- this is digital data, correct? It's not like --

A. That is correct.

Q. All right. So you'd be doing this what, on a computer, right?

A. Mm-hmm.

Q. Correct?

A. Right.

Q. And so the person using it wouldn't physically be near a biometric scanner when they're doing this, right?

A. In the theoretical example I've given, the biometric scanner would not be needed.

Q. Okay. Can you think of any examples that you're aware of in the 20-some-odd years that you've been an expert in biometrics where biometric information was hacked and then was used for nefarious activities, an actual example?

A. Off the top of my head, no.

Q. And if the data can't be reverse engineered into a fingerprint, why would those templates need to be encrypted?

# Exhibit 7

Return Date: No return date scheduled
Hearing Date: 3/16/2021 9:45 AM - 9:45 AM
Courtroom Number: 2508
Location: District 1 Court
Cook County, IL

FILED
11/13/2020 6:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06796

11138414

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| MARIA TAPIA-RENDON, individually and on behalf of all similarly situated individuals, | ) | |
| *Plaintiff,* | ) | No.2020CH06796 |
| v. | ) | |
| STAFFING NETWORK HOLDINGS, L.L.C., an Illinois Limited Liability Company, | ) | Hon. |
| *Defendant.* | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Maria Tapia-Rendon ("Plaintiff"), individually and on behalf of all similarly situated individuals, brings this Class Action Complaint against Defendant Staffing Network Holdings, L.L.C. ("Defendant") for its violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for persons injured by its conduct. Plaintiff alleges the following based on personal knowledge as to Plaintiff's own experiences, and as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys.

**INTRODUCTION**

1. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including handprints, fingerprints and palm scans. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

2. This case concerns the misuse of individuals' biometrics by Defendant, an employee staffing agency. Using biometric enabled technology, Defendant is capturing,

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

collecting, disseminating, or otherwise using the biometrics of Plaintiff and other Class members, without their informed written consent as required by law, in order to track their time at work.

3. BIPA provides, *inter alia*, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they first:

(1) inform the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored;

(2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored and used;

(3) receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information; <u>and</u>

(4) publish publicly available retention guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a).

4. Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper. BIPA's requirements bestow a right to privacy in biometrics and a right to make an *informed* decision when electing whether to provide or withhold biometrics.

5. Defendant's biometric timekeeping system works by extracting biometric information from individuals, such as handprints, fingerprints or portions thereof, and subsequently using the same for authentication and timekeeping purposes. The system includes the dissemination of biometrics to third parties, such as data storage vendors and payroll services.

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

6. The Illinois Legislature has found that "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information like Social Security numbers can be changed. Biometrics, however, are biologically unique to each individual and, once compromised, such individual has no recourse, is at a heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5. The risk is compounded when a person's biometrics are also associated with their other personally identifiable information.

**7.** The deprivation of the statutory rights conferred by BIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

8. Plaintiff brings this action for statutory damages and other remedies as a result of Defendant's conduct in violating Plaintiff's state biometric privacy rights.

**9.** On Plaintiff's own behalf, and on behalf of the proposed Class defined below, Plaintiff seeks an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

10. At all relevant times, Plaintiff Maria Tapia-Rendon has been a resident and a citizen of the state of Illinois.

11. Defendant Staffing Network Holdings, L.L.C. is a corporation organized under the laws of the state of Illinois that conducts substantial business throughout Illinois, including in Cook County, Illinois.

**JURISDICTION AND VENUE**

12. This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States,

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

because Defendant is doing business within this State and because Plaintiff's claims arise out of Defendant's unlawful in-state actions, as Defendant captured, collected, stored, and used Plaintiff's biometric identifiers and/or biometric information in this State.

13. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Defendant is doing business in Cook County and thus resides there under § 2-102.

**FACTS SPECIFIC TO PLAINTIFF**

14. Defendant is a staffing and recruiting firm with locations throughout Illinois, including a location at 8022 S. Cicero Ave, in Burbank.

15. During the relevant time, Plaintiff worked for Defendant and was placed at their Chicagoland location at 1005 101st. St, in Lemont.

16. While working for Defendant, Defendant implemented biometric scanning and time-tracking devices and technology to monitor and manage its workers', including Plaintiff's, time on the job.

17. Plaintiff was required to provide biometric scans to Defendant each time Plaintiff needed to clock in and clock out of a shift at work.

18. Plaintiff relied on Defendant to not only provide a lawful and legally compliant system, but to also disclose all material information regarding the technology and system, including all relevant retention, destruction, and dissemination policies.

19. Further, on information and belief, Defendant disseminated information derived from the scanning of Plaintiff's biometric identifiers to third parties, including vendors for timekeeping, data storage, and payroll purposes.

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

20. Prior to taking Plaintiff's biometrics, Defendant did not inform Plaintiff in writing that Plaintiff's biometrics were being collected, stored, used, or disseminated, or publish any policy specifically about the collection, retention, use, deletion, or dissemination of biometrics.

21. Defendant did not seek, and Plaintiff never provided, any written consent relating to the collection, use, storage, or dissemination of Plaintiff's biometrics.

22. Prior to taking Plaintiff's biometrics, Defendant did not make publicly available any written policy as to its biometric retention schedule, nor did Defendant disclose any guidelines for permanently destroying the collected biometrics.

23. Additionally, Defendant did not obtain consent from Plaintiff for any dissemination of Plaintiff's biometrics to third parties.

24. To this day, Plaintiff is unaware of the status of the biometrics obtained by Defendant. Defendant has not informed Plaintiff whether it still retains Plaintiff's biometrics, and if it does, for how long it intends to retain such information without Plaintiff's consent.

25. By failing to comply with BIPA, Defendant has violated Plaintiff's substantive state rights to biometric privacy.

## CLASS ALLEGATIONS

26. Plaintiff brings this action individually and on behalf of all similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows:

> Class: All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant within the state of Illinois at any time within the applicable limitations period.

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

27. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

28. Upon information and belief, there are scores, if not hundreds, of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's personnel records.

29. Plaintiff's claims are typical of the claims of the members of the Class Plaintiff seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's BIPA violations and common law transgressions.

30. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

a. Whether Defendant's conduct is subject to BIPA;

b. Whether Defendant made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics;

c. Whether Defendant obtained a written release from the Class before capturing, collecting, or otherwise obtaining their biometrics;

d. Whether Defendant provided a written disclosure that explains the specific purposes, and the length of time, for which biometrics were being collected, stored and used before taking such biometrics;

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

e. Whether Defendant's conduct violates BIPA;

f. Whether Defendant's violations of the BIPA are willful or reckless; and

g. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

31. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

32. Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

33. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

**COUNT I**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.,**
**(On behalf of Plaintiff and the Class)**

34. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

35. Defendant is a private entity under BIPA.

36. BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

37. BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. An entity which possesses biometric identifiers or information must (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual); and (ii) adhere to the publicly posted retention and deletion schedule.

38. Plaintiff and the other Class members have had their "biometric identifiers," namely their fingerprints, collected, captured, or otherwise obtained by Defendant. Plaintiff and the other Class members' biometric identifiers were also used to identify them, and therefore constitute "biometric information" as defined by BIPA. 740 ILCS 14/10.

39. Each instance Plaintiff and the other Class members were required to scan their fingerprints, Defendant captured, collected, stored, and/or used Plaintiff's and the other Class members' biometric identifiers or biometric information without valid consent and without complying with and, thus, in violation of BIPA.

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

40. Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

a. Defendant failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

b. Defendant failed to inform Plaintiff and Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

c. Defendant failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

d. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

e. Defendant failed to provide a publicly available retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics they store, as required by 740 ILCS 14/15(a); and

f. Defendant failed to obtain informed consent to disclose or disseminate the Class' biometrics, as required by 740 ILCS 14/15(d)(1).

41. By obtaining and operating an employee timekeeping system which uses biometrics that was devoid of the privacy protections required by BIPA, Defendant profited from Plaintiff's and the Class members' biometric identifiers and biometric information in violation of

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

740 ILCS 14/15(c). Defendant knew, or was reckless in not knowing, that the biometric systems it used would be subject to the provisions of BIPA yet wholly failed to comply with the statute.

42. By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class's biometrics as described herein, Defendant denied Plaintiff and the Class their right to statutorily required information and violated their respective rights to biometric information privacy, as set forth in BIPA.

43. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

44. Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

45. Accordingly, with respect to Count I, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter an Order:

a. Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA Sections 15(b) and 15(d);

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA;

FILED DATE: 11/13/2020 6:14 PM 2020CH06796

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

Dated: November 13, 2020

Respectfully submitted,

Maria Tapia-Rendon, individually and on behalf of a class of similarly situated individuals

By: /s/ Kasif Khowaja .
*One of Plaintiff's Attorneys*

Frank Castiglione
Donald J. Pechous
Kasif Khowaja
THE KHOWAJA LAW FIRM, LLC (Firm ID: 58402)
8 South Michigan Ave. Suite 2600
Chicago, IL 60603
Tel: (312) 201-0575
fcastiglione@khowajalaw.com
dpechous@khowajalaw.com
kasif@khowajalaw.com

***Counsel for Plaintiff and the Putative Class***

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA TAPIA-RENDON, et al., ) Docket No. 21 C 3400
Plaintiffs,)
vs. )
EMPLOYER SOLUTIONS STAFFING GROUP II, LLC, et al., ) Chicago, Illinois
) October 2, 2023
) 9:58 o'clock a.m.
Defendants.)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Plaintiff: NICK LARRY LAW LLC
BY: MR. J. DOMINICK LARRY
1720 West Division Street
Chicago, IL 60622
(773) 694-4669

For Defendant EasyWorkforce Software, LLC: LEWIS BRISBOIS BISGAARD & SMITH LLC
BY: MR. THOMAS M. WOLF
550 West Adams Street, Suite 300
Chicago, IL 60661
(312) 345-1718

Court Reporter: MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
Official Court Reporter
219 S. Dearborn Street, Suite 2102
Chicago, Illinois 60604
(312) 435-5639



(The following proceedings were had in open court:)

THE CLERK: Case 21 C 3400, Tapia-Rendon v. Employer Solutions.

THE COURT: Okay. Well, why don't you come up here.

MR. LARRY: Good morning, your Honor. Nick Larry for plaintiff and the class.

MR. WOLF: Good morning, your honor. Tom Wolf, W-o-l-f, on behalf of defendant, EasyWorkforce Software.

THE COURT: Okay. I just wanted to have you both up here to start off with just to -- so that I could hear you okay and the court reporter could too.

So I actually think what makes sense on this is to have the defendant go first and the plaintiff go second, so that's what we're going to do.

And I'm going to have some -- I think I told you which arguments I wanted to hear.

So, Mr. Larry, why don't you go ahead and have a seat, and -- and it was Mr. Wolf?

MR. WOLF: Correct.

THE COURT: Okay.

MR. WOLF: Judge, your order had limited arguments to 15 minutes. Is it possible to reserve five of those minutes for rebuttal?

THE COURT: I'm not sure you're going to get rebuttal --



MR. WOLF: Okay.

THE COURT: -- because it's -- I mean, it's the plaintiff's class -- plaintiff has the burden on class certification, so I think I'm going to let them go last.

So -- but don't worry.

MR. WOLF: Okay.

THE COURT: I'll give you a chance to --

MR. WOLF: Understood.

THE COURT: -- say anything you need to add.

MR. WOLF: Thank you, your Honor. And, obviously, we filed this motion to reconsider challenging the class certification.

Our primary challenge, as you probably read throughout our briefs, is on the superiority argument, and that --

THE COURT: Yeah. So let me -- let me just kind of start -- help me break the number down.

So I'm looking at -- it's actually the reply, but I think it's in the other brief too -- the average class member could potentially recover in the range of $2,793,000 to $13,965,000.

So can you -- what's the composition of those numbers?

MR. WOLF: Right. So that would be -- the smaller number would be for negligent violations of the statute. The



larger would be for intentional or reckless violations.

THE COURT: And I get what the -- you know, there's the thousand and the 5,000 and all that.

What's the -- what's the multiplier? That's --

MR. WOLF: Yeah. So it's -- they're requesting for three separate violations of the statute, so 3,000 for negligent violations and 15,000 for intentional violations multiplied by the average number of scans over the class.

So we just took --

THE COURT: Got it. So --

MR. WOLF: -- what the number was.

THE COURT: -- the 2.793, is that kind of the low end of the --

MR. WOLF: Correct.

THE COURT: -- number of scans?

MR. WOLF: Yes. It's like 2.4 or 5 million scans in --

THE COURT: Total.

MR. WOLF: Total.

THE COURT: Okay.

MR. WOLF: Divided by the number of class members. It came out 900 and -- and like over 950 scans on average.

THE COURT: Do folks have -- do folks have yet -- and maybe "yet" isn't the right question; maybe it's ever -- do you have or is there going to be information on any given

person about how many times that person got scanned?

MR. WOLF: So in discovery, we do have some documents with employee numbers --

THE COURT: Yeah.

MR. WOLF: -- which will show maybe total scans, but it's over a wide period of time. So it's hard to break down when those scans may have occurred.

THE COURT: Okay.

MR. WOLF: But -- so employee numbers really what we have, there are some --

THE COURT: But that sounds like a yes, though. In other words, for employee number 12345, you will know that that person got scanned 15 times or whatever it is.

MR. WOLF: Theoretically, yes.

THE COURT: What's the theoretically?

MR. WOLF: Well, we haven't looked through all 2600.

THE COURT: Okay. Fair enough. Yeah. Okay. Fair enough. All right.

And then the related question, I think I'm going back to something you started off with, so for each given scan -- so -- and I keep putting up my fingers. I'm just pretending I'm putting my finger on a pad or something.

