No. 24-8004

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

WORKEASY SOFTWARE, LLC

*Petitioner*,

v.

MARIA TAPIA-RENDON,
on behalf of herself and all others similarly situated,

*Respondent.*

---

On Petition for Permission to Appeal from the United States District Court for the Northern District of Illinois, No. 1:21-cv-3400
The Honorable Matthew F. Kennelly

---

**MARIA TAPIA-RENDON'S RESPONSE IN OPPOSITION
TO PETITION FOR PERMISSION TO APPEAL
UNDER FED. R. CIV. P. 23(f)**

---


J. Dominick Larry
NICK LARRY LAW LLC
1720 W Division St.
Chicago, Illinois 60622
773.694.4669
nick@nicklarry.law

Thomas R. Kayes
THE CIVIL RIGHTS GROUP, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, Illinois 60612
708.722.2241
tom@civilrightsgroup.com

*Counsel for Respondent*


February 26, 2024

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8004

Short Caption: WorkEasy Software, LLC v. Tapia-Rendon

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party s main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Maria Tapia-Rendon, on behalf of all others similarly situated

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Nick Larry Law LLC

The Civil Rights Group, LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party s, amicus or intervenor s stock:

N/A

(4) Provide information required by FRAP 26.1(b) Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney s Signature: s/ J. Dominick Larry Date: 02/26/2024

Attorney s Printed Name: J. Dominick Larry

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: Nick Larry Law LLC, 1720 W Division St

Chicago, IL 60622

Phone Number: 773.694.4669 Fax Number: 773.694.4691

E Mail Address: nick@nicklarry.law

rev. 12/19 AK

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8004

Short Caption: WorkEasy Software, LLC v. Tapia-Rendon

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Maria Tapia-Rendon

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Nick Larry Law LLC & The Civil Rights Group, LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Thomas R. Kayes Date: 2/26/2024

Attorney's Printed Name: Thomas R. Kayes

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 2045 W Grand Ave, Ste B, PMB 62448

Chicago, IL 60612

Phone Number: 708-722-2241 Fax Number: None

E-Mail Address: tom@civilrightsgroup.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

REASONS FOR DENYING REVIEW ..... 3

I. WorkEasy's uniform conduct gave rise to predominant common questions and answers. ..... 4

A. WorkEasy's waiver defense raises common questions. ..... 6

B. WorkEasy's estoppel defense is waived and raises common questions. ..... 7

C. Damages determinations will have a common methodology. ..... 9

II. Class proceedings are superior to individual suits. ..... 10

A. Class members have not been incentivized to sue individually, and class proceedings are superior anyway ..... 10

B. WorkEasy offers no reason to overturn *Murray*. ..... 17

III. Tapia-Rendon is an adequate representative with typical claims. ..... 19

CONCLUSION ..... 20

CERTIFICATION OF COMPLIANCE ..... 22

CERTIFICATE OF SERVICE ..... 23

## TABLE OF AUTHORITIES

**Cases**


*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 4, 10

*Andrews v. Chevy Chase Bank*,
545 F.3d 570 (7th Cir. 2008) .......... 14, 15, 16

*Bateman v. Am. Multi-Cinema*,
623 F.3d 708 (9th Cir. 2010) .......... 19

*Blair v. Equifax Check Servs., Inc.*,
181 F.3d 832 (7th Cir. 1999) .......... 3, 4, 5

*Brandenberg v. Meridian Senior Living, LLC*,
564 F. Supp. 3d 627 (C.D. Ill. 2021) .......... 6

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) .......... 20

*Cothron v. White Castle Sys., Inc.*,
216 N.E.3d 918 (Ill. 2023) .......... 9, 12

*Cothron v. White Castle Sys., Inc.*,
477 F. Supp. 3d 723 (N.D. Ill. 2020) .......... 12

*E.E.O.C. v. Metro. Educ. Enters., Inc.*,
60 F.3d 1225 (7th Cir. 1995) .......... 17

*Goshtasby v. Bd. of Trustees of the Univ. of Ill.*,
141 F.3d 761 (7th Cir. 1998) .......... 17

*Hardy v. City Optical, Inc.*,
39 F.3d 765 (7th Cir. 1994) .......... 10

*Hyderi v. Washington Mut. Bank, FA*,
235 F.R.D. 390 (N.D. Ill. 2006) .......... 16