For each given scan, is it your sense that the plaintiff is asking for multiple violations for that scan, one relating to the collection, one relating to the retention, one



relating to whatever?

MR. WOLF: Yeah, they're saying it's -- every time you put your finger on that time clock, it's three separate violations of the statute and they would be entitled to three separate recoveries of the liquidated damages for each.

THE COURT: And have any of the cases, whether they're Seventh Circuit -- I'm not talking about district court cases because there's probably a district court case for everything -- Seventh Circuit or Illinois state courts, have any of them dealt with the question about whether you can get multiple -- for a given scan, whether you can get multiple recoveries under different subsections of the statute?

MR. WOLF: Yeah, I think *Cothron* --

THE COURT: Says that?

MR. WOLF: -- says that for 15(b) and I think it was (d), that each scan was recoverable for both of those sessions.

THE COURT: Okay. So, basically, your argument is that because any given person has the potential for recovering so much money, plus there's a statutory fee-shifting provision, that there's no reason to think that people wouldn't file lawsuits if they thought they had a basis for them.

MR. WOLF: I think that's absolutely correct. And I think because of the amount of that -- the potential damages,



we would be -- allowing this class to go forward would really undercut the policy underlying the class action mechanism in and of itself.

Your Honor, you previously wrote in the Southwest Airlines voucher case that plaintiff cited to that, I quote, "When Rule 23(b)(3) was adopted, its drafters had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."

So I think the precedent would teach us that the availability of statutory damages plus the availability to recover attorneys' fees would provide substantial incentives to bring individual suits.

I encourage the Court to reread the *Hyderi v. Washington Mutual Bank* case, which we cited to in our response brief to class certification.

THE COURT: What's the name of the plaintiff?

MR. WOLF: It's Hyderi.

THE COURT: Okay.

MR. WOLF: H-y-d-e-r-i.

THE COURT: Right.

MR. WOLF: And that was -- starting on page 404 of that decision, it goes through a pretty thorough discussion about the lack of a need for a class action when there's substantial damages available plus attorneys' fees and costs,



right?

And we know in *Cothron* or post *Cothron* that they don't even have to prove actual harm and can seek, you know, in the aggregate, in this case, 24 billion, or individually, multi-millions of dollars.

So, again --

THE COURT: I guess what I'll say about that, you know, the Rogers case -- and by the way, I need to correct I think a misimpression of the Rogers case.

I did not decide at any point in the Rogers case that it was damages per person. What happened in that case is because of the specific 26(a) disclosures that were made in that case, they only asked for one per person. Then when they came in -- new counsel came in shortly before trial and said, wait a second, we want to multiply that, and I said no, but that was as a matter of 26(a), not any interpretation of the statute.

Anyway, what I was about to say, though, is that the way that the jury -- we came very -- Rogers was actually supposed to start trial today, literally today, and I settled it a couple of weeks ago, and they're in the process of drafting a settlement agreement.

But a motion in limine -- or jury instructions had gotten filed, and it was pretty clear that the jury instruction was going to look kind of like a punitive damages

instruction in terms of the factors, one of which actually is harm. So that's kind of a long-winded way of commenting on a point that you just made.

So harm is probably, at least as I -- at least as -- I think it was the lawyers on both sides of that case thought that was probably a factor that the jury would consider in deciding the damages award.

MR. WOLF: Right.

And I think the point I was getting to was that the Illinois legislature has gone out of its way to create this statutory right to then allow for recovery of liquidated damages with no harm and a guaranteed legal representation for these claims by permitting attorneys' fees and costs as part of each allowable recovery.

And so it seems when we're looking at this case where the number of scans is very high with only 2600 class members, it's hard to understand why each individual couldn't just file their own lawsuit and seek $9 million individually. It would be such an easier and cleaner process, not only for the litigant but for the attorneys as well. They can avoid having to go through class certification, no preliminary approvals if they ever reach a settlement, and things like that.

THE COURT: Can I ask you a couple questions about that?

So first of all, I take it that as far as you know



right now, there haven't been any other lawsuits filed; is that right?

MR. WOLF: Against EasyWorkforce?

THE COURT: Against EasyWorkforce.

MR. WOLF: That's correct.

THE COURT: Okay. And I know your argument is that that's not -- that that's not a significant consideration.

MR. WOLF: Can I just for one second correct that?

I know that employees of EasyWorkforce's customers have filed BIPA claims --

THE COURT: Against the customers.

MR. WOLF: Against their employer.

THE COURT: Kind of like what happened with the other defendant in this case.

MR. WOLF: Correct. Yes.

THE COURT: Okay.

MR. WOLF: There is -- I'm aware of at least one other one that was filed in Clinton, Illinois.

THE COURT: Fair enough.

MR. WOLF: So it's not that they're not filing these cases. I know at least one. But they're not -- you know, the only case against EasyWorkforce has been by this plaintiff.

THE COURT: Well, so let me -- my second question about that, though, is, okay, so what -- can I make anything out of the fact that people haven't filed lawsuits?



I mean, I will tell that you that one possible explanation -- not the only one, but one possible explanation, at least for some people -- might be they don't have any idea their rights were violated. And, I mean, that's kind of what class actions are about too; at least at some level, people who might not understand that their rights have been violated, there's somebody who's willing to come forward and kind of carry the ball on behalf of all of them.

What about that?

MR. WOLF: Well, I think that would make sense if you had some unique case that pops up out of a common law -- like the Southwest voucher case.

But when it's related to a claim that is -- for an alleged violation of a statutory right, the court can look at the body of cases that have been filed and see, well, look, thousands of these are being filed across Illinois, the plaintiff herself in this case has filed multiple BIPA claims, that we can clearly see there's an incentive to sue, and we know there was an incentive to sue because the legislature drafted the statute in such a way to allow for that.

But, you know, in the case where, you know, it's a breach of contract or some tort, there's not going to be other similar cases where there's like uniform violations.

And so, yeah, in that scenario, I could agree with you that the fact that nobody else is suing probably means



that, you know, there's not a great incentive, but not when there's thousands of similar cases.

The complaints for these BIPA claims are almost like all identical too, at least the ones that, you know, we've handled, which is, I don't know -- almost a hundred?

UNIDENTIFIED SPEAKER: Probably.

MR. WOLF: So we've seen them all. They're relatively the same. You know, the purpose and background is almost identical.

THE COURT: Yeah, right. Right.

MR. WOLF: So I think the *Andrews* court discussion by the Seventh Circuit is the more appropriate analysis here, which is are there substantial damages, can you recover attorneys' fees, and do people file these claims.

If the answer is yes to all three of those questions, then it's obvious there's an incentive to sue. And, you know, our argument would be that because the amount of damages available are so great in this case, it necessarily would defeat superiority.

THE COURT: Okay. So that last point is a good segue into the other question I wanted to ask you, which is this.

So, you know, since this was a class action, a punitive class action, at least until I certify the class, if I decertify it or I vacate the order certifying it or whatever it is, the people who are members of the class will be

considered to have had their limitations period tolled during the period of time the case has been pending, which is like two years or two-plus years or something like that.

And so in theory, a bunch of those people could go out and sue. And let's -- this is -- I concede that what I'm about to give you is a hypothetical.

But let's say what happens is that you get a hundred lawsuits. I grant your motion to reconsider, I say it's an individual lawsuit, and for whatever reason, you get a hundred lawsuits. Okay.

So the big deal in these cases, I mean, it's a significant part of your motion and it was a significant part of the argument that was made in the *Cothron* case, is that the liability can be overwhelming. And in a class action, there's a way of dealing with that. It's called a remitter, or whatever it is, whatever you call it, reduction of damages to something that's, you know, manageable, reasonable, whatever you want to call it.

If you have a hundred individual cases, not so much.

How does that work?

In other words, the first person could come along, and they could recover, you know, $2.793 million. Then the second person could come along and say, okay, I want 2.793 million. By the time you get up to a hundred people, you're now into 2.793 billion, which is -- you know, you're right



back where you started.

So the -- you know, there's arguably a due process overall limitation, potentially -- not clear, but potentially --

MR. WOLF: Right.

THE COURT: -- how does that apply if we don't have class actions and we just have individual lawsuits?

MR. WOLF: Right. Well, I think there's still due process that would be in play, right? They can't have an individual award that would be so grossly punitive to -- you know, that that would be some type of an award.

But also, I think we look at the dicta from *Cothron* is they can't destroy our client's business with this statute. The goal is to protect the privacy, right --

THE COURT: Under that scenario, they wouldn't get destroyed until maybe lawsuit 17 or something like that.

MR. WOLF: Well, I think we would disagree with that, but I understand what -- the point you're making.

And so, you know, we still have our due process rights that have to be always examined. And, you know, then there's the fallback on *Cothron*, which is, you know, look, you can't devour us with this.

THE COURT: This is kind of my last question then, and that is so if you're right on this, it basically means no class actions in BIPA cases because the incentive is always



going to be there, or is that not the case?

MR. WOLF: I think there is certainly a scenario where BIPA could proceed as a class action. I just think it would be --

THE COURT: It was a smaller number of scans or something like that.

MR. WOLF: Right. In the employment context like this, it seems --

THE COURT: People are scanning their fingers every day, usually, right?

MR. WOLF: Exactly. And in this context, it doesn't seem wise because of the number and the potential amount of damages.

THE COURT: Okay. Do you want to make a couple other points to sum up? And I'll give Mr. Larry a chance to talk.

MR. WOLF: Sure. Sure.

You know, obviously, we've raised the issue of manageability with the damages example that we provided in our brief in that it doesn't seem beneficial for the Court to have to dive into 2600 damage claims all at once. To us, in our argument, is that this would outweigh any benefit from proceeding as a class. And that's only the damages portion of it, because we've also raised this waiver issue --

THE COURT: That's the one I said not to talk about.

MR. WOLF: Yeah. I understand.



THE COURT: If you want to talk about that, that's fine, but that's --

MR. WOLF: Yeah.

THE COURT: -- going to be the last thing you get to talk about.

MR. WOLF: Yeah. And just it -- it's -- it really overlaps -- manageability overlaps with that and the damages portion of it.

But, you know, this is -- as plaintiff tried to raise about the TCPA, this statute is unique in that -- especially in this employment context, you could have a massive number of scans and potential violations.

At least the case that they cited, the *Perez* case, you're talking about an average of about eight or nine violations, which would be phone calls --

THE COURT: Robocalls.

MR. WOLF: Right.

And so the Court could come --

THE COURT: I'll give you a little story in a second.

MR. WOLF: Okay. Well, the Court can come in if you get a -- you know, a laughable award, and you could say, well, you know, we'll just cut these down because the maximum recovery in those cases is 1500 and you're only dealing with a handful of scans -- or, excuse me -- a handful of calls. Well, yeah, you could bring that within due process very

quickly.

I don't know how that could be possible when the average number of violations for this class is over 900 because you could have, you know, John Smith office worker who had 5,000 scans. So even if you cut his award in half, you know, he's still looking at a $10 million award. I mean, you think about how ridiculous that is, is he voluntarily gives the information, he goes to work every day, doesn't say a word, and then all of a sudden, he's a multi-millionaire, right? And he gets the whole amount of that because attorneys' fees are recoverable as well.

THE COURT: Well, I mean, you know, we could come up with all sorts of examples on that one. And I say this not to prejudge any case that might come before me in the future, but, you know, there was just a big report in the news the other week that the active ingredient that's used in cold medications is basically worse than a placebo. It's the thing they put in in place of Sudafed.

So there's going to be a flood of lawsuits on those things, and those people didn't know that there was anything wrong.

So it's kind of similar. And the fact that somebody didn't know something was wrong and therefore didn't sue, it's hard to infer -- you got to be careful inferring too much from that, I guess is my only point.



MR. WOLF: And, I guess, Judge, we can close with this, is our point is that post *Cothron*, we are going to see more and more individual BIPA claims. One just came across my desk last week in the Circuit Court of Cook County.

THE COURT: Not even filed as a punitive class.

MR. WOLF: It's just filed individually.

THE COURT: Individual case, yeah.

MR. WOLF: I can provide the Court a copy --

THE COURT: That's okay. I'll take your word for it.

MR. WOLF: Okay.

THE COURT: And now I'll give you my story. It's a TCPA story.

At the time, it was the biggest settlement that was ever reached. The case was called Birchmeier, and it was settled for a huge amount of money. And it was pretty much everybody in the world had gotten this call, including me, because when I came out -- when I came out at the initial status and said I have gotten this call, the defense lawyer said, so has everybody, literally, quote/unquote; so has everybody.

It was the one where you pick up the phone and you hear a foghorn, and it was a thing for a cruise or something like that which they then morphed into timeshares.

Bottom line is settled the case, and people were allowed to make claims, and they had to -- for a certain



number of calls. And I appointed former judge Wayne Andersen as kind of the settlement master to kind of deal with all this because there were a lot of -- it was $80 million, a lot of claims.

One person said that they had gotten 7,000 calls. Her name was Daisy. And so that ended up having to be litigated.

So it's not necessarily the case that in TCPA cases people claim they only got three or four. But I get your point.

MR. WOLF: Thank you, your Honor.

THE COURT: Mr. Larry, you're up.

I reduced it to 30, just so you know.

MR. WOLF: Okay.

MR. LARRY: Good morning, your Honor. Would your Honor prefer that I start by addressing some points, or does your Honor have questions --

THE COURT: However you want to do it.

MR. LARRY: Okay. I'll keep the opening portion brief and leave the rest to any questions your Honor may have.

I think there are two points here that they're making: One is that there is sufficient individual incentive to sue; and two, that it's just going to be this nightmare to actually figure out how much to give people if we proceed on a class basis.