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2014) .......... 4

*Kline v. Coldwell, Banker Co.*,
508 F.2d 226 (9th Cir. 1974) .......... 19

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) .................................................. 18, 19

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) .................................................. 13

*Matter of Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) .................................................. 13, 14

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .................................................. 4, 5, 9

*Mid-America Tablewares, Inc. v. Mogi Trading Co.*,
100 F.3d 1353 (7th Cir. 1996) .................................................. 17

*Murphy v. Professional Transp., Inc.*,
No. 14-cv-378, 2017 WL 5665901 (N.D. Ill. Nov. 27, 2017) .................................................. 16

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) .................................................. 10, 19

*Patel v. Facebook Inc.*,
290 F. Supp. 3d 948 (N.D. Cal. 2018) .................................................. 18

*Pole v. Randolph*,
570 F.3d 922 (7th Cir. 2009) .................................................. 20

*Rosenbach v. Six Flags Entm't Corp.*,
129 N.E.3d 1197 (Ill. 2019) .................................................. 18

*Schaefer v. Universal Scaffolding & Equip., LLC*,
839 F.3d 599 (7th Cir. 2016) .................................................. 8

*Snider v. Heartland Beef, Inc.*,
479 F. Supp. 3d 762 (C.D. Ill. 2020) .................................................. 6

*St. Louis, I.M.S. Ry. Co. v. Williams*,
251 U.S. 63 (1919) .................................................. 10

*Stillmock v. Weis Mkts., Inc.*,
385 F. App'x 267 (4th Cir. 2010) .................................................. 17

*Terech v. First Resolution Mgmt. Corp.*,
854 F. Supp. 2d 537 (N.D. Ill. 2012) .................................................. 7

*Vulcan Golf, LLC v. Google, Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008) .................................................. 16

**Statutes**

Fed. R. Civ. P. 23 .......... 1, 11, 12, 15

## INTRODUCTION

This Rule 23(f) petition arises from class claims under the Biometric Information Privacy Act, 740 ILCS 14/1–99 ("BIPA"), against WorkEasy Software, LLC,[1] a seller of biometric timeclocks and software. WorkEasy admitted that its timeclocks all scanned fingerprints similarly, that it never obtained written consent to capture any class member's biometrics, and that it stored biometric data on third-party servers without encryption. On these facts, the District Court certified the class and subclass proposed by Respondent Maria Tapia-Rendon under Rule 23(b)(3).

WorkEasy now petitions under Rule 23(f). The crux of WorkEasy's petition is that certification has put too much money at stake. WorkEasy argues that certification creates settlement pressure, that certification was improper because the damages available to each class member create an incentive to sue individually, and that the Court should overturn precedent and hold that statutory damages make class claims inferior.

WorkEasy is mistaken. If settlement pressure alone guaranteed Rule 23(f) review, certification would be automatically appealable. Instead, to warrant review, settlement pressure must be disproportionate to merit and based on a flawed certification ruling. Likewise, substantial individual damages and fee shifting alone don't make class proceedings inferior; if they did, antitrust cases would be nearly uncertifiable. Finally, WorkEasy offers no reason to overturn *Murray v. GMAC Mortgage* and hold that statutory damages prevent certification.

---

[1] WorkEasy changed its corporate name from EasyWorkforce, LLC on October 26, 2023. ECF No. 183.

WorkEasy's remaining arguments are similarly off-base. On one hand, it claims that individualized estoppel and waiver issues bar findings of predominance or adequacy, but on the other, it concedes that those defenses apply on a class-wide basis, with common proof.

All told, the District Court's certification order was grounded in substantial evidence and well-established precedent. As a result, WorkEasy's petition fails.

## BACKGROUND

WorkEasy sells several models of functionally identical biometric timeclocks and software. ECF No. 139 at 6–7. Tapia-Rendon worked for one of WorkEasy's Illinois customers and used one of its biometric timeclocks. *Id.* at 6. WorkEasy scanned Tapia-Rendon's fingerprints and created a mathematical representation of the fingerprint, known as a template, which WorkEasy stored without encryption on servers it leased. *Id.* After that, whenever Tapia-Rendon clocked in or out of work, she scanned her fingerprint on the timeclock, and WorkEasy compared the scan against the template database to identify her. *Id.* WorkEasy never obtained written consent to the collection of fingerprint data from Tapia-Rendon or anyone else. *Id.* at 6–7.