And I think both of those, the fundamental problem is they allow a hypothetical concern under their proposal to undermine the real-world gains that we would get from proceeding on a class basis.

THE COURT: So I get that the second of those two things is hypothetical, that it assumes there's going to be this, you know, massive award that I'm going to have to figure out what to do with.

I'm not so sure that's true about the first part; in other words, the proposition that there's plenty of incentives for people to file individual lawsuits.

So why don't you zero in on that.

MR. LARRY: Sure, your Honor. I think -- were this the first BIPA case, I think this would be an interesting scenario where there's a real question about what people are going to do.

But we've seen over the last several years plenty of BIPA cases, and what we haven't seen is any indication that people are proceeding on an individualized basis in any way.

When these cases are filed, they're filed as class actions overwhelmingly. When notice goes out, people are notified of their rights. We don't see a large number of opt-outs. We certainly don't see large numbers of opt-outs that are then followed by individual suit.

And what that tells me is that, for whatever reason,

and I think there are several, there is not, in fact, an individual incentive to sue.

THE COURT: What do you think the reasons are?

MR. LARRY: I think there are a few reasons. I think, one, as your Honor pointed out, most people aren't aware of this. You know, on the plaintiff's bar side, we do our best when we send out notice to make these things as reasonably comprehensible as we can, but that's a struggle, and I think, you know, people don't necessarily fully understand what has happened, why it matters, what they can do about it, you know, that they could try to go get a lawyer, they don't know how to do that.

So I think -- I think there's just a lack of familiarity.

I think the second piece is both on the individual litigant side and on the attorney side. I think there, you know, is a lack of belief that they're really going to recover that much. You know, I think if you're an ordinary layperson, if some -- you know, you're talking to some lawyer and they say you can get $2.7 million because you swiped your finger, they -- you know, whether that's true as a matter of law or not, I think there's going to be a lack of belief about that.

Second, on the lawyer's side, I can tell you that I don't think anybody really thinks that's incredibly likely. I think what you're looking at is a situation where you have to



put a lot of time and a lot of money and a lot of work into a case where, you know, it might end up being a wash. I think.

Those are really the two big reasons.

You know, these cases are complicated. They take work. The complaints do generally look the same, but the litigation of each is different. On this case, we had to get into the source code, you know, how the scanner actually works. We're in the process of going through the emails and sales documents that get into, you know, how did they talk about this, is it a fingerprint scan.

So I think we've got a real-world test bet out there, and whether it's, you know, early on, 2015 or so, when the Facebook case was filed, whether it's post *Rosenbach* in 2019, whether it's post *Cothron*, we haven't seen any sort of flood of individual litigation.

Yes, there may be one or two here on -- here or there. You know, defense counsel just got served with one that's, you know -- they're not nonexistent, but they're not substantial. And there's no reason to believe here that if certification doesn't go ahead, we're going to see a meaningful number of people file --

THE COURT: If I can maybe refine the argument down a little bit, the answer to that might be -- that the defendants might give might be is like, okay, I get it, that in an average hypothetical BIPA case, on an individual basis, there



might not be enough, but this isn't that case because there's so many scans that happened for even the people at the low end of the scale in this case; they stand to gain a whole bunch of money if they file a lawsuit.

What about that?

MR. LARRY: Well, I think that's been the case in most BIPA class actions. There were the initial cases filing in social media companies. You do see apps-based cases still going.

But if you look at the overwhelming majority of these cases that are filed, they're in the employment context, they're against the employer and/or the timekeeping vendor.

THE COURT: Yeah.

MR. LARRY: And so it's -- it's the same thing, you know, across the board. I've done a number of these cases, defense counsel has done a number of these cases, I've never seen a situation where you have a meaningful number of people opt out of a BIPA case in the employment context to pursue individual claims. It just -- I haven't seen that happen.

And there have been -- I haven't looked at the exact breakdown of number of BIPA employment versus non-employment cases, but hundreds, if not thousands, of these. And as your Honor knows, many of them have settled, and we -- we -- we haven't seen it.

And I think speaking to the incentive, one thing that



the defendant pointed out in the reply brief is this idea that, well, it doesn't matter that there weren't any individual cases filed because the incentives still favor class litigation and, you know, the attorney has an incentive to file as a class case.

One would expect, if there was really the likelihood of recovery of $2 million, $5 million, even $500,000, that while the initial case may be filed as a class action, an attorney who gets that potential individual case coming across their desk would look at it and say, well, I can't be class counsel, but I'll still file my own. People file cases over $500,000, $2 million all the time.

We haven't seen that. This case, there's 2600 people. Nobody else came in and said, you know what? Those guys beat us to the punch on the class action side, we want to file individually. We just haven't seen it. And there's enough of a record at this point that I think we can look at it and safely say the chances of this happening are very small.

And, your Honor, if notice goes out in this case and a meaningful number of people do opt out, your Honor always has the discretion to decertify the class because in the balancing test of superiority, you could decide, well, those efficiency gains are gone and so it's not worth it anymore.

But as we stand here today, there's no reason to

think that anything other than at most a trivial number of people will opt out.

THE COURT: Pause on that point for a -- so basically what you're suggesting is that it's almost like running a test or an experiment. You send out class notice. If there really is an incentive, presumably, that -- it would have to be -- you know, what people's individual rights are would have to be disclosed in the class notice. If there really is an incentive, we'll know that because we'll get a bunch of opt-outs.

MR. LARRY: I think that's right. And I don't think we're going into this experiment blind either. We've got a long track record here in other cases.

THE COURT: What ended up happening -- I don't -- don't forget where you were because I interrupted you, but what ended up happening -- where are we on the settlement with the employer defendant in this case? Is it in the process of opt out and all that?

MR. LARRY: Opt-outs are done. Checks have gone out. The checks have not expired yet.

THE COURT: Okay. And how -- obviously, it was a -- at that point, it was a known number and it wasn't $2 million, it was a much smaller number. But just out of curiosity, were there any opt-outs?

MR. LARRY: Nope, no opt-outs, your Honor. And I



think that's -- you know, that's the important thing here, is like let's set aside even the class members and their ability to do the math and understand the claims.

There are a number of firms filing BIPA cases. You know, it's -- it is what it is.

THE COURT: Right.

MR. LARRY: I can tell you as somebody who represents a lot of BIPA clients, I often get people coming to me and saying, I got this notice, is this something I can sue about.

And what we have seen uniformly, or what I would expect to see if anyone thought BIPA employment cases were going to actually recover millions of dollars a person, is attorneys looking at this and saying, well, I can do this one case, I don't have to go through the class procedure, and I can get my fees. Oh, and by the way, instead of getting a thousand dollars or $1500, you might get a life-changing amount of money.

We haven't seen it.

THE COURT: Yeah.

MR. LARRY: We didn't see it with the United Tape settlement here. Everyone looked at it and said, I'll take my $1562.50.

So, you know, I -- again, I think this would be a more interesting issue in the abstract if this was the first BIPA case, if this was the first BIPA employment case. But



we've seen a number of these. ADP, Kronos, companies that deal with the same thing they do but bigger, we didn't see any meaningful number of opt-outs on those or individual litigation, and I haven't seen anything in the record from the defendant that suggests that has ever happened in any of these cases.

THE COURT: Go ahead.

MR. LARRY: So --

THE COURT: I don't have -- there's nothing else that I can think of at the moment that I want to ask you --

MR. LARRY: Okay.

THE COURT: -- so just go ahead and finish whatever you wanted to talk about.

MR. LARRY: Sure. Thank you, your Honor.

So as your Honor pointed out in the certification order, this individual incentive to sue question is not the end-all, be-all.

So there are -- it is a balancing test on whether a class action is superior, and there are other factors at play here: Individual incentive to sue is one, it's noted by the rule; the second one noted by the rule is the extent of litigation against or by the members of the class. That's 23(b)(3)(B).

So in defendant's briefing where it says that, you know, the Court doesn't need to consider whether any of these



class members have sued, that's just contrary to the rule, and, again, we haven't seen it, period. We have one case against just one of defendant's clients. We didn't see the same claim asserted against the defendant even though the lawyers knew who the vendor was. We didn't see it. So I think that kind of proves the point.

But also, there are the other broader concerns. There are the efficiency gains. There's the desirability of concentrating litigation in one forum. There's no reason to think that it would be better, more efficient for the parties, for the judicial system, for the individual affected currently class members to proceed with a hundred or a thousand or 2620 individual cases where they have to get into these same issues over and over and over again.

And even if some of those issues are decided overwhelmingly one way or the other, there's still the individualized proceedings before multiple judges, there's the risk of inconsistent rulings, there's the need to impanel multiple juries to weigh in on these issues.

So on the manageability -- or on the individual incentive manageability question, I really do think we've seen the answer overwhelmingly there's no real manageability issue there.

Now, turning to this due process manageability question, I think, again, we're dealing with a hypothetical,

not only in terms of the actual likelihood of any of these outcomes so they could win, in which case there's no issue; we could win on liability, and the jury could say, who cares -- I really hope they don't, but they could say that -- in which case, you know, we get zero or nominal damages and there's no problem there for the defendant; the jury could come in and say, this is bad, it's not $5,000-a-scan bad, and could come in with a number that doesn't violate due process; or they could come in with a number that your Honor thinks does violate due process, and then your Honor applies across the board a uniform reduction to some number that your Honor determines is not violative.

Any of those things could happen and none of these manageability issues arise.

The other piece of this hypothetical, though, is the specific concern outlined in the reply brief, that even if damages are reduced across the board in a uniform fashion, you'll still have some number of people out there who have these overly large claims that need individual assessment.

And I think there's two important -- there's three important points here.

One, again, there's no reason to think that whatever the per-violation damages number reduction is would change whether you have, you know, 10 claims or 10,000, right? If you look at the case law that goes into the constitutionality



of a statutory damages award, there's -- first off, there's really not very much, especially controlling in this Court. I don't think the Seventh Circuit has really ever weighed in with any specificity on it.

The governing case is, I think, a 1919 case from the Supreme Court, the St. Louis IM&S Railway v. Williams case. The analysis there is whether the statutory damage award is disproportionate to the nature of the conduct. And the proportionality is important here. Whether you have one violation, 10 violations, or 10,000, the proportion is still the same.

And so this idea that there's, you know, some individualized issue out there that will remain is inconsistent with the law I've seen and is multiple layers of speculation deep.

On top of that, even if there are these outliers, even if there is somebody who, you know, after a reasonable reduction across the board to a per-violation amount still has a $10 million claim, let's say there's one person who -- 20,000 scans, and the number that works for everybody else doesn't work for them, the law is clear that that sort of individualized damages determination and assessment is not a sufficient basis to find a lack of manageability that would preclude certification.

Again, it's one factor of many. The rule itself



contemplates some individualized issues. The question is do the individualized issues prevent the common ones from predominating. And I don't think that's the case here. Your Honor, if you have to, can make a handful of due-process assessments after the jury verdict has come in. We still will have gained all of those efficiency gains and those uniformity of decision gains from the class mechanism.

And I think, you know, one -- one thing to think about here is the but-for world, what does that look like? If the Court doesn't certify the class or decertifies the class, what happens?

Well, there's two things. There's what I think will happen, which is, overwhelmingly, nobody is going to bring individual cases. You know, we're pretty far along in this one, we'll finish it out. I don't think anyone else is going to file any. There might be one here or there.

Overwhelmingly, you're going to have the defendant go unpunished for what may prove to be unlawful conduct on a pretty broad scale. That is not a superior outcome as a matter of policy, and it's exactly the scenario that Rule 23 was designed to avoid.

The other option is, well, people do actually file individual cases, but then we have a bunch of people trying the same sort of case over and over and over again, which itself is not efficient. And so, again, that's why the



individual incentive to sue is only one of many factors that the Court weighs in deciding whether this is worthwhile.

So with those points, I'm happy to answer any specifics --

THE COURT: Mr. Wolf --

MR. LARRY: -- or questions that you have.

THE COURT: -- I'll give you a couple minutes.

MR. WOLF: Thanks, Judge.

Your Honor, counsel had touched on this fact that cases have almost exclusively been filed as class actions, but as we point out in our brief, that has almost nothing to do with the individual incentive to sue.

We live in the real world. We know why they're being filed as class actions. It's because the recovery for the attorneys filing the cases jumps exponentially --

THE COURT: As one of my retired former colleagues used to say, I didn't just fall off the back of a turnip truck.

MR. WOLF: Thank you. Yeah. Exactly. Right?

THE COURT: That was Judge Marovitz, just to --

MR. WOLF: Right.

THE COURT: -- just to give credit where credit is due.

MR. WOLF: Right.

You know, and just another real-world concern for not

just my client but other defendants in this area, especially in this employment context, is their insurance coverage, which any occurrence-based policy may be triggered multiple times if there's individual lawsuits filed against them where -- that won't happen in this case, right? It's a one-time trigger, potentially, because it's one lawsuit.

And so what we're looking at trying to keep, you know, a defendant's company afloat, because that's the rationale of the law, well, they would be better off financially by having individual lawsuits filed against them because they would have potentially more insurance coverage than they would ever have being sued by 2600 people for $24 billion.

And despite counsel saying, well, we don't know what the damages will be, well, we never do at the class certification stage. We haven't gone through a jury trial to determine what the damages are. It's always a bit of a mystery. And that's why the courts and the cases that we've cited have all looked at the potential recoveries that are out there.

And -- you know, and they're still actively seeking this 24 billion. They disclosed it in their 26(a) disclosures. They haven't come out and said, well, look, that's the possible recovery, but it's likely not what we're going to do at the trial.



And they've even offered an argument to say, even if we get 24 billion, it's not unconstitutional and it's not a violation of their due process rights.