Based on this conduct, Tapia-Rendon asserted class BIPA claims for statutory damages against WorkEasy and two now-dismissed defendants. ECF Nos. 1, 127. BIPA prohibits any private entity from "collect[ing], captur[ing], purchas[ing], receiv[ing] through trade, or otherwise obtain[ing]" biometric identifiers or information, unless it first informs the subject of the collection, its purpose, and the duration of storage, and obtains written consent to the same. 740 ILCS 14/15(b).

And BIPA also bars the nonconsensual disclosure of, or failure to properly secure, biometrics. 740 ILCS 14/15(d), (e). Victims of BIPA violations may obtain statutory damages of $1,000 per negligent violation, or $5,000 per intentional or reckless violation, plus attorneys' fees, costs, and injunctive relief. 740 ILCS 14/20.

Following discovery, the District Court certified a class of workers who had their fingerprints unlawfully captured in Illinois, and a subclass of those workers who had their fingerprints captured before WorkEasy began encrypting their biometric data in mid-2022. *See* ECF No. 167 ("Certification Order").

WorkEasy then moved for reconsideration, arguing that BIPA creates an incentive to sue that precludes a finding of superiority, and that WorkEasy's waiver and equitable estoppel defenses render Tapia-Rendon inadequate and preclude a finding of predominance. ECF No. 170. After briefing and oral argument, the Court denied reconsideration. ECF No. 187 ("Reconsideration Order").

WorkEasy now seeks permission to appeal. As explained below, the Court should deny the Petition.

## REASONS FOR DENYING REVIEW

This Court typically grants Rule 23(f) review where (1) denial of certification would represent a "death knell" for the litigation, (2) an erroneous certification order will create undue settlement pressure, or (3) appeal would facilitate the development of class action law. *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834–35 (7th Cir. 1999). "However dramatic the effect of the grant or denial of class status in undercutting the plaintiff's claim or inducing the defendant to capitulate,

if the ruling is impervious to revision there's no point to an interlocutory appeal." *Blair*, 181 F.3d at 835.

Here, certification increased settlement pressure, as it always does. But the Certification Order was sound, and the settlement pressure reflects the strength of the Class's claims. Moreover, because the Certification Order was grounded in well-established precedent, the Petition raises no novel class-action issues. Accordingly, the Court should deny WorkEasy's Petition.

## I. WorkEasy's uniform conduct gave rise to predominant common questions and answers.

WorkEasy incorrectly argues that waiver, estoppel, and damages issues undermine the District Court's predominance finding. The purpose of the predominance inquiry is "to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Individual questions need not be absent." *Id.* at 815. Rather, "[t]he text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.*

Ultimately, "[p]redominance is satisfied when 'common questions represent a *significant aspect* of a case and … can be resolved for all members of a class in a single adjudication." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2014) (quoting *Messner*, 669 F.3d at 815). Here, the District Court correctly held that "the questions of law and fact underlying the class members' claims are

essentially identical and will be premised on common proof." Certification Order at 17.

The elements of the Class's claims are that WorkEasy (1) is a private entity; (2) captured, collected, or otherwise obtained their biometric identifiers or information; and (3) did not inform them as required by BIPA subsections (b)(1) through (b)(3). 740 ILCS 14/15(b). WorkEasy has admitted its status as a private entity. *See* ECF No. 139 at 15.[2] WorkEasy also admitted that it captured and collected fingerprints—biometric identifiers under 740 ILCS 14/10—and templates derived from fingerprints, used to identify class members for timekeeping purposes (making them biometric information under 740 ILCS 14/10). *Id.* And WorkEasy admitted that no class member provided it with written consent to obtain their biometrics. ECF No. 139 at 15. For the Class, then, common questions and evidence "represent" more than just "a significant aspect of the case," *Messner*, 669 F.3d at 815; they represent the whole thing. This is therefore not a case where "the stakes are large and the risk of a settlement or other disposition that *does not reflect the merits of the claim* is substantial." *Blair*, 181 F.3d at 835 (emphasis added).