So to say now that, well, we don't know, I mean, well, they're still actively pursuing that. So how else are we supposed to examine that fact other than it's a possibility and they're going for it?

So it --

THE COURT: One more point, just -- you need to wrap up.

MR. WOLF: Okay. Yeah.

And with that, we mentioned *Kronos* and these other claims, those settlements were pre-*Cothron* -- pre-*Cothron*. So post *Cothron* --

THE COURT: In other words, before people knew you could get multiple --

MR. WOLF: Exactly.

THE COURT: Yeah.

MR. WOLF: And I think that --

THE COURT: Well, they knew for sure. I mean --

MR. WOLF: Right.

THE COURT: Fair enough. Okay.

MR. WOLF: Going forward, we're going to see more and more individual BIPA claims.

THE COURT: Okay.



MR. WOLF: Thank you.

THE COURT: So I know I've got the -- so I know I've got the class notice thing under advisement. Obviously, I've tabled that pending this. I'll get to this promptly, and then we'll kind of take it from there.

I appreciate the arguments today. Thanks for coming in on short notice.

MR. WOLF: Thank you. Have a good day, your Honor.

MR. LARRY: Thank you, your Honor.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Carolyn R. Cox, CSR, RPR, F/CRR* October 30, 2023
Official Court Reporter
United States District Court
Northern District of Illinois
Eastern Division

# United States District Court
# Northern District of Illinois - CM/ECF NextGen 1.7.1.1 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:21-cv-03400
# Internal Use Only

Tapia-Rendon v. Employer Solutions Staffing Group II, LLC et al
Assigned to: Honorable Matthew F. Kennelly
Demand: $9,999,000
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 06/24/2021
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Maria Tapia-Rendon**
*ndividually and on behalf of all others similarly situated*

represented by **J. Dominick Larry**
Nick Larry Law LLC
1720 W Division St
Chicago, IL 60622
773-694-4669
Email: nick@nicklarry.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tom Kayes**
The Civil Rights Group, LLC
2045 W Grand Ave
Ste B, PMB 62448
Chicago, IL 60612
708.722.2241
Email: tom@civilrightsgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United Tape & Finishing Co., Inc.**

represented by **Darcy L. Proctor**
Tressler LLP
233 S. Wacker Drive
61st Floor
Chicago, IL 60606
312-307-8595
Email: dproctor@tresslerllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Kenneth Borcia**
Tressler LLP
233 South Wacker Drive
61st Floor
Chicago, IL 60606-6399
(312) 627-4000

Email: jborcia@tresslerllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John M. O'Driscoll**
Tressler LLP
550 East Boughton Road
Suite 250
Bolingbrook, IL 60440
630-343-5209
Email: jodriscoll@tresslerllp.com
*ATTORNEY TO BE NOTICED*

**Todd Mitchell Rowe**
Tressler Soderstrom Maloney & Priess, LLP
233 S. Wacker Drive
22nd Floor
Chicgo, IL 60606
(312)627-4180
Email: trowe@tsmp.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**EasyWorkforce Software, LLC** represented by **Dmitry Shifrin**
Polsinelli PC
150 N. RIVERSIDE PLAZA, SUITE 3000
CHICAGO, IL 60606
312-463-6325
Email: dshifrin@polsinelli.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Josh M. Kantrow**
Lewis Brisbois Bisgaard & Smith LLC
550 W. Adams
Suite 300
Chicago, IL 60661
(312) 345-1718
Email: Josh.Kantrow@lewisbrisbois.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M. Wolf**
Lewis Brisbois Bisgaard & Smith LlP
550 W. Adams, Suite 300
Chicago, IL 60661
(312) 345-1718
Email: thomas.wolf@lewisbrisbois.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron T Liljestrand**
Lewis Brisbois Bisgaard & Smith Llc
550 West Adams Street

Third Floor
Chicago, IL 60661
3124633333
Email: Cameron.Liljestrand@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**Mark A. Olthoff**
Polsinelli Pc
900 W 48th Place
Suite 900
Kansas City, MO 64112
(816) 753-1000
Email: molthoff@polsinelli.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**United Tape & Finishing Co., Inc.** represented by **Darcy L. Proctor**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Kenneth Borcia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John M. O'Driscoll**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Mitchell Rowe**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**EasyWorkforce Software, LLC** represented by **Dmitry Shifrin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark A. Olthoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2021 | 1 | COMPLAINT *Class Action Complaint and Demand for Jury Trial* filed by Maria Tapia-Rendon; Jury Demand. Filing fee $ 402, receipt number 0752-18386801.(Larry, |

| | | |
|---|---|---|
| | | J.) (Entered: 06/24/2021) |
| 06/24/2021 | 2 | CIVIL Cover Sheet (Larry, J.) (Entered: 06/24/2021) |
| 06/24/2021 | | CASE ASSIGNED to the Honorable Matthew F. Kennelly. Designated as Magistrate Judge the Honorable Beth W. Jantz. Case assignment: Random assignment. (txl, ) (Entered: 06/24/2021) |
| 06/24/2021 | 3 | ATTORNEY Appearance for Plaintiff Maria Tapia-Rendon by J. Dominick Larry (Larry, J.) (Entered: 06/24/2021) |
| 06/24/2021 | | SUMMONS Issued as to Defendants EasyWorkforce Software, LLC, Employer Solutions Staffing Group II, LLC, United Tape & Finishing Co., Inc. (exr, ) (Entered: 06/24/2021) |
| 07/08/2021 | 4 | ATTORNEY Appearance for Plaintiff Maria Tapia-Rendon by Tom Kayes (Kayes, Tom) (Entered: 07/08/2021) |
| 07/15/2021 | 5 | SUMMONS Returned Executed by Maria Tapia-Rendon as to United Tape & Finishing Co., Inc. on 6/29/2021, answer due 7/20/2021. (Larry, J.) (Entered: 07/15/2021) |
| 07/15/2021 | 6 | SUMMONS Returned Executed by Maria Tapia-Rendon as to Employer Solutions Staffing Group II, LLC on 7/13/2021, answer due 8/3/2021. (Larry, J.) (Entered: 07/15/2021) |
| 07/15/2021 | 7 | SUMMONS Returned Executed by Maria Tapia-Rendon as to EasyWorkforce Software, LLC on 6/29/2021, answer due 7/20/2021. (Larry, J.) (Entered: 07/15/2021) |
| 08/02/2021 | 8 | ATTORNEY Appearance for Defendant United Tape & Finishing Co., Inc. by Darcy L. Proctor *re: Appearance and Jury Demand* (Proctor, Darcy) (Entered: 08/02/2021) |
| 08/02/2021 | 9 | MOTION by Defendant United Tape & Finishing Co., Inc. for extension of time to file answer regarding complaint 1 (Proctor, Darcy) (Entered: 08/02/2021) |
| 08/02/2021 | 10 | NOTICE of Motion by Darcy L. Proctor for presentment of motion for extension of time to file answer 9 before Honorable Matthew F. Kennelly on 8/11/2021 at 09:30 AM. (Proctor, Darcy) (Entered: 08/02/2021) |
| 08/02/2021 | 11 | ATTORNEY Appearance for Defendant United Tape & Finishing Co., Inc. by Todd Mitchell Rowe *re: Appearance and Jury Demand* (Rowe, Todd) (Entered: 08/02/2021) |
| 08/02/2021 | 12 | ATTORNEY Appearance for Defendant United Tape & Finishing Co., Inc. by John M. O'Driscoll *re: Appearance and Jury Demand* (O'Driscoll, John) (Entered: 08/02/2021) |
| 08/03/2021 | 13 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendant United Tape & Finishing Co.'s agreed motion for extension of time 9 is granted; response to complaint is to be filed by 8/31/2021. (mk) (Entered: 08/03/2021) |
| 08/11/2021 | 14 | REQUEST For Default *as to Defendant EasyWorkforce Software, LLC* (Attachments: # 1 Declaration of J. Dominick Larry in support of request for default)(Larry, J.) (Entered: 08/11/2021) |
| 08/11/2021 | 15 | REQUEST For Default *as to Defendant Employer Solutions Staffing Group II, LLC* (Attachments: # 1 Declaration of J. Dominick Larry in support of request for default, # 2 Exhibit A to Larry Declaration, # 3 Exhibit B to Larry Declaration)(Larry, J.) (Entered: 08/11/2021) |
| 08/11/2021 | 16 | MINUTE entry before the Honorable Matthew F. Kennelly: By no later than 8/25/2021, the parties (or, if no defendant has yet appeared, the plaintiff(s)) are to file a joint status report that includes the following information: (1) the status of service of |

| | | |
|---|---|---|
| | | process upon each defendant; (2) a description of each party's claims and defenses; (3) details regarding any discussions concerning settlement, whether before or after the filing of the lawsuit; (4) a proposed discovery and pretrial schedule; and (5) any other matters that any party wishes to bring to the Court's attention. The case is set for a case management conference under Federal Rule of Civil Procedure 16 on 9/1/2021 at 9:25 a.m. The case management conference will be conducted by telephone, using the following call-in number: 888-684-8852, access code 746-1053. Plaintiff's counsel is directed to provide a copy of this order to any defendant that has not yet appeared by counsel via regular mail at the address at which the defendant has been or is to be served with process. (mk) (Entered: 08/11/2021) |
| 08/12/2021 | 17 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendants EasyWorkforce Software, LLC and Employer Solutions Staffing Group II, LLC are held in default for failure to respond to plaintiff's complaint following service of summons. (mk) (Entered: 08/12/2021) |
| 08/13/2021 | 18 | ATTORNEY Appearance for Defendant EasyWorkforce Software, LLC by Dmitry Shifrin (Shifrin, Dmitry) (Entered: 08/13/2021) |
| 08/13/2021 | 19 | MOTION by Defendant EasyWorkforce Software, LLC to set aside default (Shifrin, Dmitry) (Entered: 08/13/2021) |
| 08/13/2021 | 20 | MOTION by Defendant EasyWorkforce Software, LLC for extension of time to file answer *to Complaint* (Shifrin, Dmitry) (Entered: 08/13/2021) |
| 08/18/2021 | 21 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-18577969. (Olthoff, Mark) (Entered: 08/18/2021) |
| 08/18/2021 | 22 | MINUTE entry before the Honorable Matthew F. Kennelly: Unopposed motion by defendant Defendant EasyWorkforce Software, LLC to to set aside default 19 is granted. The same defendant's motion for extension of time 20 is granted; response to complaint is to be filed by 8/31/2021. Motion of Mark Olthoff to appear pro hac vice 21 is granted. (mk) (Entered: 08/18/2021) |
| 08/24/2021 | 23 | ATTORNEY Appearance for Defendant Employer Solutions Staffing Group II, LLC by Thomas E. Ahlering (Ahlering, Thomas) (Entered: 08/24/2021) |
| 08/24/2021 | 24 | MOTION by Defendant Employer Solutions Staffing Group II, LLC Unopposed Motion To Set Aside Entry Of Default (Ahlering, Thomas) (Entered: 08/24/2021) |
| 08/24/2021 | 25 | MOTION by Defendant Employer Solutions Staffing Group II, LLC for leave to file *Unopposed Motion For Leave To Answer Or Otherwise Respond To Plaintiff's Complaint Out Of Time* (Ahlering, Thomas) (Entered: 08/24/2021) |
| 08/24/2021 | 26 | ATTORNEY Appearance for Defendant Employer Solutions Staffing Group II, LLC by Paul John Yovanic, Jr (Yovanic, Paul) (Entered: 08/24/2021) |
| 08/25/2021 | 27 | MOTION by Defendant United Tape & Finishing Co., Inc. for extension of time *DEFENDANTS UNITED TAPE & FINISHING CO., INC.'S AND EASY WORKFORCE SOFTWARE, LLC'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT* (Attachments: # 1 Certificate of Service) (Proctor, Darcy) (Entered: 08/25/2021) |
| 08/25/2021 | 28 | STATUS Report *Joint Initial Status Report* by Maria Tapia-Rendon (Larry, J.) (Entered: 08/25/2021) |
| 08/26/2021 | 29 | MINUTE entry before the Honorable Matthew F. Kennelly: Unopposed motion to set aside default 24 is granted. Motions for extension of time 25 27 are granted; responses |