The same goes for the Subclass. For their claims under BIPA sections 15(e) and (d), they must only show that (1) WorkEasy failed to adequately secure their biometrics from disclosure, 740 ILCS 14/15(e); and (2) that WorkEasy disclosed their biometric information without consent, *id.* § 15(d). Those claims, too, rest on

[2] All citations to specific pages in docket entries refer to the pagination applied to the document header by the CM/ECF system.

common proof: EasyWorkforce admitted that it stored all Subclass members' fingerprint templates on cloud servers without encryption, disclosing the biometric information to its cloud-storage vendor in the process. ECF No. 139 at 16.

WorkEasy argues that despite those common elements and proof, three issues prevent a predominance finding: (1) waiver, (2) equitable estoppel, and (3) damages. Pet. at 15–17. The District Court correctly held that none raised individualized issues, much less enough of them to outweigh common issues. Certification Order at 11–17; Reconsideration Order at 13–15.

### A. WorkEasy's waiver defense raises common questions.

WorkEasy's waiver challenge is that "because Plaintiff and the putative class members are deemed to know the law, including their rights under BIPA," their use of WorkEasy's biometric timeclocks waived any BIPA claims. Pet. at 16. This defense raises common questions. Certification Order 16.

The first is whether it applies to BIPA claims at all. As Tapia-Rendon explained below, BIPA "plainly appears to abrogate" common-law defenses like waiver. *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020). That's because "[a]llowing a defendant to evade liability under the BIPA based on" common-law defenses, "would be inconsistent with the BIPA's requirement that an entity provide written notice … and obtain a written release from the person whose information it is collecting." *Id.*; *see also Brandenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021). WorkEasy disputes the point, but regardless, the threshold question of whether the defense applies *at all* is common one.

Even if the defense could apply, it would raise common questions and answers. "As [WorkEasy] frames the waiver defense—namely, that all residents of Illinois were on notice of their rights under the BIPA as of the law's passing in 2008—it is equally applicable to all class members." Certification Order at 16. WorkEasy tries to escape that logic by arguing that waiver requires individualized inquiries into intent. Not so: "Under Illinois law, to show that a plaintiff impliedly waived a statutory right, a defendant must demonstrate that a plaintiff took a 'clear, unequivocal and decisive *act … manifesting* an intention to waive [his/her] rights.'" ECF No. 170 at 10 (quoting *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 541 (N.D. Ill. 2012)) (emphasis added).[3] Here, WorkEasy charged each Class member with knowledge of BIPA, *see* Pet. at 16, and pointed to the same "act … manifesting" the intent to waive their BIPA rights: use of the timeclocks. *See* ECF No. 159 at 24–25. Thus, no individualized intent analysis is needed.

Ultimately, "WorkEasy agrees that its waiver … defense[] will apply across the class," Pet. at 15, so it cannot defeat predominance.

### B. WorkEasy's estoppel defense is waived and raises common questions.

EasyWorkforce's estoppel defense similarly cannot undermine predominance. To start, WorkEasy waived the argument. In opposing class certification, WorkEasy argued that "a party is equitably estopped [from] asserting rights that might

[3] WorkEasy contended in its reconsideration motion that "waiver can be express or implied through action." ECF No. 170 at 10. WorkEasy concedes that it had never communicated with the Class members before their use of its timeclocks, *see* ECF No. 139 at 15, and as such, its waiver defense must rely on waiver "implied through action."

otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." ECF No. 159 at 23–24 n.5. But WorkEasy never explained what conduct it relied on, much less how that conduct was individualized or how WorkEasy "change[d] its position for the worse." *Id.*; *see id.* at 23–26. "[E]ven after [WorkEasy] was called out on" this failure in the Certification Order, on reconsideration it "*still* [did] not explain[] how it applies in this context or why it would necessitate individualized evaluations." Reconsideration Order at 14. Even now, WorkEasy doesn't explain how the defense would apply or be individualized. Pet. at 15–16. These sort of "[p]erfunctory and undeveloped arguments," "unsupported by legal authority," "are waived." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016).

Even if considered, the argument changes nothing. If WorkEasy relied on Class members' use of the timeclocks alone, then that conduct is common, as the Class only includes people who "used any cloud-based [WorkEasy] biometric device Illinois on or after June 24, 2016." Certification Order at 17. If WorkEasy relied on Class members' failure to protest to it, that too, is common, given WorkEasy's admission that it had never communicated with the Class members before the lawsuit. ECF No. 139 at 6. That leaves how WorkEasy "change[d] [its] position for the worse." ECF No. 159 at 23–24. Regardless of the answer, it will again be a common issue given WorkEasy's admission that it acted uniformly toward the Class

members. ECF No. 139 at 6–7. WorkEasy's waived and mistaken estoppel argument is insufficient to warrant Rule 23(f) review.