| | | |
|---|---|---|
| | | to complaint are to be filed by 9/22/2021. This date will not be extended again. (mk) (Entered: 08/26/2021) |
| 09/01/2021 | 30 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 9/1/2021. Rule 26(a)(1) disclosures are to be made by 10/22/2021. Fact discovery cutoff date is 9/23/2022. Rule 26(a)(2) disclosure date for any plaintiff's expert that is offered in support of class certification are due 5/31/2021. Deadline for amending the pleadings and adding parties 3/31/2022. A telephonic status hearing is set for 11/16/2021 at 9:00 a.m. The following call-in number will be used for the hearing: 888-684-8852 conference code 746-1053. The parties are to file a joint status report regarding any updates on discovery and any discussions about settlement by 11/9/2021. Mailed notice. (mma, ) (Entered: 09/01/2021) |
| 09/22/2021 | 31 | ANSWER to Complaint *and Affirmative Defenses* by EasyWorkforce Software, LLC(Shifrin, Dmitry) (Entered: 09/22/2021) |
| 09/22/2021 | 32 | ANSWER to Complaint *and affirmative defenses* by Employer Solutions Staffing Group II, LLC(Ahlering, Thomas) (Entered: 09/22/2021) |
| 09/22/2021 | 33 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by EasyWorkforce Software, LLC (Shifrin, Dmitry) (Entered: 09/22/2021) |
| 09/22/2021 | 34 | *DEFENDANT UNITED TAPE & FINISHING, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT* ANSWER to Complaint with Jury Demand by United Tape & Finishing Co., Inc. (Attachments: # 1 Notice of Filing)(Proctor, Darcy) (Entered: 09/22/2021) |
| 10/15/2021 | 35 | ATTORNEY Appearance for Defendant Employer Solutions Staffing Group II, LLC by Richard Patrick McArdle (McArdle, Richard) (Entered: 10/15/2021) |
| 10/18/2021 | 36 | MOTION by Defendants EasyWorkforce Software, LLC, Employer Solutions Staffing Group II, LLC, United Tape & Finishing Co., Inc. to stay *proceedings* (Yovanic, Paul) (Entered: 10/18/2021) |
| 10/19/2021 | 37 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendants' motion to stay 36 this case pending various state-court appeals is denied. The Court disagrees with the contention that such motions have been "routinely" granted in this District; in fact some judges (including this one) have denied several of them, and others have granted them. The Court is not persuaded that it is an appropriate exercise of judicial discretion to stay the present case, effectively, indefinitely pending final rulings in state court on the matters cited by defendants. (mk) (Entered: 10/19/2021) |
| 11/08/2021 | 38 | MOTION by Plaintiff Maria Tapia-Rendon for protective order *Joint Motion for Agreed Confidentiality Order* (Attachments: # 1 Exhibit A - Proposed Order with redlines against Model Order)(Larry, J.) (Entered: 11/08/2021) |
| 11/08/2021 | 39 | STIPULATION *Stipulated ESI Protocol* (Larry, J.) (Entered: 11/08/2021) |
| 11/08/2021 | 40 | STATUS Report *Joint Status Report* by Maria Tapia-Rendon (Larry, J.) (Entered: 11/08/2021) |
| 11/09/2021 | 41 | AGREED CONFIDENTIALITY ORDER signed by the Honorable Matthew F. Kennelly on 11/9/2021: Motion for entry of agreed confidentiality order is granted. The telephonic status hearing set for 11/16/2021 is vacated and reset to 1/24/2022 at 8:50 a.m. The following call-in number will be used for the hearing: 888-684-8852 conference code 746-1053. The parties are to file a joint status report regarding any updates on discovery and any discussions about settlement on 1/17/2022. (mk) (Entered: 11/09/2021) |

| | | |
|---|---|---|
| 12/16/2021 | 42 | STIPULATION of Dismissal *Without Prejudice of Claims Against Defendant Employer Solutions Staffing Group II, LLC* (Larry, J.) (Entered: 12/16/2021) |
| 12/19/2021 | 43 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiff's claims against defendant Employer Solutions Staffing Group II, LLC are dismissed with prejudice and without costs pursuant to stipulation. (mk) (Entered: 12/19/2021) |
| 12/23/2021 | 44 | MINUTE entry before the Honorable Matthew F. Kennelly: This order corrects docket entry 43 which contained a typographical error. Plaintiff's claims against defendant Employer Solutions Staffing Group II, LLC are dismissed without prejudice and without costs pursuant to stipulation. Mailed notice. (mma, ) (Entered: 12/23/2021) |
| 01/14/2022 | 45 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 01/14/2022) |
| 01/15/2022 | 46 | MINUTE entry before the Honorable Matthew F. Kennelly: Based on the parties' joint status report, the telephonic status hearing set for 1/24/2022 is vacated and reset to 3/23/2022 at 9:00 a.m. The following call-in number will be used for the hearing: 888-684-8852 conference code 746-1053. The parties are to file a joint status report regarding any updates on discovery and any discussions about settlement on 63/11/17/2022. (mk) (Entered: 01/15/2022) |
| 01/30/2022 | 47 | NOTICE by Tom Kayes of Change of Address *Law Firm Name Change* (Kayes, Tom) (Entered: 01/30/2022) |
| 03/15/2022 | 48 | MOTION by Plaintiff Maria Tapia-Rendon for extension of time *Joint motion to extend deadlines to amend pleadings and serve Rule 26(a)(2) disclosures* (Larry, J.) (Entered: 03/15/2022) |
| 03/15/2022 | 49 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 03/15/2022) |
| 03/19/2022 | 50 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion to extend certain deadlines 48 is granted. The deadline for amending the pleadings and adding parties is etended to 5/31/2022, and the deadline for plaintiff's Rule 26(a)(2) disclosures is extended to 8/1/2022. The parties should not expect another extension of these dates. The telephonic status hearing set for 3/23/2022 is vacated and reset to 5/11/2022 at 9:20 a.m. The following call-in number will be used for the hearing: 888-684-8852 conference code 746-1053. The parties are to file a joint status report regarding any updates on discovery and any discussions about settlement on 5/4/2022. (mk) (Entered: 03/19/2022) |
| 05/04/2022 | 51 | STATUS Report *Joint Status Report* by Maria Tapia-Rendon (Larry, J.) (Entered: 05/04/2022) |
| 05/11/2022 | 52 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 5/11/2022. The parties provided an update on discovery and settlement discussions. A telephonic status hearing is set for 6/15/2022 at 9:10 a.m. The following call-in number will be used for the hearing: 888-684-8852 conference code 746-1053. The parties are directed to file a joint status report by 6/10/2022. Mailed notice. (mma, ) (Entered: 05/11/2022) |
| 05/31/2022 | 53 | MOTION by Defendant United Tape & Finishing Co., Inc. for leave to file *Crossclaim* (Attachments: # 1 Exhibit 1)(Proctor, Darcy) (Entered: 05/31/2022) |
| 06/02/2022 | 54 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendant's motion for leave to file crossclaim 53 is granted; defendant should now file the crossclaim as a separate docket entry. (mk) (Entered: 06/02/2022) |
| 06/03/2022 | 55 | CROSSCLAIM by United Tape & Finishing Co., Inc. against EasyWorkforce |

| | | |
|---|---|---|
| | | Software, LLC .(Proctor, Darcy) (Entered: 06/03/2022) |
| 06/10/2022 | 56 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 06/10/2022) |
| 06/10/2022 | 57 | ATTORNEY Appearance for Cross Claimant United Tape & Finishing Co., Inc., Defendant United Tape & Finishing Co., Inc. by James Kenneth Borcia (Borcia, James) (Entered: 06/10/2022) |
| 06/11/2022 | 58 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The telephonic status hearing set for 6/15/2022 is vacated and reset to 8/11/2022 at 9:10 a.m. The following call-in number will be used for the hearing: 888-684-8852 conference code 746-1053. The parties are directed to file a further joint status report on 8/4/2022. (mk) (Entered: 06/11/2022) |
| 06/24/2022 | 59 | ANSWER to Crossclaim *DEFENDANT EASYWORKFORCE SOFTWARE, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO THE CROSS-CLAIM OF UNITED TAPE & FINISHING CO., INC.* by EasyWorkforce Software, LLC(Olthoff, Mark) (Entered: 06/24/2022) |
| 07/20/2022 | 60 | MOTION by Plaintiff Maria Tapia-Rendon for extension of time *to disclose class certification expert (Unopposed)* (Larry, J.) (Entered: 07/20/2022) |
| 07/21/2022 | 61 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiff's motion for extension of time 60 is set for a telephonic hearing on 7/25/2022 at 9:10 AM, using call-in number 888-684-8852, access code 746-1053. (mk) (Entered: 07/21/2022) |
| 07/25/2022 | 62 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic motion hearing held on 7/25/2022. Any discovery regarding class certification must be completed by 8/19/2022. Plaintiff's motion to extend the deadline 60 is granted. The deadline for the plaintiff's Rule 26(a)(2) disclosures for class certification is extended to 9/14/2022. The deadline for the plaintiff's class certification motion is extended to 10/5/2022. These dates will not be extended again for any reason. Mailed notice. (mma, ) (Entered: 07/25/2022) |
| 07/28/2022 | 63 | ATTORNEY Appearance for Defendant EasyWorkforce Software, LLC, Cross Defendant EasyWorkforce Software, LLC by Amy D. Fitts (Fitts, Amy) (Entered: 07/28/2022) |
| 08/04/2022 | 64 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 08/04/2022) |
| 08/11/2022 | 65 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 8/11/2022. The claims against EasyWorkforce Software, LLC are referred to Magistrate Judge Jantz for the purpose of conducting a settlement conference. A telephonic status hearing is set for 8/30/2022 at 9:25 a.m. The following call-in number will be used for the hearing: 888-684-8852, conference code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 08/11/2022) |
| 08/11/2022 | 66 | Pursuant to Local Rule 72.1, the claims against EasyWorkforce Software, LLC are hereby referred to the calendar of Honorable Beth W. Jantz for the purpose of holding proceedings related to: settlement conference. Mailed notice. (mma, ) (Entered: 08/11/2022) |
| 08/12/2022 | 67 | MINUTE entry before the Honorable Beth W. Jantz: This case has been referred to the Magistrate Judge for proceedings related to a settlement conference 66 . The parties are |

| | | |
|---|---|---|
| | | directed to review and comply with Magistrate Judge Jantz's Standing Order for Settlement Conferences. A telephonic pre-settlement conference call is scheduled for 8/22/2022 at 10:15 a.m. To join the pre-settlement call by phone, dial 888-273-3658 and enter access code 2217918. Members of the public and media will be able to call in to listen to this hearing as well. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (as, ) (Entered: 08/12/2022) |
| 08/15/2022 | 68 | NOTICE by J. Dominick Larry of Change of Address (Larry, J.) (Entered: 08/15/2022) |
| 08/22/2022 | 69 | MINUTE entry before the Honorable Beth W. Jantz: The referral for a settlement conference 66 is for the claims between Plaintiff and defendant EasyWorkforce Software, LLC only. Accordingly, the Court would like to clarify that only Counsel for the Plaintiff and EasyWorkforce Software, LLC are to participate in the pre-settlement conference call scheduled for 8/22/2022 at 10:15 a.m. Mailed notice. (as, ) (Entered: 08/22/2022) |
| 08/22/2022 | 70 | MINUTE entry before the Honorable Beth W. Jantz: A pre-settlement conference call held on 8/22/2022 with counsel for Plaintiffs and defendant EasyWorkforce Software, LLC. The Court thanks the parties for a productive call, which is continued to 8/25/22 at 3:00 p.m. Central in order for the parties to explore the insurance issues as discussed on the call. To join the pre-settlement conference call conference by phone, dial 888-273-3658 and enter access code 2217918. Mailed notice. (as, ) (Entered: 08/22/2022) |
| 08/25/2022 | 71 | MINUTE entry before the Honorable Beth W. Jantz: The pre-settlement conference call set for 8/25/2022 is reset to 8/25/2022 at 3:30 p.m. **Time change only.** Call in information to remain. Mailed notice. (as, ) (Entered: 08/25/2022) |
| 08/25/2022 | 72 | MINUTE entry before the Honorable Beth W. Jantz: Telephonic pre-settlement conference held on 10/25/2022. A settlement conference is scheduled for 10/26/2022 at 10:00 a.m. via Microsoft Teams. Chambers staff will reach out to the parties in advance of the settlement conference to establish video connections and schedule a test run. The parties are directed to this Court's standing order on settlement conferences, available on the Court's website. Plaintiff's settlement position statement is due to this Court's settlement inbox (Settlement_Correspondence_Jantz@ilnd.uscourts.gov) and to opposing counsel by 9/9/2022. Defendant's responsive statements are due to the same by 9/23/2022. A pre-settlement conference call is scheduled for 10/6/2022 at 10:30 a.m. To join the conference by phone, dial 888-273-3658 and enter access code 2217918. Mailed notice. (as, ) (Entered: 08/29/2022) |
| 08/30/2022 | 73 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 8/30/2022. Deadline for any motions for preliminary approval of class settlement is 9/20/2022. A telephonic status hearing is set for 9/28/2022 at 8:40 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 08/30/2022) |
| 08/31/2022 | 74 | MOTION by Plaintiff Maria Tapia-Rendon to stay *deadlines pending settlement conference (Joint)* (Larry, J.) (Entered: 08/31/2022) |

| | | |
|---|---|---|
| 09/01/2022 | 75 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion to stay 74 certain deadlines pending the late-October settlement conference with Judge Jantz is granted. (mk) (Entered: 09/01/2022) |
| 09/20/2022 | 76 | MOTION by Plaintiff Maria Tapia-Rendon for extension of time to file *motion for preliminary approval (unopposed)* (Larry, J.) (Entered: 09/20/2022) |
| 09/21/2022 | 77 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion for extension of time 76 is granted; deadline for filing motion for preliminary approval of class settlement is extended to 9/27/2022. (mk) (Entered: 09/21/2022) |
| 09/27/2022 | 78 | MOTION by Plaintiff Maria Tapia-Rendon for settlement *Plaintiff's Motion for Preliminary Approval of Class Action Settlement* (Larry, J.) (Entered: 09/27/2022) |
| 09/27/2022 | 79 | MEMORANDUM by Maria Tapia-Rendon in support of motion for settlement 78 *Plaintiff's Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement* (Larry, J.) (Entered: 09/27/2022) |
| 09/27/2022 | 80 | DECLARATION of Thomas R. Kayes regarding motion for settlement 78 (Larry, J.) (Entered: 09/27/2022) |
| 09/27/2022 | 81 | DECLARATION of J. Dominick Larry regarding motion for settlement 78 (Attachments: # 1 Exhibit 1 - Settlement Agreement)(Larry, J.) (Entered: 09/27/2022) |
| 09/28/2022 | 82 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 9/28/2022. Plaintiff's motion for preliminary approval 78 is granted. Enter order. Telephonic final approval hearing is set for 1/27/2023 at 9:00 a.m. A telephonic status hearing on the rest of the case is set for 11/7/2022 at 9:05 a.m. The following call-in number will be used for both hearings: 888-684-8852, access code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 09/28/2022) |
| 09/28/2022 | 83 | ORDER Granting Preliminary Approval: Signed by the Honorable Matthew F. Kennelly on 9/28/2022. Mailed notice. (mma, ) (Entered: 09/28/2022) |
| 10/05/2022 | 84 | MINUTE entry before the Honorable Beth W. Jantz: In order to allow for more time in the Court's schedule to discuss the relevant settlement issues with counsel, the pre-settlement conference call on 10/06/2022 is cancelled and reset to 10/11/2022 at 11:30 a.m. Mailed notice. (as, ) (Entered: 10/05/2022) |
| 10/11/2022 | 85 | MINUTE entry before the Honorable Beth W. Jantz: Telephonic pre-settlement conference held on 10/11/2022 as between Plaintiffs and EasyWorkforce. The Court thanks the parties for their detailed written settlement position statements. In order to allow for the following work, which is necessary for a successful settlement conference, the settlement conference currently scheduled for 10/26/2022 is rescheduled to 12/21/22 at 9:30am Central via Microsoft Teams. Chambers staff will reach out to the parties in advance of the settlement conference to establish video connections and schedule a test run. Another pre-settlement conference call with counsel is scheduled for 12/8/22 at 1:30 p.m. To join the conference by phone, dial 888-273-3658 and enter access code 2217918. During that call, the parties should be prepared to discuss the following, as it impacts upon possible settlement: (a) whether the plaintiffs' team has heard back on their recent inquiries to the operative insurance companies; and (b) any developments following the parties' meet and confer efforts (which should take place via video or phone well in advance of the 12/8/22 call) |