### C. Damages determinations will have a common methodology.

Finally, WorkEasy contends that the Illinois Supreme Court's decision in *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918 (Ill. 2023) establishes a discretionary damages regime that requires individualized analysis and defeats predominance. Pet. at 17. That argument—originally occupying just half a sentence in its class certification opposition, *see* ECF No. 159 at 23, and abandoned on reconsideration, *see* ECF No. 170 at 6–9, 13[4]—misunderstands precedent and process.

To start, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815. Even if that wasn't the case, WorkEasy's argument would fail. "[T]here is every reason to believe that [damages] will be assessed on a common per-scan basis across the class, even if the amount differs from the $1,000 or $5,000 liquidated damages amounts provided in the BIPA," Certification Order at 13–14, given that WorkEasy's "conduct does not differ among class members, nor does it seem likely that class members differ in the harm they experienced as a result of [WorkEasy's] actions." Reconsideration Order at 12.[5] The same analysis holds for assessing whether damages are "so severe and oppressive as to be wholly

---

[4] WorkEasy's *Cothron* challenge on reconsideration focused on the superiority inquiry, specifically incentive to sue and manageability. *Id.*
[5] Even now, WorkEasy assumes without supporting law or evidence that the per-scan damages amount would vary among the Class members. *See* Pet. at 17.

disproportioned to the offense and obviously unreasonable." *St. Louis, I.M.S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). Proportionality and severity would not vary, on a per scan basis, from one Class member to the next. *See* Reconsideration Order at 12. Because the process for calculating each Class member's damages will be uniform, "the fact that the damages would generally be different for each member of the class [is] not deemed an insuperable obstacle." *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994).

## II. Class proceedings are superior to individual suits.

The District Court concluded that "litigating these claims on a class-wide basis 'would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Certification Order at 12 (quoting *Amchem Prods. Inc.*, 521 U.S. at 615). WorkEasy argues that the certification was nonetheless improper because (1) Class members supposedly have incentive to litigate individually, despite none of them actually having done so; and (2) it thinks this Court should overrule *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006). WorkEasy is wrong again.

### A. Class members have not been incentivized to sue individually, and class proceedings are superior anyway.

WorkEasy argues that the efficiency and uniformity of class proceedings are outweighed by the possibility that Class members might prefer to file individual suits for liquidated damages. That's mistaken.

Rule 23(b)(3) provides four factors for assessing superiority:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As WorkEasy pointed out below, "the superiority analysis—which includes assessing possible class-management issues—involves *balancing* manageability issues with the benefits to be gained from resolving claims on a class-wide basis." Certification Order at 14; *see also* ECF No. 159 at 20.

Here, on one hand, the District Court concluded that "the efficiency of class proceeding far outweighs any management problems—real or hypothetical—posed by awarding discretionary damages to class members," Certification Order at 14; "[t]here is no indication that the class members' interests would be better served by leaving them to individual lawsuits, or that realistically class members have an interest in doing so," *id.* at 15; and "consolidating these claims in [the Northern District] is particularly appropriate given that the BIPA is an Illinois statute, and the alleged violations all occurred within Illinois." *Id.* On the other hand, WorkEasy argues that individual incentive to sue trumps all other considerations.

WorkEasy is wrong. There have been no individual BIPA claims filed against WorkEasy, despite a district court ruling in August 2020 that BIPA claims accrue with each scan, *see Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 732–33

(N.D. Ill. 2020), the Illinois Supreme Court reaching the same conclusion more than a year ago, *see Cothron*, 216 N.E.3d 918, and 34 of the Class members being notified of the settlement of their BIPA claims against WorkEasy's co-defendant in January 2023, *see* ECF Nos. 131, 137; Certification Order at 12; Reconsideration Order at 9–10. If any class member was actually incentivized to sue WorkEasy individually, they would have done so by now.

WorkEasy also claims that the District Court erred by considering whether Class members had *actually* sued, contending that only the theoretical incentive to sue matters. Pet. at 12; ECF No. 170 at 4–5. But WorkEasy's position is "at odds with the text of Rule 23(b)(3)(B), which specifically instructs courts to consider 'the extent and nature of any litigation concerning the controversy *already begun* by or against class members.'" Reconsideration Order at 10–11 (quoting Fed. R. Civ. P. 23).