| | | |
|---|---|---|
| | | regarding (i) indemnification issues and (ii) plaintiffs' settlement demands on pages 9-10 of its position letter (including any relevant examples) and defendant's responses on page 6 of its letter, including but not limited to per member "rates" for employer vs. vendor cases. If plaintiffs are requesting any further financial information on the defendant's financial condition, they must make that request(s) by 10/25/22, and EasyWorkforce should respond in advance of the 12/8/22 call, if it chooses to share that information. Mailed notice. (as, ) (Entered: 10/11/2022) |
| 11/03/2022 | 86 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 11/03/2022) |
| 11/04/2022 | 87 | MINUTE entry before the Honorable Matthew F. Kennelly: Based on the resetting of the settlement conference with Judge Jantz, the telephonic status hearing set for 11/7/2022 is vacated and reset to 1/11/2023 at 8:55 a.m. The following call-in number will be used for both hearings: 888-684-8852, access code 746-1053. A further joint status report is to be filed on 1/4/2023. (mk) (Entered: 11/04/2022) |
| 12/08/2022 | 88 | MINUTE entry before the Honorable Beth W. Jantz: Settlement Conference Pre-Call held on 12/8/2022. The Court discussed all items listed in Dkt. 85 . The parties expect at least one insurer to participate in the settlement conference. As discussed on the call: Defendant to provide certain financial information to plaintiff by 12/9/22. Defense to file an addendum to its settlement position statement with the input of Wilshire Insurance by 12/15/2022. Plaintiff to file a responsive addendum by 12/16/2022. In addition to the other items discussed on the call, both addendums should address the issue regarding supplier indemnification. Plaintiff's responsive addendum also should include examples of settlement agreements with a structure similar to the kind of agreement plaintiff seeks in this matter. Settlement Conference on 12/21/22 at 9:30 a.m. via Teams stands. EasyWorkforce must have attend via video a person to answer technical questions regarding potential injunctive relief. Mailed notice. (as, ) (Entered: 12/09/2022) |
| 12/12/2022 | 89 | ATTORNEY Appearance for Defendant EasyWorkforce Software, LLC by Thomas M. Wolf (Wolf, Thomas) (Entered: 12/12/2022) |
| 12/12/2022 | 90 | ATTORNEY Appearance for Defendant EasyWorkforce Software, LLC by Josh M. Kantrow (Kantrow, Josh) (Entered: 12/12/2022) |
| 12/13/2022 | 91 | ATTORNEY Appearance for Defendant EasyWorkforce Software, LLC by Cameron T Liljestrand (Liljestrand, Cameron) (Entered: 12/13/2022) |
| 12/14/2022 | 92 | MOTION by Plaintiff Maria Tapia-Rendon for attorney fees *and incentive award* (Attachments: # 1 Memorandum, # 2 Larry Declaration)(Kayes, Tom) (Entered: 12/14/2022) |
| 12/21/2022 | 93 | MINUTE entry before the Honorable Beth W. Jantz: Settlement conference via video held and continued on 12/21/22. The parties and coverage counsel for insurers Wilshire and Scottsdale agree that the parties' settlement efforts would benefit from an exchange of positions regarding defendant EasyWorkforce's insurance coverage and any exclusions, as the landscape surrounding EasyWorkforce's insurance coverage has shifted throughout the settlement process. Wilshire and Scottsdale's position statements are due to the Court's settlement inbox (Settlement_Correspondence_Jantz@ilnd.uscourts.gov) and counsel for the parties by 1/10/23. The insurers' position statements should include not only their positions with respect to coverage, but also insight into each insurer's planned course of action in the absence of a settlement (i.e., filing a declaratory judgment action, etc.). Plaintiff's position statement (including a firm new demand) is due by 1/20/23. Defendant EasyWorkforce's position statement (including a firm new offer) is due by 1/23/23 (note this is a slightly different schedule than as discussed during today's conference). |

| | | |
|---|---|---|
| | | All position statements should be 10 pages or less, should include the participants' positions on BOTH choice of law and coverage, and must cite relevant case law. A status hearing on settlement is set for 1/31/23 at 9:00 a.m. The parties and counsel for the insurers should call into the hearing prepared with theirs and their clients' availability for a continued settlement conference, if the Court determines that the parties' updated positions warrants such a continuation. To join the hearing, dial 888-273-3658 and enter access code 2217918. Mailed notice. (as, ) (Entered: 12/21/2022) |
| 12/29/2022 | 94 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |
| 01/04/2023 | 95 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 01/04/2023) |
| 01/05/2023 | 96 | MINUTE entry before the Honorable Matthew F. Kennelly: Based on the joint status report as it relates to the settlement proceedings before Judge Jantz, the telephonic status hearing set for 1/11/2023 is vacated and reset to 2/6/2023 at 8:50 a.m. The following call-in number will be used for both hearings: 888-684-8852, access code 746-1053. A further joint status report is to be filed on 2/2/2023. The final approval hearing regarding the United Tape settlement remains set for 1/27/2023 as previously ordered. In addition, the Court sets the following schedule for further proceedings. Rule 26(a)(2) disclosures regarding class certification are due by 3/10/2023; rebuttal Rule 26(a)(2) disclosure regarding class certification are due by 4/7/2023; expert discovery regarding class certification is to be completed by 4/28/2023; any motion for class certification must be filed by 5/19/2023; response is due 6/9/2023; reply to response is due 6/23/2023. (mk) (Entered: 01/05/2023) |
| 01/12/2023 | 97 | MOTION by Plaintiff Maria Tapia-Rendon to vacate *final fairness hearing and modify preliminary approval order* (Attachments: # 1 Exhibit A - Proposed Corrective Notice) (Larry, J.) (Entered: 01/12/2023) |
| 01/13/2023 | 98 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion to vacate fairness hearing and modify preliminary approval order 97 is set for a telephonic hearing on 1/19/2023 at 8:50 AM, using call-in number 888-684-8852, access code 746-1053. (mk) (Entered: 01/13/2023) |
| 01/19/2023 | 99 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 1/19/2023. The unopposed motion to vacate final fairness hearing and modify preliminary approval order 97 is granted. The final approval hearing set for 1/27/2023 is vacated and reset to 5/16/2023 at 9:00 a.m. The hearing will be held by telephone using the following call-in number: 888-684-8852, access code 746-1053. By no later than 1/23/2023, the notice consistent with the motion is to be sent out to the class members that have already received it. By no later than 2/10/2023, the notice will need to be sent to class members who have not received it. Deadline for objections and requests for exclusion is extended to4/21/2023. Deadline for the final approval motion |

| | | |
|---|---|---|
| | | and fee petition is 4/28/2023. Plaintiff and defendant EasyWorkforce are directed to file a joint status report by 1/30/2023. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 01/19/2023) |
| 01/30/2023 | 100 | STATUS Report *Joint - by Plaintiff and EasyWorkforce* by Maria Tapia-Rendon (Larry, J.) (Entered: 01/30/2023) |
| 02/01/2023 | 101 | MINUTE entry before the Honorable Beth W. Jantz: Status hearing on settlement held on 1/31/23. After exchange of the parties' and insurers' statements regarding EasyWorkForce's insurance coverage and further discussion of the parties' positions on the call, the Court has determined that, given the parties' current settlement positions, continuing settlement discussions with the Court's involvement would not be productive at this time. No party had an objection. Since the referral was for the purpose of holding proceedings related to settlement, the referral will now be closed. Mailed notice. (as, ) (Entered: 02/01/2023) |
| 02/02/2023 | 102 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 02/02/2023) |
| 02/04/2023 | 103 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The telephonic status hearing set for 2/6/2023 is vacated and reset to 3/21/2023 at 9:100 a.m. The following call-in number will be used for both hearings: 888-684-8852, access code 746-1053. A further joint status report regarding the progress of discovery and settlement discussions (regarding Easy Workforce) is to be filed on 3/14/2023. (mk) (Entered: 02/04/2023) |
| 02/13/2023 | 104 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by EasyWorkforce Software, LLC (Shifrin, Dmitry) (Entered: 02/13/2023) |
| 03/14/2023 | 105 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Larry, J.) (Entered: 03/14/2023) |
| 03/15/2023 | 106 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report. The telephonic status hearing set for 3/21/2023 is vacated and reset to 5/16/2023 at 9:00 a.m., the same date and time as the final approval hearing regarding the United Tape settlement. The following call-in number will be used for both hearings: 888-684-8852, access code 746-1053. A further joint status report regarding the progress of discovery and settlement discussions (regarding Easy Workforce) is to be filed on 5/9/2023. (mk) (Entered: 03/15/2023) |
| 03/23/2023 | 107 | MOTION by Plaintiff Maria Tapia-Rendon for leave to file *amended class action complaint* (Larry, J.) (Entered: 03/23/2023) |
| 03/23/2023 | 108 | MEMORANDUM by Maria Tapia-Rendon in support of motion for leave to file 107 *[Public - Redacted]* (Larry, J.) (Entered: 03/23/2023) |
| 03/23/2023 | 109 | DECLARATION of J. Dominick Larry regarding motion for leave to file 107 (Attachments: # 1 Exhibit A - Proposed Amended Complaint [Public - Redacted], # 2 Exhibit B - Proposed Amended Complaint - Redline [Public - Redacted])(Larry, J.) (Entered: 03/23/2023) |
| 03/23/2023 | 110 | SEALED MOTION by Plaintiff Maria Tapia-Rendon *Plaintiff's Memorandum in Support of Motion for Leave to Amend [Sealed - Unredacted]* (Larry, J.) (Entered: 03/23/2023) |
| 03/23/2023 | 111 | SEALED DOCUMENT by Plaintiff Maria Tapia-Rendon *Declaration of J. Dominick Larry in Support of Plaintiff's Motion for Leave to Amend [Sealed - Unredacted]* |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A - Proposed Amended Complaint [Sealed - Unredacted], # 2 Exhibit B - Proposed Amended Complaint - Redline [Sealed - Unredacted])(Larry, J.) (Entered: 03/23/2023) |
| 03/23/2023 | 112 | MOTION by Plaintiff Maria Tapia-Rendon to seal document sealed document, 111 , SEALED MOTION by Plaintiff Maria Tapia-Rendon *Plaintiff's Memorandum in Support of Motion for Leave to Amend [Sealed - Unredacted]* 110 (Larry, J.) (Entered: 03/23/2023) |
| 03/24/2023 | 113 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiff's motion for leave to file materials under seal 112 is granted. Plaintiff's motion for leave to file an amended complaint 107 is taken under advisement. Any objection to the motion is to be filed by 4/7/2023. No reply unless requested by the Court. Telephonic motion hearing, unless deemed unnecessary by the Court, is set for 4/14/2023 at 9:20 AM, using call-in number 888-684-8852, access code 746-1053. (mk) (Entered: 03/24/2023) |
| 03/28/2023 | 114 | MOTION by Plaintiff Maria Tapia-Rendon to compel *EasyWorkforce's discovery responses and production* (Larry, J.) (Entered: 03/28/2023) |
| 03/28/2023 | 115 | MEMORANDUM by Maria Tapia-Rendon in support of motion to compel 114 (Larry, J.) (Entered: 03/28/2023) |
| 03/28/2023 | 116 | DECLARATION of J. Dominick Larry regarding motion to compel 114 (Attachments: # 1 Exhibit A - Plaintiff's 6th set of RFPs, # 2 Exhibit B - EasyWorkforce's objections, # 3 Exhibit C - Excerpts of deposition transcript, # 4 Exhibit D - Email thread re: extension, # 5 Exhibit E - Plaintiff's deficiency letter)(Larry, J.) (Entered: 03/28/2023) |
| 03/29/2023 | 117 | MINUTE entry before the Honorable Matthew F. Kennelly: Response to plaintiff's motion to compel 114 is to be filed by 4/7/2023. No reply unless requested by the Court. Telephonic motion hearing, unless deemed unnecessary by the Court is set for 4/14/2023 at 9:20 AM, using call-in number 888-684-8852, access code 746-1053. (mk) (Entered: 03/29/2023) |
| 04/07/2023 | 118 | MOTION by Plaintiff Maria Tapia-Rendon for Incentive Award *Plaintiff's Supplemental Motion for Incentive Award* (Larry, J.) (Entered: 04/07/2023) |
| 04/07/2023 | 119 | MEMORANDUM by Maria Tapia-Rendon in support of motion for miscellaneous relief 118 *Plaintiff's Memorandum in Support of Supplemental Motion for Incentive Award* (Larry, J.) (Entered: 04/07/2023) |
| 04/07/2023 | 120 | DECLARATION of J. Dominick Larry regarding motion for miscellaneous relief 118 *Declaration in Support of Plaintiff's Supplemental Motion for Incentive Award* (Larry, J.) (Entered: 04/07/2023) |
| 04/07/2023 | 121 | MOTION by Defendant EasyWorkforce Software, LLC to seal document *Response to Plaintiff's Motion for Leave to File Second Amended Complaint* (Liljestrand, Cameron) (Entered: 04/07/2023) |
| 04/07/2023 | 122 | SEALED RESPONSE *to Plaintiff's Motion for Leave to File Second Amended Complaint* (Attachments: # 1 Exhibit A)(Liljestrand, Cameron) (Entered: 04/07/2023) |
| 04/07/2023 | 123 | RESPONSE by Defendant EasyWorkforce Software, LLC *Response to Plaintiff's Motion for Leave to File Second Amended Complaint* (Attachments: # 1 Exhibit A) (Liljestrand, Cameron) (Entered: 04/07/2023) |
| 04/07/2023 | 124 | MEMORANDUM by EasyWorkforce Software, LLC in Opposition to motion to compel 114 *Defendant Easyworkforce Software, LLC's Memorandum in Opposition to* |