WorkEasy's argument doesn't even work on its own terms. The District Court accepted WorkEasy's argument that under *Cothron*, BIPA's liquidated damages are discretionary. *See* ECF No. 159 at 7, 22; Certification Order at 3, 13. Thus, the hypothetical Class member aware of both their potential BIPA claim and *Cothron*'s claim-accrual rule would necessarily also be aware that liability won't automatically trigger a meaningful recovery.

WorkEasy's argument also forgets that any individual's incentive to litigate must account for the potential costs incurred. As the District Court explained, complex technical analysis, expert discovery, and accompanying time and

"significant outlay of funds on the part of plaintiff's counsel" means that "[e]ven with BIPA's fee-shifting provision, 740 ILCS 14/20(3), attorneys may conclude that it is not worth the investment to pursue BIPA claims on an individual basis given the uncertainty regarding damages in light of their discretionary nature." Reconsideration Order at 9.

WorkEasy ignores these issues, and instead urges a bright-line rule that fee-shifting class actions are only superior where individual damages are small. Pet. at 12–14. WorkEasy starts by citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) to argue that class actions were meant to overcome the problem of negative-value individual suits. Pet. at 12. But as *Mace* explained, even with statutory damages and fee-shifting, WorkEasy "assumes that [a class member] will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take herself." *Mace*, 109 F.3d at 344. And here, "BIPA violations are often surreptitious, in the sense that class members may not be aware that their legal rights have been violated—let alone that they could be entitled to a significant recovery as a result." Reconsideration Order at 9. "These are considerations that cannot be dismissed lightly" in the superiority inquiry. *Mace*, 109 F.3d at 344.

WorkEasy's reliance on *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) is similarly misplaced. There, the Court decertified a class with substantial individual damages claims. *Id.* The class members were undoubtedly aware of their claims: each was a hemophiliac who contracted HIV from a blood

transfusion. *Rhone-Poulenc*, 51 F.3d at 1294. And the class members there proved their incentive to sue: "Some 300 lawsuits, involving some 400 plaintiffs," had been filed, and 13 had been tried to verdict. *Id.* at 1296.

The Court's concerns arose because the defendant had prevailed in 12 of those 13 trials. *Id.* at 1297–98. The Court concluded that those results likely represented the claims' true merit, and forecasted that if the cases proceeded individually, the total damages awards would ultimately reflect the true value of all individuals' claims. *Id.* By contrast, if the Court certified the class and the class representative's claims proved to be one of the select few that succeeded, the defendant's exposure would then be disproportionate to the case's true value. *Id.* at 1298.

This case is not *Rhone-Poulenc*. Here, the "class members may not be aware that their legal rights have been violated." Reconsideration Order at 9. No Class member has filed their own individual action, unlike the hundreds of *Rhone-Poulenc* class members who did so. 51 F.3d at 1296. There is no losing record in the trial court, and the settlement pressure comes from the claims' strength, not the certification order. *See* Section I, *supra*, at 6.

WorkEasy's last appellate authority is *Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008). WorkEasy says the District Court failed to analyze "any of the *Andrews* factors … which weigh heavily against class certification," and supposedly include "(1) the <u>potential</u> for statutory damages; (2) the value of the <u>potential</u> individual recovery; and (3) the availability of attorneys' fees for the prevailing party." Pet. at 12–13. WorkEasy misreads *Andrews* and the federal rules.

To start, there are no "*Andrews* factors" for assessing superiority. Instead, Rule 23(b)(3) sets out the superiority factors and they don't include the magnitude of individual recovery. Fed. R. Civ. P. 23(b)(3). And nothing in *Andrews* establishes a rule that superiority can't exist alongside substantial damages and fee shifting. If it did, there would be few, if any, Rule 23(b)(3) antitrust cases in the Seventh Circuit.

As the District Court explained, *Andrews* was not rooted in Rule 23(b)(3)'s superiority requirement, but in the text and purpose of the Truth In Lending Act, and a finding that rescission under TILA is "a purely *individual* remedy that may not be pursued on behalf of a class." *Andrews*, 545 F.3d at 575; Reconsideration Order at 10. Only after holding that the remedy could not even be sought in class proceedings did the Court analyze the effect of the individualized remedy on the Rule 23 factors. *Andrews*, 545 F.3d at 576–77.