| | | |
|---|---|---|
| | | *Plaintiff's Motion to Compel Discovery* (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Olthoff, Mark) (Entered: 04/07/2023) |
| 04/08/2023 | 125 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendant's motion for leave to file response under seal 121 is granted. (mk) (Entered: 04/08/2023) |
| 04/14/2023 | 126 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic motion hearing held on 4/14/2023. Oral ruling made on the plaintiff's motions for leave to file and compel. Plaintiff's motion to compel 114 is granted in part and denied in part as to the reasons stated more fully on the record. Plaintiff's motion for leave to file an amended complaint 107 is granted. Defendant's response to the amended complaint is due 5/5/20233. The parties are directed to file a joint status report with any proposed modifications to the discovery by 4/28/2023. A telephonic status hearing is set for 5/15/2023 at 8:55 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 04/14/2023) |
| 04/18/2023 | 127 | AMENDED complaint by Maria Tapia-Rendon against EasyWorkforce Software, LLC, United Tape & Finishing Co., Inc. (Larry, J.) (Entered: 04/18/2023) |
| 04/28/2023 | 128 | STATUS Report *(Joint)* by Maria Tapia-Rendon (Kayes, Tom) (Entered: 04/28/2023) |
| 04/28/2023 | 129 | MOTION by Plaintiff Maria Tapia-Rendon for settlement *Plaintiff's Motion for Final Approval of Class Action Settlement* (Larry, J.) (Entered: 04/28/2023) |
| 04/28/2023 | 130 | MEMORANDUM by Maria Tapia-Rendon in support of motion for settlement 129 *Plaintiff's Memorandum in Support of Motion for Final Approval* (Larry, J.) (Entered: 04/28/2023) |
| 04/28/2023 | 131 | DECLARATION of J. Dominick Larry regarding motion for settlement 129 (Attachments: # 1 Exhibit 1 - Settlement Agreement, # 2 Exhibit 2 - Declaration of Thomas R. Kayes, # 3 Exhibit 3 - Borcia Declaration, # 4 Exhibit 4 - Analytics Declaration)(Larry, J.) (Entered: 04/28/2023) |
| 04/28/2023 | 132 | *Defendant United Tape & Finishing Co.* ANSWER to amended complaint *with affirmative defenses and jury demand* by United Tape & Finishing Co., Inc.(Borcia, James) (Entered: 04/28/2023) |
| 05/05/2023 | 133 | ANSWER to amended complaint by EasyWorkforce Software, LLC(Wolf, Thomas) (Entered: 05/05/2023) |
| 05/09/2023 | 134 | STATUS Report *(Joint)* by Maria Tapia-Rendon<br><br>(Larry, J.) (Entered: 05/09/2023) |
| 05/11/2023 | 135 | MINUTE entry before the Honorable Matthew F. Kennelly: The telephonic status hearing set for 5/15/2023 is vacated. The next telephonic hearing is the combined final approval / status hearing on 5/16/2023 at 9:00 AM. (mk) (Entered: 05/11/2023) |
| 05/16/2023 | 136 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status and final approval hearings held on 5/16/2023. Plaintiff's motion for final approval of class action settlement 129 is granted. A telephonic status hearing is set for 8/3/2023 at 8:50 a.m. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court |

| | | |
|---|---|---|
| | | proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 05/16/2023) |
| 05/17/2023 | 137 | FINAL JUDGMENT AS TO DEFENDANT UNITED TAPE & FINISHING CO., INC. AND ORDER OF DISMISSAL WITH PREJUDICE, signed by the Honorable Matthew F. Kennelly on 5/17/2023. (mk) (Entered: 05/17/2023) |
| 05/19/2023 | 138 | MOTION by Plaintiff Maria Tapia-Rendon to certify class<br><br>Responses due by 6/9/2023 (Larry, J.) (Entered: 05/19/2023) |
| 05/19/2023 | 139 | MEMORANDUM by Maria Tapia-Rendon in support of motion to certify class 138 (Larry, J.) (Entered: 05/19/2023) |
| 05/19/2023 | 140 | DECLARATION of J. Dominick Larry regarding motion to certify class 138 (Attachments: # 1 Exhibit 1 - Jos Deposition Transcript, # 2 Exhibit 2 - EAS000026 [Redacted], # 3 Exhibit 3 - EAS000604-10, # 4 Exhibit 4 - EAS000708-12, # 5 Exhibit 5 - EAS000747-50, # 6 Exhibit 6 - UNITEDTAPE_0058, # 7 Exhibit 7 - EWS Ans to 2nd RFAs, # 8 Exhibit 8 - EWS Am Ans to 1st RFAs, # 9 Exhibit 9 - EWS Supp Resp to Irogs 3 and 5, # 10 Exhibit 10 - EWS Supp Ans to 1st Irogs, # 11 Exhibit 11 - filed under seal, # 12 Exhibit 12 - filed under seal, # 13 Exhibit 13 - filed under seal, # 14 Exhibit 14 - filed under seal, # 15 Exhibit 15 - filed under seal, # 16 Exhibit 16 - filed under seal, # 17 Exhibit 17 - filed under seal, # 18 Exhibit 18 - Pltfs 1st RFAs to EWS, # 19 Exhibit 19 - EWS Supp Resp to 1st RFPs, # 20 Exhibit 20 - Harding Report [Redacted], # 21 Exhibit 21 - Harding Dep Tr)(Larry, J.) (Entered: 05/19/2023) |
| 05/19/2023 | 141 | DECLARATION of Thomas R. Kayes regarding motion to certify class 138 (Larry, J.) (Entered: 05/19/2023) |
| 05/19/2023 | 142 | SEALED DOCUMENT by Plaintiff Maria Tapia-Rendon *Declaration of J. Dominick Larry in Support of Plaintiff's Motion for Class Certification* (Attachments: # 1 Exhibit 1 - Jos Deposition Transcript, # 2 Exhibit 2 - EAS000026 [unredacted], # 3 Exhibit 3 - EAS000604-10, # 4 Exhibit 4 - EAS000708-12, # 5 Exhibit 5 - EAS000747-50, # 6 Exhibit 6 - UNITEDTAPE_0058, # 7 Exhibit 7 - EWS Ans to 2nd RFAs, # 8 Exhibit 8 - EWS Am Ans to 1st RFAs, # 9 Exhibit 9 - EWS Supp Resp to Irogs 3 and 5, # 10 Exhibit 10 - EWS Supp Ans to 1st Irogs, # 11 Exhibit 11 - EAS000514-20 [unredacted], # 12 Exhibit 12 - EAS001089-94 [unredacted], # 13 Exhibit 13 - EAS001089-1111 [unredacted], # 14 Exhibit 14 - EAS001112-16 [unredacted], # 15 Exhibit 15 - EAS001117-18 [unredacted], # 16 Exhibit 16 - EAS001119 [unredacted], # 17 Exhibit 17 - EAS001431-34 [unredacted], # 18 Exhibit 18 - Pltfs 1st RFAs to EWS, # 19 Exhibit 19 - EWS Supp Resp to 1st RFPs, # 20 Exhibit 20 - Harding Report [unredacted], # 21 Exhibit 21 - Harding Deposition Transcript)(Larry, J.) (Entered: 05/19/2023) |
| 05/19/2023 | 143 | MOTION by Plaintiff Maria Tapia-Rendon to seal document sealed document,,,, 142 *Motion to Seal Exhibits to the Declaration of J. Dominick Larry*<br><br>(Larry, J.) (Entered: 05/19/2023) |
| 05/19/2023 | 144 | MOTION by Defendant EasyWorkforce Software, LLC to amend/correct *EASY WORKFORCE SOFTWARE, LLC'S MOTION FOR LEAVE TO WITHDRAW AND AMEND DEEMED ADMISSIONS*<br><br>(Liljestrand, Cameron) (Entered: 05/19/2023) |

| | | |
|---|---|---|
| 05/19/2023 | 145 | MEMORANDUM *EASY WORKFORCE SOFTWARE, LLC'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW AND AMEND RESPONSES TO PLAINTIFF'S REQUESTS TO ADMIT* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Liljestrand, Cameron) (Entered: 05/19/2023) |
| 05/20/2023 | 146 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiff's motion for leave to file under seal 143 is granted. Plaintiff is directed to file a complete and unredacted version of its filing(s), including all exhibits, under seal and a redacted version in the public record. In addition, plaintiff's counsel are directed to promptly to deliver to Judge Kennelly's chambers a USB drive containing the class certification submissions. The exhibits should be bookmarked (tabbed) as they are in the filing on the docket. (Entered: 05/20/2023) |
| 05/20/2023 | 147 | MINUTE entry before the Honorable Matthew F. Kennelly: Response to motion for leave to withdraw admissions 144 is to be filed by 5/30/2023. Telephonic motion hearing, unless deemed unnecessary by the Court, is set for 6/1/2023 at 9:20 AM, using call-in number 888-684-8852, access code 746-1053. (mk) (Entered: 05/20/2023) |
| 05/24/2023 | 148 | MOTION by Plaintiff Maria Tapia-Rendon for extension of time to file response/reply as to set motion and R&R deadlines/hearings, 147 , memorandum in support of motion, 145 *Plaintiff's Unopposed Motion to Extend Time to Respond to Motion to Withdraw Admissions*<br><br>(Larry, J.) (Entered: 05/24/2023) |
| 05/24/2023 | 149 | MOTION by Defendant EasyWorkforce Software, LLC for leave to file *an Amended Brief in Support of Motion for Leave to Withdraw and Amend Responses to Plaintiff's Requests to Admit Instanter*<br><br>(Attachments: # 1 Exhibit 1)(Kantrow, Josh) (Entered: 05/24/2023) |
| 05/25/2023 | 150 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion for leave to file amended brief 149 is granted; defendant should now file the amended brief and attachments as a separate docket entry. Plaintiff's motion for extension of time 148 is granted. Due date for plaintiff's response to motion to withdraw and amended responses is extended to 6/5/2023. The telephonic motion hearing set for 6/1/2023 is vacated and reset to 6/12/2023 at 8:55 AM, using call-in number 888-684-8852, access code 746-1053. The Court reserves the right to vacate the hearing if it determines a hearing is not needed. (mk) (Entered: 05/25/2023) |
| 05/25/2023 | 151 | MEMORANDUM *In Support of Motion for Leave to Withdraw and Amend Responses to Plaintiff's Request to Admit* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Kantrow, Josh) (Entered: 05/25/2023) |
| 06/05/2023 | 152 | RESPONSE by Plaintiff Maria Tapia-Rendon to memorandum in support of motion, 145 *Plaintiff's response in opposition to EasyWorkforce's Rule 36(b) motion* (Larry, J.) (Entered: 06/05/2023) |
| 06/05/2023 | 153 | DECLARATION of J. Dominick Larry regarding Response 152 *Declaration of J. Dominick Larry in support of Plaintiff's response in opposition to EasyWorkforce's Rule 36(b) motion* (Attachments: # 1 Exhibit 1 - Pltf's 1st Interrogatories, # 2 Exhibit 2 - Pltf's 1st RFPs, # 3 Exhibit 3 - EasyWorkforce's 1st Interrogatory Answers, # 4 Exhibit 4 - EasyWorkforce's 1st RFP Responses, # 5 Exhibit 5 - Pltf's 1st RFAs to EasyWorkforce, # 6 Exhibit 6 - Pltf's 2nd RFAs to EasyWorkforce, # 7 Exhibit 7 - EasyWorkforce's Amended Ans to 1st RFAs, # 8 Exhibit 8 - EasyWorkforce Answer to 2nd RFAs, # 9 Exhibit 9 - EasyWorkforce's Amended Resps to 2nd RFAs, # 10 Exhibit 10 - Jos Dep Tr, # 11 Exhibit 11 - Email thread, # 12 Exhibit 12 - EasyWorkforce's |