Finally, in the last paragraph of analysis, the Court "briefly addressed the plaintiffs' argument that a class action was the only 'realistic' means of recovery," and "noted in response that 'TILA rescission is not the sort of remedy that would not otherwise be sought unless the class-action mechanism were available' because 'a prevailing debtor with a typical loan can expect to receive over $50,000, plus attorney's fees and costs.'" Reconsideration Order at 10 (quoting *Andrews*, 545 F.3d at 577–78). Thus, *Andrews* "cannot be read to establish" the sort of "categorical rule" proposed by WorkEasy, "that courts must deny certification any time a class could theoretically recover over $50,000 per person pursuant to a statute." Reconsideration Order at 10.

Without controlling authority, WorkEasy resorts to three district court cases. In *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390 (N.D. Ill. 2006), "the litigation would likely [have] require[d] substantial individualized proceedings to resolve the class members' claims," so predominance was lacking. *Id.* at 402–03. As in *Andrews*, the plaintiff argued that class certification was necessary because individual claims weren't economically viable, and the Court found the availability of statutory damages and fee shifting to undermine that argument. *Id.* at 404. Nothing in *Hyderi* establishes a bright-line rule that substantial damages and attorneys' fees always preclude litigation. *See id.* at 404 ("To be sure, the availability of attorneys fees and costs is not a *per se* bar against class certification.").

The same shortcomings afflict WorkEasy's reliance on *Murphy v. Professional Transp., Inc.*, No. 14-cv-378, 2017 WL 5665901 (N.D. Ill. Nov. 27, 2017) and *Vulcan Golf, LLC v. Google, Inc.*, 254 F.R.D. 521 (N.D. Ill. 2008). Those cases found predominance lacking, and then concluded that "as in the *Andrews* case … the concern that plaintiffs would not have the incentive to sue individually is not present in the instant case," given the substantial damages available to each class member. *Vulcan Golf*, 254 F.R.D. at 534–35 (citing *Andrews*, 545 F.3d at 577–78); *Murphy*, 2017 WL 5665901, at *8–9.

At the end of the day, WorkEasy doesn't identify a single case where common issues predominated and class proceedings would provide efficiency gains, but where the court nonetheless denied certification because class members had incentive to sue individually. And given that no class members have sued

individually here, "[t]here is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages … will result in enforcement of [BIPA] by individual actions of a scale comparable to the potential enforcement by way of class action." *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010).

### B. WorkEasy offers no reason to overturn *Murray*.

WorkEasy's final argument against superiority is that the Class's potential aggregated damages are disproportionate to the harm they suffered. WorkEasy asks the Court to "revisit" its rejection of that same argument in *Murray v. GMAC*. Pet. at 19–20.

"As this Court has observed in the past … '[s]tare decisis is of fundamental importance to the rule of law.'" *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1364 (7th Cir. 1996) (quoting *E.E.O.C. v. Metro. Educ. Enters., Inc.*, 60 F.3d 1225, 1228 (7th Cir. 1995)). "To succeed" in its argument, therefore, WorkEasy "must provide [the Court] with a compelling reason to overturn [its] precedent." *Goshtasby v. Bd. of Trustees of the Univ. of Ill.*, 141 F.3d 761, 767 (7th Cir. 1998). WorkEasy does no such thing.

To start, WorkEasy baselessly assumes damages disproportionate to the harm suffered. First, it assumes that class-wide liability will result in billions in damages. *See* Pet. at 19–20. But the District Court held (over Tapia-Rendon's opposition)[6] that BIPA's liquidated damages are discretionary, and "the jury would be permitted

---

[6] *See* ECF No. 162 at 15–16.

to consider factors such as the harm suffered by the class members and the proportionality of any damages award in relation to the severity of the defendant's misconduct." Reconsideration Order at 7–8. As a result, "there is no real reason to believe that jackpot-like individual jury awards are likely." *Id.* at 8.

Second, the Illinois Supreme Court has rejected WorkEasy's argument that the Class members weren't harmed: "When a private entity fails to adhere to [BIPA's] statutory procedures … 'the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized.' [] This is no mere 'technicality.' The injury is real and significant," and "[i]t is clear that the legislature intended for [BIPA's remedial provision] to have substantial force." *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1206–07 (Ill. 2019). (quoting *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018)).