| | | |
|---|---|---|
| | | Amended Resps to RFAs 46 and 47, # 13 Exhibit 13 - EAS000042, # 14 Exhibit 14 - EAS000043, # 15 Exhibit 15 - EAS000045, # 16 Exhibit 16 - EAS000077, # 17 Exhibit 17 - EAS000079, # 18 Exhibit 18 - EAS000708, # 19 Exhibit 19 - EAS000747, # 20 Exhibit 20 - EAS000978, # 21 Exhibit 21 - EAS001010, # 22 Exhibit 22 - EAS001042, # 23 Exhibit 23 - EAS000572, # 24 Exhibit 24 - EAS000604)(Larry, J.) (Entered: 06/05/2023) |
| 06/07/2023 | 154 | MOTION by Defendant EasyWorkforce Software, LLC for leave to file *a Reply in Support of Motion to Withdraw and Amend Responses to Plaintiff's Requests to Admit Instanter*<br><br>(Attachments: # 1 Exhibit 1)(Wolf, Thomas) (Entered: 06/07/2023) |
| 06/08/2023 | 155 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendant's motion for leave to file reply 154 is granted. Defendant should now file the reply as a separate docket entry. (mk) (Entered: 06/08/2023) |
| 06/08/2023 | 156 | REPLY by Defendant EasyWorkforce Software, LLC *In Support of Motion to Withdraw and Amend Responses to Plaintiff's Request to Admit* (Attachments: # 1 Exhibit A)(Wolf, Thomas) (Entered: 06/08/2023) |
| 06/09/2023 | 157 | MOTION by Defendant EasyWorkforce Software, LLC for leave to file excess pages *the 15 Page Limitation for its Response Brief in Opposition to Plaintiff's Motion to Certify the Class*<br><br>(Attachments: # 1 Exhibit 1)(Kantrow, Josh) (Entered: 06/09/2023) |
| 06/11/2023 | 158 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendant's motion for leave to file a 20-page class certification opposition brief is granted; defendant should now file the brief as a separate docket entry. (mk) (Entered: 06/11/2023) |
| 06/12/2023 | 159 | RESPONSE by EasyWorkforce Software, LLCin Opposition to MOTION by Plaintiff Maria Tapia-Rendon to certify class<br><br>138 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Kantrow, Josh) (Entered: 06/12/2023) |
| 06/12/2023 | 160 | CERTIFICATE of Service *Amended Response to Plaintiff's First and Second Sets of Requests for Admission Nos. 43, 45-47, 58-59, 61-63, and 65-68* (Wolf, Thomas) (Entered: 06/12/2023) |
| 06/12/2023 | 161 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic motion hearing held on 6/12/2023. Defendant EasyWorkForce Software's motion to file an amended brief in support 149 granted as to the reasons stated on the record. Case remains set for a telephonic status hearing on 8/3/2023 at 8:50 a.m. 136 . Mailed notice. (mma, ) (Entered: 06/12/2023) |
| 06/23/2023 | 162 | REPLY by Maria Tapia-Rendon to response in opposition to motion, 159 *Plaintiff's reply in support of class certification* (Attachments: # 1 Exhibit 22 - Schwartz Article) (Larry, J.) (Entered: 06/23/2023) |
| 06/30/2023 | 163 | MOTION by Defendant EasyWorkforce Software, LLC for hearing *Unopposed Motion for Oral Argument on Plaintiff's Motion for Class Certification*<br><br>(Kantrow, Josh) (Entered: 06/30/2023) |
| 08/01/2023 | 164 | MINUTE entry before the Honorable Matthew F. Kennelly: The telephonic status hearing set for 8/3/2023 is vacated at the Court's instance and will be reset after the |

| | | |
|---|---|---|
| | | Court rules on the pending motion for class certification. (mk) (Entered: 08/01/2023) |
| 08/02/2023 | 165 | MINUTE entry before the Honorable Matthew F. Kennelly: It has come to the Court's attention that the minute entry dated 6/12/2023 (dkt. no. 161) omitted a material aspect of the Court's oral ruling on that date. The minute entry is corrected to read as follows. Telephonic motion hearing held on 6/12/2023. Defendant EasyWorkforce Software's motion to file an amended brief in support 149 is granted, and its motion for leave to withdraw admissions 144 is granted for the reasons stated on the record. (mk) (Entered: 08/02/2023) |
| 08/15/2023 | 166 | MINUTE entry before the Honorable Matthew F. Kennelly: The motion for oral argument 163 is denied. The Court finds that the briefs adequately present the issues and that oral argument is not needed. (mk) (Entered: 08/15/2023) |
| 08/15/2023 | 167 | MEMORANDUM OPINION AND ORDER signed by the Honorable Matthew F. Kennelly on 8/15/2023: For the reasons stated in the accompanying Memorandum Opinion and Order, the Court grants the plaintiffs' motion for class certification [dkt. no. 138]. The Court certifies the following class under Rule 23(b)(3): (a) The Class: All individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016. (b) The Subclass: All Class members who used a cloud-based EWF biometric device in Illinois on or before April 30, 2022. The Court also appoints the following attorneys as class counsel: Thomas R. Kayes of The Civil Rights Group, LLC and J. Dominick Larry of Nick Larry Law, LLC. The case is set for a telephonic status hearing on August 25, 2023 at 9:05 a.m. for the purpose of setting a schedule for further proceedings and discussing the possibility of settlement. The parties are directed to confer regarding a schedule and are to submit a joint status report with a proposal (or competing proposals if they cannot agree) on August 22, 2023. (mk) (Entered: 08/15/2023) |
| 08/22/2023 | 168 | STATUS Report *(Joint)* by Maria Tapia-Rendon<br><br>(Kayes, Tom) (Entered: 08/22/2023) |
| 08/23/2023 | 169 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court has reviewed the parties' joint status report and sets the following discovery and pretrial schedule. Plaintiff's deadline to submit notice plan - 9/8/2023; Defendant's deadline to produce documents responsive to RFP No. 64 - rolling productions, once per week over 8 weeks beginning on 9/8/2023; Deadline for completing merits discovery - 1/17/2024; deadline to serve Rule 26(a)(2) disclosures / 2/7/2024; deadline to serve rebuttal Rul 26(a)(2) disclosures - 3/6/2024; deadline to move for summary judgment 4/5/2024, response is due 4/26/2024, reply is due 5/17/2024. The telephonic status hearing set for 8/25/2023 is vacated and reset to 10/19/2023 at 8:55 AM, using call-in number 888-684-8852, access code 746-1053. A joint status report is to be filed on 10/12/2023. (mk) (Entered: 08/23/2023) |
| 08/29/2023 | 170 | MOTION by Defendant EasyWorkforce Software, LLC for reconsideration regarding order on motion to certify class,,,,, memorandum opinion and order,,,,, terminate motions,,,,, set deadlines/hearings,,,, 167 *(Easyworkforce Software, LLC's Motion to Reconsider Granting of Class Certification)*<br><br>(Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Kantrow, Josh) (Entered: 08/29/2023) |
| 09/08/2023 | 171 | MOTION by Plaintiff Maria Tapia-RendonApproval of Notice Plan *(Unopposed)*<br><br>(Larry, J.) (Entered: 09/08/2023) |

| | | |
|---|---|---|
| 09/08/2023 | 172 | MEMORANDUM by Maria Tapia-Rendon in support of motion for miscellaneous relief 171 *Plaintiff's Memorandum in Support of Unopposed Motion for Approval of Notice Plan* (Larry, J.) (Entered: 09/08/2023) |
| 09/08/2023 | 173 | DECLARATION of J. Dominick Larry regarding motion for miscellaneous relief 171 *Declaration of J. Dominick Larry in Support of Plaintiff's Unopposed Motion for Approval of Notice Plan* (Attachments: # 1 Exhibit A - Summary Notice, # 2 Exhibit B - Long-Form Notice)(Larry, J.) (Entered: 09/08/2023) |
| 09/08/2023 | 174 | DECLARATION of Brandon Schwartz regarding motion for miscellaneous relief 171 *Declaration of Brandon Schwartz in Support of Plaintiff's Unopposed Motion for Approval of Notice Plan* (Attachments: # 1 Exhibit 1 - Brandon Schwartz CV, # 2 Exhibit 2 - P&N CV)(Larry, J.) (Entered: 09/08/2023) |
| 09/08/2023 | 175 | RESPONSE by Maria Tapia-Rendonin Opposition to MOTION by Defendant EasyWorkforce Software, LLC for reconsideration regarding order on motion to certify class,,,,, memorandum opinion and order,,,,, terminate motions,,,,, set deadlines/hearings,,,, 167 *(Easyworkforce Software, LLC's Mo* 170 *(Larry, J.) (Entered: 09/08/2023)* |
| 09/08/2023 | 176 | DECLARATION of J. Dominick Larry regarding response in opposition to motion, 175 (Attachments: # 1 Exhibit A - Reuters Page, # 2 Exhibit B - Bloomberg Page, # 3 Exhibit CNS - Report)(Larry, J.) (Entered: 09/08/2023) |
| 09/15/2023 | 177 | MINUTE entry before the Honorable Matthew F. Kennelly: Any reply in support of defendant's motion for reconsideration must be filed by no later than 9/19/2023. Mailed notice. (mma, ) (Entered: 09/15/2023) |
| 09/19/2023 | 178 | REPLY by Defendant EasyWorkforce Software, LLC to order on motion to certify class,,,,, memorandum opinion and order,,,,, terminate motions,,,,, set deadlines/hearings,,,, 167 (Attachments: # 1 Exhibit 1)(Kantrow, Josh) (Entered: 09/19/2023) |
| 09/24/2023 | 179 | MINUTE entry before the Honorable Matthew F. Kennelly: The Court sets defendant's motion to reconsider for oral argument on 10/2/2023 at 10:00 AM, limited to the arguments covered by Points I.A. and I.B. of defendant's reply. Argument will be limited to 15 minutes per side. This will be an in-person hearing in Courtroom 2188. (mk) (Entered: 09/24/2023) |
| 10/02/2023 | 180 | MINUTE entry before the Honorable Matthew F. Kennelly: In person motion hearing held on 10/2/2023. Oral argument heard on the defendant's motion for reconsideration 170 . Defendant's motion for reconsideration 170 is taken under advisement. Mailed notice. (mma, ) (Entered: 10/02/2023) |
| 10/12/2023 | 181 | STATUS Report *(Joint)* by Maria Tapia-Rendon<br><br>(Larry, J.) (Entered: 10/12/2023) |
| 10/19/2023 | 182 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 10/19/2023. The Court will set a further status hearing after it issues a ruling on the motion to reconsider 170 . Mailed notice. (mma, ) (Entered: 10/19/2023) |
| 11/17/2023 | 183 | AMENDED *Corporate Disclosure and Notification as Affiliates Statement* (Kantrow, Josh) (Entered: 11/17/2023) |
| 12/28/2023 | 184 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the |

| | | |
|---|---|---|
| | | party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/28/2023) |
| 01/02/2024 | 185 | MOTION by Plaintiff Maria Tapia-Rendon to Allow Depositions and for Protective Order (Agreed Motion)<br><br>(Kayes, Tom) (Entered: 01/02/2024) |
| 01/03/2024 | 186 | MINUTE entry before the Honorable Matthew F. Kennelly: Agreed motion regarding depositions 185 is granted. Plaintiffs are allowed to take a second deposition of Sino Jos, and defendants are allowed to take a second deposition of Maria Tapia-Rendon, limited to matters related to her new section 14/15(d) and (e) claimsagainst WorkEasy. (mk) (Entered: 01/03/2024) |
| 02/02/2024 | 187 | MEMORANDUM OPINION AND ORDER signed by the Honorable Matthew F. Kennelly on 2/2/2024: For the reasons stated in the accompanying Memorandum Opinion and Order, the Court denies EWF's motion for reconsideration [dkt. no. 170] of the class certification order. The case is set for a telephonic status hearing on February 8, 2024 at 9:15 a.m. for the purpose of addressing the proposed class notice and setting a schedule for further proceedings. The following call-in number will be used: 888-684-8852, access code 746-1053. (mk) (Entered: 02/02/2024) |
| 02/05/2024 | 188 | MOTION by Defendant EasyWorkforce Software, LLC to reset *Joint Motion to Reset Discovery Deadlines*<br><br>(Wolf, Thomas) (Entered: 02/05/2024) |
| 02/05/2024 | 189 | MOTION by Attorney Amy D. Fitts to withdraw as attorney for EasyWorkforce Software, LLC. No party information provided<br><br>(Fitts, Amy) (Entered: 02/05/2024) |
| 02/06/2024 | 190 | MINUTE entry before the Honorable Matthew F. Kennelly: Motion by Amy D. Fitts to withdraw as attorney for EasyWorkforce Software, LLC is granted 189 . The parties' joint motion regarding the discovery schedule will be addressed at the 2/9/2024 telephonic status hearing. (mk) (Entered: 02/06/2024) |
| 02/08/2024 | 191 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 2/8/2024. Defendant EasyWorkforce Software's motion to reset 188 is granted. The Rule 26(a)(2) disclosure deadline is moved to 3/1/2024. Rebuttal disclosures are due 3/22/2024. The parties are directed to file a joint status report within 7 days after the 7th Circuit rules on the 25(F) request. Case is set for a telephonic status hearing on 4/9/2024 at 8:50 a.m. The parties are directed to file a joint status report with an update on the case by 4/2/2024. The following call-in number will be used for the hearing: 888-684-8852, access code 746-1053. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to |

| | | |
|---|---|---|
| | | future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (mma, ) (Entered: 02/08/2024) |
| 02/16/2024 | 192 | NOTICE of appeal by EasyWorkforce Software, LLC regarding orders 167 , 187 Filing fee $ 605, receipt number AILNDC-21648707. Receipt number: n (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Kantrow, Josh) (Entered: 02/16/2024) |