Even if potentially disproportionate damages were at issue, WorkEasy cites to just two cases in asking the Court to "adopt holdings of other circuits that a class action is not superior where a defendant's potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff." Pet. at 4. First, WorkEasy cites a footnote from *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003). But *London* wasn't a superiority case. Rather, the Eleventh Circuit denied certification on adequacy grounds, and chose "not [to] reach the remaining issues pending in th[e] appeal." *Id.* at 1255. The Court only addressed superiority in

a footnote, where in dicta it expressed "doubt" that class proceedings were superior given the damages implicated. *Id.* at 1255 n.5.

WorkEasy also cites a case involving both plaintiff and defendant classes, *Kline v. Coldwell, Banker Co.*, 508 F.2d 226 (9th Cir. 1974). But 36 years after *Kline*, the Ninth Circuit considered the same superiority argument raised by WorkEasy in the context of a plaintiff class action under the Fair and Accurate Credit Transactions Act, which shares its remedial provision with the statute in *Murray*. *See Bateman v. Am. Multi-Cinema*, 623 F.3d 708, 715 (9th Cir. 2010). Faced with WorkEasy's argument, the Ninth Circuit found *Murray* persuasive and applicable, rather than *Kline*. *Id.* at 722 ("As the Seventh Circuit noted, the reason that damages can be come enormous under FACTA 'does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person,' combined with multiple violations of the statute.") (quoting *Murray*, 434 F.3d at 953).

WorkEasy therefore offers no compelling reason to disavow *Murray*.

**III. Tapia-Rendon is an adequate representative with typical claims.**

WorkEasy also argues that Tapia-Rendon "was not an adequate representative because [she] knew or should have known about her rights under BIPA when she started her employment at the time she gave up her alleged biometric information." Pet. at 18. WorkEasy is wrong for two reasons. First, it waived the argument by failing to develop it below. Second, Tapia-Rendon is similarly situated to the absent Class members.

When opposing certification, WorkEasy focused its adequacy argument on its (now abandoned) theory that Tapia-Rendon had her biometrics captured fewer

times than the average class member. *See* ECF No. 159 at 13–15. Its waiver and estoppel challenge was a single sentence: "Lastly, for the arguments raised in Section IV.E. below this Plaintiff also waived her BIPA rights and is estopped from suing [WorkEasy] for these alleged BIPA violations." ECF No. 159 at 16. WorkEasy never explained *how* or *why* those defenses render Tapia-Rendon inadequate. *Id.* That "cursory and undeveloped" argument, Certification Order at 8 n.3, is waived, despite WorkEasy's addition of detail on reconsideration and appeal. Reconsideration Order at 14 ("'Arguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited.'") (quoting *Pole v. Randolph*, 570 F.3d 922, 938 (7th Cir. 2009)).

Even if WorkEasy hadn't waived its adequacy challenge, it would still fail. The test for adequacy is whether the proposed representative "is subject to a defense that couldn't be sustained against other class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011). That is not the case here, as "WorkEasy agrees that its waiver and estoppel affirmative defenses will apply across the class." Pet. at 15; *see also id.* at 16 ("Plaintiff and the putative class members are deemed to know the law, including their rights under BIPA").

There is, therefore, no defense unique to Tapia-Rendon, and WorkEasy's adequacy challenge fails.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Court deny the Petition.

Dated: February 26, 2024

Respectfully Submitted,

s/ J. Dominick Larry

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
T: 773.694.4669
F: 773.694.4691
nick@nicklarry.law

Thomas R. Kayes
THE CIVIL RIGHTS GROUP, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, Illinois 60612
T: 708.722.2241
tom@civilrightsgroup.com

*Counsel for Respondent*

## CERTIFICATION OF COMPLIANCE

1. This response complies with the word limit of Fed. R. App. P. 5(c)(1) because it contains 5,196 words and is 20 pages in length, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Cir. R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced font using Microsoft Word for Mac, using 12-point Century font for the body text and footnotes.

s/ J. Dominick Larry
*Counsel for Respondent*

☑

## CERTIFICATE OF SERVICE

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on February 26, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ J. Dominick Larry

☐

## CERTIFICATE OF SERVICE

**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on ____________________, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

s/________________________________